UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

_____X       Index No.:14-CV-5960 (SLT)(MDG)

VERONICA BROWN,

        Plaintiff,

   -against-

MARRIOTT INTERNATIONAL, INC.,

        Defendant.

_____X


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS


                        Respectfully Submitted,


                        WHITE FLEISCHNER & FINO, LLP
                        Attorneys for the Defendant
                        MARRIOTT INTERNATIONAL, INC.
                        61 Broadway
                        New York, New York 10006
                        (212) 487-9700
                        Our File No.: 105-18017


*Daniel M. Stewart*
*Of Counsel*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................……..1

STATEMENT OF FACTS ...............................................................……...1

Procedural History .......................................................................……..1

POINT 1:  PLAINTIFF'S AMENDED COMPLAINT MUST BE DISMISSED BECAUSE
EACH OF HER FIVE CAUSES OF ACTION FAILS TO STATE A
CLAIM ...................................................................................…..5

A.  The Legal Standard on a Motion to Dismiss ................................…..5

B.  The First Cause of Action Fails to State a Claim  …………………….6

C.  The Second Cause of Action Fails to State a Claim .........................11

D.  The Third Cause of Action Fails to State a Claim .........................…..12

E.  The Fourth Cause of Action Fails to State a Claim .........................13

F.  The Fifth Cause of Action Fails to State a Claim ...........................14

POINT II:  THE THREE PART TEST FOR GRANTING DISMISSAL ON
THE BASIS OF FORUM NON CONVENIENS IS SATISFIED AND HENCE
DISMISSAL IS WARRANTED ...............................................…..15

A.  The Step 1 Factor (the Deference to be Accorded to Plaintiff's Chosen Forum …...18

B.  The Step 2 Considerations on a Forum Non Conveniens Motion Clearly Warrant
Dismissal ...................................................................………….18

C.  The Step 3 Consideration on a Forum Non Motion (Balancing Private and Public
Interests) Similarly Warrant Dismissal of this Action ......................…...22

CONCLUSION ...................................................................………….26

## **TABLE OF AUTHORITIES**

*Abouchalache v. Hilton Int'l Co., 464 F. Supp. 94, 98 (S.D.N.Y. 1978)* ................................................... 25

*Acosta v. JPMorgan Chase & Co., 219 F. App'x 83, 85 (2d Cir. 2007)* ...................................................... 17

*Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* ...............................5, 14

*Bell Atl.Corp v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)* ........................................................ 5

*Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996)* ...................................................................................... 5

*Bigio v. Coca-Cola Co., 675 F.3d 163 (2d Cir. 2012)* ............................................................................... 11

*Bohn v. Bartels, 620 F. Supp. 2d 418, 432 (S.D.N.Y. 2007)* ..................................................................... 22

*Brass v. Am. Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993)* ................................................... 6

*Breindel v. Levill & Sons, Inc., 294 F. Supp. 42, 44 (E.D.N.Y. 1968)* ..................................................... 23

*Burneft v. Columbus McKinnon Corp., 887 N.Y.S.2d 405, 409 (App. Div. 4th Dep't 2009)* ..................... 24

*Citibank, N.A. v. Nyland, Ltd., 878 F.2d 620, 624 (2d Cir. 1989)* ............................................................ 12

*Clark v. Marriott Envtl. Servs., 1994 U.S. Dist. LEXIS 1328, No. 93-3279, 1994 U.S. Dist. LEXIS 1328 (E.D. Pa. Jan. 6, 1994)* ............................................................................................................................ 9

*Collins v. Hilton Int'l Co., 628 F.2d 1344 (2d Cir. 1980)* ........................................................................ 25

*Connolly v. Kinay, No. 11 Civ. 606 (RJS), 2012 WL 1027231 (S.D.N.Y. 2012)* ........................................ 19

*Coraggio v. Time Inc., 1995 U.S. Dist. LEXIS 5399 (SDNY 1995)* ........................................................... 11

*Cromer Finance Ltd. v. Berger, 158 F.Supp.2d 347 (S.D.N.Y. 2001* ......................................................... 22

*Crosse v. BCBSD, Inc., 836 A.2d. 492, 497 (Del. 2003)* ............................................................................ 8

*Crown Fire Supply Co. v. Cronin, 306 A.D.2d 430, 431, 761 N.Y.S.2d 495, 496 (2d Dep't 2003)* ........... 14

*DeJesus v. Sears, Roebuck & Co, 87 F 3d 65, 70 (2d Cir. 1996)* .............................................................. 11

*Digital Music Antitrust Litig., 812 F. Supp. 2d at 419* ............................................................................... 8

*DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 30 (2d Cir. 2002)* .............................................................. 16

*Dorfman v. Marriott Int'l Hotels, Inc., 2002 U.S. Dist. LEXIS 72 (S.D.N.Y. 2002)* ................................... 9

*E.F. Hutton Group, Inc. v. United States Postal Service, 723 F. Supp. 951, 959 (S.D.N.Y. 1989)* ............ 12

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004)* 13

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 161 n.14 (3d Cir. 2010)* ........... 20

*Excess Ins. Co. Ltd. v. Factory Mut. Ins. Co., 769 N.Y.S.2d 487, 489 (App. Div. 1st Dep't 2003), aff'd, 789.N.Y.S.2d 461 (N.Y. 2004)* ................................................................................................................ 24

*Fletcher v. Atex, Inc., 68 F.3d 1451, 1455, 1461-62 (2d Cir. 1995)* .................................................7, 11, 12

*Herbert Construction Co. v. Continental Insurance Co., 931 F.2d 989, 993-94 (2d Cir. 1991)* ............... 12

*Iqbal, 556 U.S. at 679* ................................................................................................................................ 5

*Iragorri v. United Technologies Corp., 274 F.3d 65, 72 (2d Cir. 2001)* ..............................................15, 16

*Kiehl v. Action Mfg. Co., 517 Pa. 183, 190, 535 A.2d 571, 574 (1987)* ..................................................... 9

*Koster v. Lumbermen's Mut. Cas. Co., 330 U.S. 518, 524, 67 S. Ct. 828, 91 L. Ed. 1067 (1947)* ............ 15

*Iragorri, 274 F.3d at 73* ............................................................................................................................ 16

*MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001)* .........7, 10

*Martin v. Dickson, 100 Fed. Appx. 14 (2d Cir. 2004)* ............................................................................... 14

iii

*Neubauer v. Eva-Health USA, 158 FRD 281, 285 (SDNY 1994)* .................................................... 11

*Norex Petrol. Ltd. v. Access Indus., Inc.,* 416 F.3d 146, 153 (2d Cir. 2005)........................................15, 16

*Paisley v. Coin Device Corp., 5 A.D.3d 754, 5 A.D.3d 748, 773 N.Y.S.2d 582, 583 (2d Dep't 2004)* ....... 14

*Palacios v. Coca-Cola Co., 757 F. Supp. 2d 347, 352 (S.D.N.Y. 2010)* ............................................... 18

*Piper v. Reyno, 454 U.S. 235, 241, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)* ....................................15, 17

*Rodriguez v. Torres, No. Civ. B-04-036, 2004 WL 2952612 (S.D. Tex. 2004)* ..................................... 22

*Rucker v. Marriott Int'l Inc., 2004 U.S. Dist. LEXIS 461 (E.D. Pa. Jan. 2, 2004)* ..................................... 8

*Silver v. Great Am. Ins. Co., 328 N.Y.S.2d 398, 402 (N.Y. 1972)* ..................................................... 25

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 425, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007* ......................................................................................................................... 20

*Societe d' Assurance de l'Est SPRL v. Citigroup, Inc., No. 10 Civ. 4754 (JGK), 2011 U.S. Dist. LEXIS 103375, 2011 WL 4056306, at 5 (S.D.N.Y., 2011)* ............................................................... 8

*Suhail v. Trans-Americainvest (St. Kitts), Ltd., 2015 U.S. Dist. LEXIS 99063 (D.N.J. July 29, 2015),*19, 20

*Twombly, 550 U.S. at 555.* ............................................................................................................ 5

*United States v. Bestfoods, 524 U.S. 51, 61, 118 S. Ct. 1876, 141 L. Ed. 2d 43 (1998)* ............................. 7

*Wallace v. Wood, 752 A.2d 1175, 1183 (Del. Ch. 1999)*..................................................................7, 10

*Wechsler v. Four Seasons Hotels Limited, No. 1:2013cv08971 (S.D.N.Y 2014)* ..................................... 23

*Windt v. Quest, 529 F.3d at 189-90)* ............................................................................................ 20

*Wiwa v. Royal Dutch Petrol. Co., 226 F.3d 88, 100 (2d Cir. 2000)* .................................................... 15

## PRELIMINARY STATEMENT

The plaintiff, Veronica Brown, seeks to recover damages for injuries she allegedly suffered while vacationing at the St. Kitt's Marriott Resort and The Royal Beach Casino ("The Hotel", located at 858 Zen Way Blvd., Frigate Bay, St. Kitts, British West Indies.

Defendant MARRIOTT INTERNATIONAL, INC. ("MII") respectfully submits for the reasons discussed below that the Amended Complaint must be dismissed because each of the plaintiff's five causes of action fails to state a claim for which relief may be had. Alternatively, dismissal is warranted on the separate and independent ground of *forum non conveniens*.

## STATEMENT OF FACTS

### Procedural History

Plaintiff initially commenced this action in April of 2014, in New York State Supreme Court, Kings County (Index #:  502748/2014). The Kings County venue was based upon her residence in Brooklyn.

In her original state court Complaint (Exhibit A to the accompanying Declaration of counsel), plaintiff named two  defendants: (1) MII and (2) ST. KITTS MARRIOTT RESORT AND THE ROYAL BEACH CASINO ("ST. KITTS"), with an address at 858 Zen Way Blvd., Frigate Bay, St. Kitts, British West Indies.  Plaintiff alleged that ST. KITTS at all times relevant to her lawsuit, was a wholly owned subsidiary of MII, and that it is located in St. Kitts, where it owns and operates the hotel, including the guest room where she suffered the alleged injuries giving rise to this lawsuit. (See paragraphs 4-10) of plaintiff's original complaint, at **Exhibit "A"**.

1

Plaintiff alleged that MII, as the parent corporation of ST. KITTS, also operated, maintained, managed, controlled and repaired the hotel (Paragraphs 24-28 of original Complaint), through its agents, servants and employees.

Plaintiff alleged that her accident at the St. Kitts hotel occurred on July 18, 2013 when she slipped on tile flooring that was wet due to the leakage of water from an overhead air conditioning vent.

After obtaining discovery to establish diversity jurisdiction, MII removed the action to this Court via Notice of Removal (Exhibit B to the accompanying Declaration of counsel) dated October 9, 2014. Thereafter, MII provided documentation to plaintiff establishing that the hotel in question is owned and managed/maintained by companies that were created and continue to exist by and under the laws of the Federation of St. Kitts and Nevis (See **Exhibits "C" and "D"** to the accompanying Declaration of counsel).

Upon receipt of MII'S discovery responses, plaintiff amended her Complaint. The Amended Complaint, which is the operative pleading (and annexed as **Exhibit "B"** to the accompanying Declaration of counsel), eliminates ST. KITTS as a party defendant and notably did not include the Kittian owner and manager of the hotel, an apparent concession on the part of the plaintiff that she cannot obtain jurisdiction over those entities.

Plaintiff's Amended Complaint asserts five (5) separate causes of action against lone defendant MII.

The First Cause of Action sounds in Negligence. The Second Cause of Action is based upon an Agency theory of liability, claiming there is an agency relationship between MII (as principal) and the Kittian companies who own and operate the hotel that renders MII vicariously

liable for plaintiff's injuries.  Plaintiff's Third Cause of action is based upon a theory of equitable estoppel on the ground that plaintiff relied upon MII'S "promotions, advertisements, representations, commercials, brochures, internet sites, stationary, slogans, and signs" when she made her travel reservations for St. Kitts.  The Fourth Cause of Action is for Fraud based upon MII'S claimed misrepresentations in its advertisements with regard to the hotel in St. Kitts. Finally, plaintiff's Fifth Cause of Action is for punitive damages on the ground that MII allegedly acted in a wanton, reckless and malicious manner.

The attached sworn factual affidavits of Carol Frensilli (**Exhibit "C"**) Assistant Corporate Secretary of MII, and Jacques Hamroo (**Exhibit "E"**), the General Manager of the subject hotel in St. Kitts, confirm (1) that MII does not own the hotel, (2)  that MII is not in any manner involved with the hotel's daily operation,  (3) that MII exercises no amount of control or supervision over the hotel or its employees, and (4) that MII has no responsibility for the supervision or management of the hotel, including the inspection and repair of conditions on the premises.

Rather, as averred by Ms. Frensilli in her attached Affidavit, the hotel is owned by Royal St. Kitts Beach Resort Limited ("RSK"), a company formed under and existing according to the laws of the Federation of St.Kitts & Nevis. MII has found no evidence that RSK transacts business in any jurisdiction other than St. Kitts, nor any evidence that RSK is authorized to do so.  A certified copy of RSK's certificate of incorporation in the Federation of St. Kitts & Nevis is attached to counsel's declaration as **Exhibit "D"**.

According to the Frensilli Affidavit, prior to the date of the plaintiff's accident, RSK entered into a contract with Marriott St. Kitts Management Company, Inc., a property

management company, to handle the on-site daily management and operations of the hotel.  (true and accurate copy of the contract is included as **Exhibit "C1"**.  The name of this company later changed to Luxury Hotels International Management St. Kitts Limited ("LHI") (see **Exhibit "C3"**).

As further averred by Ms. Frenselli, LHI is a company formed under and existing under the laws of the Federation of St. Kitts & Nevis.  (See **Exhibits "C2" and "C3"**), and it is an indirect subsidiary company of MII that has knowledge concerning the operation, control, and maintenance of the hotel in St. Kitts.  LHI is not and has never been incorporated in New York, it owns no property in the state of New York, it has no bank accounts or offices in New York, it does not pay any taxes in New York, and it does not conduct any business in New York (**Exhibit "C"**).

Employees of the hotel, including housekeeping staff and maintenance workers, are interviewed, hired, trained, supervised, and paid by LHI  pursuant to LHI's obligations under the aforementioned contract with hotel owner RSK (**Exhibits "C", "C1" and "E"**).

Additionally, as averred by the hotel's general manager in his annexed Affidavit, aside from plaintiff and her vacation companion, all witnesses to the alleged accident and the alleged circumstances that led to it, including LHI employees, maintenance personnel, housekeeping personnel, as well as emergency personnel, and police and local doctors, are all located in St. Kitts & Nevis. This includes the current Loss Prevention Supervisor of the hotel, who is employed by LHI (see **Exhibit "E"**).

MII now seeks dismissal of the Amended Complaint in its instant pre-Answer motion. The grounds for dismissal are that the Amended Complaint fails to state a claim, and that

dismissal is warranted in any event on the basis of the *forum non conveniens* doctrine.  Annexed as **Exhibit "F"** is the Affidavit of Adrian E. Scantlebury, Esq., a Kittian attorney, who describes the laws and justice system of St. Kitts, and its appropriateness as an alternative available forum for resolving plaintiff's dispute with the proper entities who own and manage/maintain the hotel.

## LEGAL ARGUMENT

**POINT I**
**PLAINTIFF'S AMENDED COMPLAINT MUST BE DISMISSED BECAUSE EACH OF HER FIVE CAUSES OF ACTION FAILS TO STATE A CLAIM**

### A. The Legal Standard on a Motion to Dismiss

To survive a motion to dismiss, a complaint must state a claim for relief that is "plausible on its face." *Bell Atl.Corp v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007).* "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).* While detailed factual allegations are not required, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly, 550 U.S. at 555.*

Furthermore, "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* The court's inquiry is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).* A court considering a motion to dismiss must follow the two-pronged approach set forth by the Supreme Court in *Twombly,* and "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal, 556 U.S. at 679.* If the

factual allegations are sufficiently well-pleaded, the court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

The court's consideration is generally limited to the four corners of the complaint and "documents attached to the complaint as an exhibit or incorporated in it by reference." *Brass v. Am. Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993)* In the case at bar, for the reasons discussed below, MII respectfully submits that the Amended Complaint cannot stand up to judicial scrutiny of its conclusory contents and that it must therefore be dismissed.

## B.  The First Cause of Action Fails To State A Claim

Prior to amending her Complaint, which named the hotel and MII as party defendants, MII provided plaintiff's lawyer with ample documentation demonstrating that the hotel in St. Kitts (a sovereign nation) is owned by a Kittian corporation (RSK) that does business exclusively in St. Kitts and Nevis, and that pursuant to RSK's contract with LHI (which is similarly a Kittian corporation that does not do any business in the United States), LHI was exclusively responsible for operating, controlling, managing, supervising and making repairs at the hotel. MII further advised plaintiff that LHI is an indirect subsidiary of MII but that RSK is a completely separate and wholly independent Kittian company.

Based upon this information, plaintiff's Amended Complaint eliminated the hotel as a defendant, an acknowledgement of sorts that she cannot obtain jurisdiction over the hotel's owner and manager in the Eastern District of New York..  Plaintiff concedes in her Amended Complaint, via affirmative allegation, that:

> 2.     At all times herein mentioned defendant "MII" was the parent company of these entities:  St Kitts Marriott Resort & the Royal Beach Casino; Royal St. Kitts Beach Resort, Ltd.; Marriott St. Kitts Beach Club; Royal St. Kitts Golf Club; Luxury Hotels International Management St. Kitts Ltd. (hereinafter "St Kitts Entities").

3.      At all times hereinafter mentioned, the St. Kitt's entities were subsidiaries of defendant MII.

Plaintiff thereafter proceeds, in her First, Second and Third Causes of Action, to assert a negligence theory of liability against MII that is based upon principals of piercing the corporate veil, and agency and estoppel, all of which are founded upon nothing other than conclusory assertions (as opposed to factual allegations).  Plaintiff's "allegations" do not support a claim for relief against MII and therefore must be dismissed.

"It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation is not liable for the acts of its subsidiaries." *United States v. Bestfoods, 524 U.S. 51, 61, 118 S. Ct. 1876, 141 L. Ed. 2d 43 (1998)* (internal quotes omitted). In light of this rule, in order to reach MII for purposes of holding it liable for the acts/omissions of its subsidiary(ies), it is incumbent upon the plaintiff to "pierce the corporate veil".

It is well settled that "piercing the corporate veil" requires facts establishing that a parent company ignored the separate legal status of, and dominated the affairs of, the subsidiary. It is often held that a claim premised on veil piercing can survive a motion to dismiss only if the complaint alleges facts sufficient to show that (1) the parent exercised "complete domination and control" over the subsidiary such that the subsidiary had no "legal or independent significance of [its] own," and (2) the corporate form was used to perpetrate some form of injustice or fraud. *Wallace v. Wood, 752 A.2d 1175, 1183 (Del. Ch. 1999); see also Fletcher, 68 F.3d at 1457-58* [under Delaware law, veil piercing requires a dual showing that the parent and subsidiary "operated as a single economic entity" such that subsidiary was a "mere instrumentality," and "that  an overall element of injustice or unfairness is present"]; *MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001)* ("[U]nder New York law, a court

may pierce the corporate veil where (1) the owner exercised complete domination over the corporation with respect to the transaction at issue and (2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil").

The standard for veil-piercing is very demanding. "Disregard of the corporate form is warranted only in extraordinary circumstances, and conclusory allegations of dominance and control will not suffice to defeat a motion to dismiss." *Societe d' Assurance de l'Est SPRL v. Citigroup, Inc., No. 10 Civ. 4754 (JGK), 2011 U.S. Dist. LEXIS 103375, 2011 WL 4056306, at 5 (S.D.N.Y., 2011)*. Indeed, "the unadorned invocation of dominion and control is simply not enough" to state a claim premised on veil piercing. *In re Digital Music Antitrust Litig., 812 F. Supp. 2d at 419* [dismissing veil-piercing claims under New York and Delaware law]; *Crosse v. BCBSD, Inc., 836 A.2d. 492, 497 (Del. 2003)*[affirming dismissal of veil-piercing claim where a plaintiff failed to "plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors"].

A perfect example of a court's rejection of a plaintiff's claim for veil-piercing, quite coincidentally, involves MII as the defendant, in a case involving personal injuries to the plaintiff who slipped and fell at a hotel in Egypt. *Rucker v. Marriott Int'l Inc., 2004 U.S. Dist. LEXIS 461 (E.D. Pa. Jan. 2, 2004)*. In *Rucker*, plaintiff believed that MII owed him a duty of reasonable care by virtue of its "apparent ownership and operation" of the Egyptian Hotel.

MII presented evidence that it neither owned nor operated the hotel on the date of plaintiff's Rucker's accident. Plaintiff maintained that notwithstanding MII's non-ownership, the court should pierce the corporate veil and hold it responsible for the negligence of its "shell corporations which were created . . . to avoid any potential liability."   According to the court, "This suggestion faces a heavy burden because "courts will disregard the corporate entity only in

limited circumstances when used to defeat public convenience, justify wrong, protect fraud or defend crime." *Rucker at 463,* citing *Kiehl v. Action Mfg. Co., 517 Pa. 183, 190, 535 A.2d 571, 574 (1987).*

Plaintiff Rucker presented no evidence that MII created the subsidiary corporations (Market Street Partnership or Marriott Services) for any of the purposes forbidden by *Kiehl,* so there was no basis for piercing the corporate veil. Furthermore, according to the court, although Rucker believed that MII owed him a duty of reasonable care by virtue of its apparent ownership and operation of the hotel, MII presented evidence that it neither owned nor operated the hotel on the date of the plaintiff's accident. As Rucker advanced no other viable basis for imposing a duty MII to maintain premises that it did not own or operate, and because MII was not legally responsible for the acts and omissions of its wholly owned subsidiaries, the court concluded that the complaint had to be dismissed.[1]

In *Dorfman v. Marriott Int'l Hotels, Inc., 2002 U.S. Dist. LEXIS 72 (S.D.N.Y. 2002),* the Southern District of New York court reinforced the notion that "While complete domination of the corporation is the key to piercing the corporate veil, . . . such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward [the party seeking piercing] is required. . . . The party seeking to pierce the corporate veil must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party . . . .(internal citations omitted). This is not a case in which, for example, money was transferred from corporate accounts to avoid payment to a creditor (internal citation omitted). Any injury that plaintiff suffered exiting an elevator in the

---

[1] In reaching this holding, the court cited to *Clark v. Marriott Envtl. Servs., 1994 U.S. Dist. LEXIS 1328, No. 93-3279, 1994 U.S. Dist. LEXIS 1328 (E.D. Pa. Jan. 6, 1994)* [granting summary judgment to defendant when its wholly owned subsidiary was responsible for maintaining the premises where plaintiff slipped and fell].

Budapest Marriott could not plausibly have resulted from abuse of the corporate form by Otis Elevator and Otis Felvono." *Dorfman, supra at 57.*

Similarly, in the case at bar, there is no valid basis for a finding of liability against MII, which did not own, control, maintain, supervise or repair the hotel in St. Kitts where plaintiff allegedly slipped and fell. There is no evidence that MII hired and/or supervised the employees of the hotel who were responsible for detecting and remedying defective conditions on the hotel remises. Rather, the property was operated by a subsidiary Kittian corporation for which MII is not vicariously liable, and owned by a wholly independent Kittian company that is not owned by or related to MII in any way.

Furthermore and equally important, even if plaintiff alleged accurately - rather than merely asserted in a conclusory manner - that MII somehow disregarded the corporate form and dominated/controlled its subsidiary, there nevertheless would be no basis for piercing the corporate veil, because the second element, i.e., that MII did so in order to perpetrate some type of fraud or injustice upon the plaintiff, is completely lacking.

Indeed, as the court specifically noted in *Dorfman, supra*, where plaintiff sought to hold an elevator company liable for the acts of one of its subsidiary corporations, "Any injury that plaintiff suffered exiting an elevator in the Budapest Marriott could not plausibly have resulted from abuse of the corporate form by Otis Elevator and Otis Felvono." Just as in *Wallace v. Wood, supra*, and *MAG Portfolio Consult, GMBH v. Merlin Biomed Group , supra*, where each court noted explicitly that "a claim premised on veil piercing can survive a motion to dismiss only if the complaint alleges facts sufficient to show that (1) the parent exercised "complete domination and control" over the subsidiary such that the subsidiary had no "legal or independent significance of [its] own," and (2) the corporate form was used to perpetrate some

form of injustice or fraud", this Court should in all respects dismiss plaintiff's First Cause of Action.

## C.   The Second Cause of Action Fails To State A Claim

Plaintiff's second cause of action is based on the theory of agency.   In this regard, plaintiff has made nothing but conclusory statements regarding an alleged agency relationship between MII and the St. Kitts companies that own and operate the hotel. Plaintiff's complaint contains only general, non-specific allegations of an agency theory, including that the St. Kitts entities were alter egos of MII, that the entities had common officers and directors, and that the St. Kitts entities were agents of MII.

Plaintiff provides not a single document, record or other hint of proof to support these allegations, despite being provided with the list of MII'S directors and officers, as well as MII'S 2013 Annual Report. This lack of factual assertions is fatal to plaintiff's theory. *See DeJesus v. Sears, Roebuck & Co, 87 F 3d 65, 70 (2d Cir. 1996).*   Plaintiff's bare allegation that MII controlled one or both of the St. Kitts entities is insufficient to support her theory in this regard. *Neubauer v. Eva-Health USA, 158 FRD 281, 285 (SDNY 1994); Coraggio v. Time Inc., 1995 U.S. Dist. LEXIS 5399 (SDNY 1995).*

It is widely recognized that no agency relationship exists between a corporate parent and its subsidiary company. *Fletcher v. Atex, Inc., 68 F.3d 1451, 1455, 1461-62 (2d Cir. 1995).* This is true even where the parent invests in, does business with, and advises the subsidiary, as these actions "amount to nothing more than the usual concomitants of the relationship" between a parent and a subsidiary. *Bigio v. Coca-Cola Co., 675 F.3d 163 (2d Cir. 2012.*

In fact, many courts have declined to find an agency relationship in the presence of considerably more indicia of parental control over a subsidiary corporation. See, e.g., *Fletcher,*

*supra, at 1459-62* [no agency relationship even though parent and subsidiary shared a centralized cash management system and parent's approval was required for subsidiary's "real estate leases, major capital expenditures, [and] negotiations for a sale of minority stock ownership"].

This Court should also reject plaintiff's "apparent agency" claim.  A principal may be bound by the actions of another, who is not actually its agent, when, by its own conduct, it creates in a third party the impression that its "presumed" agent is authorized to act on its behalf. *Citibank, N.A. v. Nyland, Ltd., 878 F.2d 620, 624 (2d Cir. 1989); Herbert Construction Co. v. Continental Insurance Co., 931 F.2d 989, 993-94 (2d Cir. 1991).*  In other words, if words or conduct of the principal, communicated to a third party, give rise to a reasonable belief on the part of the third party that the agent has authority to act in a particular transaction, apparent authority has been created. *See E.F. Hutton Group, Inc. v. United States Postal Service, 723 F. Supp. 951, 959 (S.D.N.Y. 1989).*

Here, plaintiff had no relationship or communication with MII that could reasonably suggest to her that the owner and operator of the hotel are agents of MII and that MII is therefore vicariously liable for the condition of the hotel premises and/or the acts/omissions of the hotel's employees. Accordingly, for this reason as well, this cause of action must be dismissed.

### D.  The Third Cause of Action Fails to State a  Claim

Plaintiff's third cause of action is based upon equitable estoppel. In support of that claim, plaintiff alleges that she relied upon MII'S "promotions, advertisements, representations, commercials, brochures, internet sites, stationary, slogans, and signs" when she made her travel reservations for St. Kitts. Noticeably absent from plaintiff's complaint are any of these materials that she allegedly relied upon. To the contrary, MII'S website, including the website that is specific to the St. Kitts location, indicates that "Hotels shown on Marriott.com may be operated

under a license from Marriott International, Inc. or one of its affiliates."[2] Plaintiff's failure to provide any support for the conclusory allegations in her complaint regarding the alleged misrepresentation is fatal to her cause of action under equitable estoppel.

Furthermore, a critical element to establish equitable estoppel is that plaintiff was prejudiced as a result of the misrepresentation. Even assuming, *arguendo,* that plaintiff could establish there was some misrepresentation, her Amended Complaint nevertheless fails to indicate how she was prejudiced. Her conclusory claim that she has no recourse for her injuries on account of the claimed misrepresentation is insufficient to withstand MII's instant motion. Moreover, as established below, in Point II, plaintiff absolutely <u>does</u> have recourse (assuming she can establish negligence), in the forum of residence of the entities that own and manage/operate the hotel. For all of these reasons, the equitable estoppel cause of action must be dismissed.

### E.   The Fourth Cause of Action Fails to State A Claim

Plaintiff's fourth cause of action is based on fraud. Plaintiff again states generally and in a conclusory fashion that MII engaged in misrepresentations with its advertising for the St. Kitts location, but again she fails to provide any support for these claims.  A claim for common law fraud is subject to the "particularity" pleading requirements of Federal Rule of Civil Procedure 9(b), "which requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004)* (internal quotation marks omitted).

---

[2] See http://www.marriott.com/marriott-brands.mi, at bottom of webpage.

In light of these heightened pleading rules applicable to claims for fraud, in order to survive a Rule 12(b)(6) motion to dismiss, the complaint must include "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009)*. A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Plaintiff has failed to plead fraud with the specificity required by Fed. Rule 9(b). Plaintiff's allegations are at best pure speculation that she will not be properly compensated for her alleged injuries if she is forced to bring her lawsuit in St. Kitts. Accordingly, this cause of action must be dismissed. Regarless, as established in Point II below, even if she pled her fraud cause of action adequately, St. Kitts is indeed an alternative and adequate forum in which she may litigate her dispute with the hotel where she suffered her claimed injuries.

### F.  The Fifth Cause of Action Fails to State A Claim

The plaintiff's Fifth and final cause of action, like each of the ones preceding it, also fails to state a claim.  It is well-established that a claim for punitive damages is not recognized as an independent/separate cause of action.   *Martin v. Dickson, 100 Fed. Appx. 14 (2d Cir. 2004)*["Plaintiff's third cause of action for punitive damages was also properly dismissed; there is no separate cause of action in New York for punitive damages"]. See also, *Paisley v. Coin Device Corp., 5 A.D.3d 754, 5 A.D.3d 748, 773 N.Y.S.2d 582, 583 (2d Dep't 2004)* ["We note that no separate cause of action for punitive damages lies for pleading purposes" (citing *Crown Fire Supply Co. v. Cronin, 306 A.D.2d 430, 431, 761 N.Y.S.2d 495, 496 (2d Dep't 2003)*)].

Accordingly, even assuming there was merit to plaintiff's specious, unsupported claims of "wanton, reckless and malicious" conduct on the part of MII, the Fifth Cause of Action asserted in plaintiff's Amended Complaint must be dismissed.

## POINT II
## THE THREE PART TEST FOR GRANTING DISMISSAL ON THE BASIS OF *FORUM NON CONVENIENS* IS SATISFIED AND HENCE DISMISSAL IS WARRANTED

Pursuant to the doctrine of *forum non conveniens,* a district court may dismiss a case "when an alternative forum has jurisdiction to hear the case, and when the trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Piper v. Reyno, 454 U.S. 235, 241, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)  (citing Koster v. Lumbermen's Mut. Cas. Co., 330 U.S. 518, 524, 67 S. Ct. 828, 91 L. Ed. 1067 (1947); Wiwa v. Royal Dutch Petrol. Co.,* 226 F.3d 88, 100 (2d Cir. 2000*).*

"The decision to dismiss a case on *forum non conveniens* grounds lies wholly within the broad discretion of the district court and may be overturned only when ... that discretion has been clearly abused." *Iragorri v. United Technologies Corp.,* 274 F.3d 65, 72 (2d Cir. 2001). In *Iragorri,* the Second Circuit set forth "a three- step process to guide" courts deciding whether to dismiss under *forum non conveniens.  Norex Petrol. Ltd. v. Access Indus., Inc.,* 416 F.3d 146, 153 (2d Cir. 2005) (citing *Iragorri,* 274 F.3d at 73-74).

"At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum." *Id.*  Courts should "give  greater deference to a plaintiff's  forum choice  to the extent that it was motivated by legitimate reasons, including the plaintiffs convenience and the ability of a U.S. resident plaintiff to obtain jurisdiction over the defendant, and

diminishing deference to a plaintiff's forum choice to the extent that it was motivated by tactical advantage." *Iragorri,* 274 F.3d at 73.

"At step two, [a court should] consider whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute." *Norex Petrol.,* 416 F.3d at 153. "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Id.* at 157 (internal quotation marks omitted).

"Finally, at step three, a court balances the private and public interests implicated in the choice of forum." *Id.* at 153. Private interests to be weighed include "(1) ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of willing witnesses' attendance; (4) if relevant, the possibility of a view of premises; and (5) all other factors that might make the trial quicker or less expensive." *DiRienzo v. Philip Servs. Corp.,* 294 F.3d 21, 30 (2d Cir. 2002).

Public interests include avoiding court congestion, avoiding the imposition of jury duty "that ought not to be imposed upon the people of a community which has no relation to the litigation," "holding the trial in [the] view and reach [of interested parties] rather than in remote parts ... where they can learn of it by report only," respecting the "local interest in having localized controversies decided at home," and "having the trial of a ... case in a forum that is at home with the ... law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Iragorri,* 274 F.3d at 73-74 (quoting *GulfOil Corp. v. Gilbert,* 330 U.S. 501, 508-09 (1947)).

"[I]n the determination of a motion to dismiss for *forum non conveniens*, the court may consider affidavits submitted by the moving and opposing parties and make findings of fact."

16

*Acosta v. JPMorgan Chase & Co.,* 219 F. App'x 83, 85 (2d Cir. 2007) (citations and internal quotation marks omitted).   A court also "may order limited discovery," *Martinez v. Bloomberg LP,* 740 F.3d 211, 216 (2d Cir.  2014), but should keep in mind that "[r]equiring   extensive investigation would defeat the purpose of [a *forum non conveniens*] motion." *Piper Aircraft Co., 454 U.S. at 258.*

MII respectfully submits that in the case at bar, the 3-step test articulated above favors dismissal of this action in the heavily congested Eastern District of New York because of the alternative adequate forum of St. Kitts, which has a far more significant interest in this dispute. Plaintiff may commence her action anew there, in the venue where the accident occurred and where all of the evidence and witnesses are located, and where she may include as defendants the owner (RSK) and operator (LHI) of the hotel.

Indeed, it would be "oppressive and vexatious" to MII, out of all proportion to Plaintiff's convenience, to force it to litigate this matter in the Eastern District of New York because all individuals with personal knowledge of the circumstances of the accident, as well as the daily operation and maintenance of the hotel, as well as evidence relating to notice of any allegedly defective conditions of the property, including the air conditioning unit that was allegedly leaking, are located in St. Kitts.

Further adding to the oppression faced by MII if the case remains in the Eastern District, is that MII cannot implead the St. Kitts entities who own and operate the subject hotel, as they are not subject to jurisdiction in the United States, and the individuals with personal knowledge are not subject to the subpoena power of this court.  Hence, MII would not be able to secure the depositions or trial appearance of the individuals who were responsible for maintaining the hotel

at the time the plaintiff's accident occurred. MII therefore requests that the court grant its instant motion in all respects.

### A. The Step 1 Factor (the Deference to be Accorded to Plaintiff's Chosen Forum

Concededly, plaintiff is a New York resident who sued in her home venue and does not appear to have commenced the action in New York for any tactical advantage other than the likelihood of a verdict or settlement in New York being substantially larger than any settlement or verdict she might obtain in St. Kitts. As such, plaintiffs' choice of forum must be given deference.  See *Palacios v. Coca-Cola Co., 757 F. Supp. 2d 347, 352 (S.D.N.Y. 2010)* ("[T]he greatest deference is afforded a plaintiffs choice of its home forum ...."), *aff'd, 499 F. App'x 54 (2d Cir. 2012).*

Nevertheless, "[D]eference [to a plaintiff's choice of forum] is not dispositive and . . . may be overcome." *Irigorri, supra.*  In this case, the factors to be considered in Step 2 and Step 3 militate so heavily in favor of the requested dismissal, and so greatly outweigh the Step 1 factors, that Step 1 considerations are largely moot. At the very least, the Step 2 and Step 3 factors (discussed below) sufficiently weigh in favor of a St. Kitts forum to overcome plaintiff's chosen forum.  The Court should therefore grant MII'S instant motion.

### B.    The Step 2 Considerations on a *Forum Non Conveniens* Motion Clearly Warrant Dismissal

The Step 2 considerations pertain to the adequacy of an alternative forum for the dispute. In the case at bar, the Federation of St. Kitts and Nevis is not merely an adequate forum but rather, it is the ideal forum, as it is the location where the accident occurred, where virtually every relevant witness is located and subject to jurisdiction, where the vast majority of pertinent

documents are located, and where all of the defendants are amenable to jurisdiction.[3]   See *Connolly v. Kinay, No. 11 Civ. 606 (RJS), 2012 WL 1027231 (S.D.N.Y. 2012)*[holding that a defendant's representation that it is amenable to service in the alternative forum is sufficient to satisfy the first element of the alternative forum test].

In *Suhail v. Trans-Americainvest (St. Kitts), Ltd., 2015 U.S. Dist. LEXIS 99063 (D.N.J. July 29, 2015)*, a Federal District Court in New Jersey recently dismissed a similar case on *forum non conveniens* grounds where it was apparent that St. Kitts, where the plaintiff allegedly suffered personal injuries in a hotel accident, was an appropriate and alternative forum to resolve her dispute.

Defendant Trans-Americainvest (St. Kitts), Ltd. ("Trans"), which owned and operated the hotel at the time of the accident, was incorporated in St. Kitts and had its principal place of business there.  Plaintiff's Complaint against the hotel alleged four counts: (1) defendants were negligent, reckless, and/or careless in the maintenance, operation, and supervision of the Royal Hotel; (2) defendants were negligent, reckless, and/or careless in the hiring and retention of their agents, employees, and/or servants; (3) defendants were negligent, reckless, and/or careless in the training, instruction, and warning of their agents, employees, and/or servants; and (4) defendants' conduct, acts, and/or omissions were accompanied by actual malice and/or wanton and willful disregard of plaintiff's rights, safety, and well-being.

In analyzing defendant's request for dismissal, the court noted as an initial matter that under the common law doctrine of *forum non conveniens*, a district court has the discretion to dismiss a case if "a court abroad is the more appropriate and convenient forum for adjudicating

---

[3] MI will consent to jurisdiction in the Federation of St. Kitts and Nevis.

the controversy." *Suhail, 2015 U.S. Dist LEXIS 99063, at *5, citing Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 425, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007).* The court further noted that the decision to dismiss should be based upon a court's assessment of a "range of considerations, most notable the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality." *Supra at *5-6.*

Continuing, the *Suhail* court remarked that courts often decide the issue of forum non conveniens based only on affidavits submitted by the parties; "extensive investigation" is unnecessary and would "defeat the purpose" of such a motion. See *Piper Aircraft Co., 454 U.S. at 258.* The *Suhail* court then engaged in the three-part analysis discussed above.  First, it evaluated whether "an adequate alternative forum can entertain the case" (*citing Windt v. Quest, 529 F.3d at 189-90*).  Second, assuming the forum existed, it determined "the appropriate amount of deference [to] be given to the plaintiff's choice of forum", and third, upon concluding that the alternative forum existed, and having determined the amount of deference due the plaintiff's choice of forum, *Suhail* court then balanced the relevant public and private interest factors.  The Court concluded that forcing the defendants to litigate in New Jersey would be "oppressive[] and vexatio[us]" to them out of all proportion to Plaintiff's convenience", and it therefore granted their motion to dismiss the Complaint. *Suhail, 2015 U.S. Dist LEXIS 99063, at *20.*

As to the "Adequate Alternative Forum" prong, the *Suhail* court held that St. Kitt's would be "inadequate" as an alternative forum **only if** the remedy it offered to the plaintiff was "clearly unsatisfactory", for example, "if it did not permit litigation of the subject matter of the dispute, or [w]here a plaintiff cannot access evidence essential to prove a claim." (citing *Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 161 n.14 (3d Cir. 2010)*).

The court declared that St. Kitts was an adequate alternative forum because the potentially liable parties were incorporated in St. Kitts and had their principal places of business there, and thus were amenable to process in St. Kitts, and the remaining defendants, (analogous to MII herein), represented to the court that they were willing to submit to process in St. Kitts. As noted above, MII here similarly consents to process in St. Kitts in this matter.

In the case *sub judice*, the Court should similarly conclude that St. Kitts is an adequate alternative forum in which the plaintiff may prosecute her personal injury claim.  As established in the annexed Affidavit of Kittian attorney Adrian E. Scantlebury, Esq., the judicial system of the Federation of St. Kitts and Nevis provides plaintiff with an adequate forum in which to obtain redress for her alleged injuries.  He avers that this judicial system would provide plaintiff with the following due process:

    i.     A Common Law system, which is generally based on British Common Law;

    ii.    The Federation is a constitutional democracy with an independent judicial system;

    iii.   The applicable Common Law recognizes negligence and personal injury actions;

    iv.    Although such cases are not taken on a contingency fee basis in this jurisdiction, it is normal for legal practitioners to represent plaintiffs in such actions without receiving substantial legal fees up front.

    iv.    The courts of St. Kitts and Nevis routinely grant costs to a prevailing party and can grant substantial legal costs over and above the damages award;

    v.    Pretrial process and discovery are permitted and a case management system exists so that disputes are resolved in a timely and orderly fashion;

    vi.    Plaintiffs have a right to a trial as well as two levels of appellate review, first at the Eastern Caribbean Court of Appeal and then to the Privy Council based in the United Kingdom.

If the case was to remain in the Eastern District of New York, and MII is dismissed from the lawsuit, plaintiff will have no recourse at all because the hotel owner and operator are not

parties to her lawsuit here, and are not subject to this Court's jurisdiction. It would therefore be a gross waste of this Court's valuable judicial time and resources to allow the case to proceed in New York, where plaintiff will be totally unable to recover any damages for her injuries, and to wit, in a situation where the Court has little interest in her dispute.

**C.     The Step 3 Considerations on a *Forum Non* Motion (Balancing Private and Public Interests) Similarly Warrant Dismissal of this Action**

   i.     <u>Private Interests</u>

As set forth above, the "private interest factors" of Step 3 of the *forum non conveniens* test include: (1) ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of willing witnesses' attendance; (4) if relevant, the possibility of a view of premises; and (5) all other factors that might make the trial quicker or less expensive. *Cromer Finance Ltd. v. Berger, 158 F.Supp.2d 347 (S.D.N.Y. 2001).*

MII respectfully submits that the private interests militate heavily in favor dismissing this action. The evidence, i.e., the instruments of the injury to plaintiff (the allegedly leaking air conditioner and the slippery wet floor) and the manner in which the accident occurred, are located in St. Kitts. The witnesses who maintained the hotel rooms, performed maintenance, and who first responded to the accident are all located there, as well.

Indeed, aside from the plaintiff and her travel companion, every single person who has any personal knowledge at all of the facts relevant to liability, are beyond the subpoena power of the Eastern District of New York. *See Bohn v. Bartels, 620 F. Supp. 2d 418, 432 (S.D.N.Y. 2007)* ["[T]he Court's inability to compel the attendance of witnesses who reside [abroad] weighs in favor of dismissal ... ."]; *Rodriguez v. Torres, No. Civ. B-04-036, 2004 WL 2952612 (S.D. Tex. 2004)*["Although today's technology may provide a jury any required view of the accident

scene through photographs, modules, animations, etc., if a viewing were required, it would be virtually impossible to allow in this case."]; *Breindel v. Levill & Sons, Inc., 294 F. Supp. 42, 44 (E.D.N.Y. 1968)* [an inability to view relevant premises could be the "decisive" factor in favor of dismissal].

Pursuant to *Fed. R. Civ. P. 45 (c)(1)*, entitled "Place of Compliance", a subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A)    within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B)    within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i)     is a party or a party's officer; or

(ii)    is commanded to attend a trial and would not incur substantial expense.

Obviously all of the witnesses located in St. Kitts do not reside within 100 miles of the courthouse in Brooklyn, and therefore could not be compelled to appear for deposition or trial in New York. Accordingly, subsection A that would permit them to be subpoenaed is inapplicable. Subsection B is inapplicable as well because even if the Kittian witnesses would not incur substantial expense in being compelled to travel to New York, this subsection, by its own terms, applies only to witnesses who live within the state where the deposition or trial will be conducted.

In addition to the foregoing, consistent with *Wechsler v. Four Seasons Hotels Limited, No. 1:2013cv08971 (S.D.N.Y 2014)*, the Court should reject any contentions by the plaintiff that it (1) would not be burdensome for the defendants to transport documents to the Eastern District of New York, and (2) would be possible to depose the Kittian-based witnesses remotely. Indeed,

these claims could be made in opposition to virtually any motion to dismiss on the ground of *forum non conveniens*.   The real issue, as this Court noted in *Wechsler*, is not whether trial is possible in the Eastern District of New York; of course it is <u>possible</u>.

Rather, the real issue is whether it would be more convenient to have the case litigated elsewhere.   In order to try the case in the Eastern District of New York, plaintiff will have to prove the tortured theories of liability asserted in her Amended Complaint, or alternatively, both the plaintiff, and MII, would need to elicit cooperation from, and somehow transport every single one of their numerous Kittian witnesses to New York.   Accordingly, on balance, St. Kitts is a substantially more convenient forum than the Eastern District of New York. The Court should therefore in all respects grant dismissal of plaintiff's Amended Complaint.

ii.     The Public Interests, as well, favor a *Forum Non Conveniens* Dismissal

The public interest factors also favor dismissal of this action, and commencement of a new action in St. Kitts.  First, a Kittian court would be more familiar with the applicable law. Under New York choice of law rules, which this Court follows, "the first consideration is whether there is any actual conflict between the laws of the competing jurisdictions.    If no conflict exists, then the court should apply the law of the forum state in which the action is being heard." *Excess Ins. Co. Ltd. v. Factory  Mut. Ins. Co.,  769 N.Y.S.2d 487, 489  (App. Div. 1st Dep't 2003), aff'd, 789 N.Y.S.2d  461 (N.Y. 2004).*

Thus, to the extent New York law differs from Kittian law either on the elements of a claim for negligence, or on the standards for reasonableness - the New York Court would have to apply Kittian law, with which it has little experience.    See *Burnett v. Columbus McKinnon Corp., 887 N.Y.S.2d 405, 409 (App.  Div. 4th Dep't 2009)*["Where the parties are domiciled in

24

different states with conflicting local laws, the law of the situs of the tort typically applies ...."]. And, to the extent New York law and Kittian law are identical on an issue, the Court would apply New York law, but even deciding whether the laws are identical would necessarily involve analysis of the law of St. Kitts.

Second, because this action concerns property in St. Kitts, the actions of Kittian citizens and the operations of a hotel in St. Kitts, St. Kitts very clearly has a greater interest in deciding whether the conduct of the hotel employees, as well as the design/location/condition of the air conditioning unit in plaintiff's hotel room were reasonable or not. See *Abouchalache v. Hilton Int'l Co., 464 F. Supp. 94, 98 (S.D.N.Y. 1978)* [country where the alleged negligence occurred has a higher interest in determining whether there was negligence], *aff'd sub nom. Collins v. Hilton Int'l Co., 628 F.2d 1344 (2d Cir. 1980).* To the extent New York jurors have a different view on negligent conduct than Kittians, there is no reason to impose those views on individuals and property located entirely in St. Kitts.

Third, although New York has an interest in any case involving a New York plaintiff, that interest is reduced where a more convenient adequate alternative forum is available. See *Silver v. Great Am. Ins. Co., 328 N.Y.S.2d 398, 402 (N.Y. 1972)* ["Although such residence is, of course, an important factor to be considered, *[f]orum non conveniens* relief should be granted when it plainly appears that New York is an inconvenient forum and that another is available which will best serve the ends of justice and the convenience of the parties"]. Here, as established above, St. Kitts provides not just an adequate alternative forum, but in fact a much better one because the case may require interpretation of Kittian law, because the injury occurred there, and because all of the relevant witnesses and evidence are located there.

Accordingly, as the interest of St. Kitts in this lawsuit far outweighs the interest of the Eastern District of New York, the Court should dismiss this case on the grounds of *forum non conveniens*. This Court specifically noted in *Wechsler, supra*, "As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." MII therefore respectfully submits that the Court should in all respects grant this motion.

## CONCLUSION

For all of the reasons discussed above in Points I and II, defendant MII respectfully submits that the Court should dismiss plaintiff's Amended Complaint either on the grounds that each of the plaintiff's five causes of action fails to state a claim against MII, or alternatively, and in any event, based upon the doctrine of *forum non conveniens*.

Dated: New York, New York
      August 28, 2015

                    Respectfully submitted:

                    By:_____
                        Daniel M. Stewart (DMS 7989)
                    WHITE, FLEISCHNER & FINO, LLP
                    Attorneys for the Defendant
                    61 Broadway
                    New York, New York 10006
                    (212) 487-9700
                    Our File No.: 105-18017