UNITED STATES DSITRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
VERONICA BROWN,

                    Plaintiff,

      -against-

MARRIOTT INTERNATIONAL, INC.,

                    Defendant.
------------------------------------------------------X

        **Index No.: 1:14-cv-05960 (SLT) (MDG)**


# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS


Respectfully Submitted,


*SALZMAN & WINER, LLP.*
Attorneys for Plaintiff
VERONICA BROWN
305 Broadway, Suite 1204
New York, NY 10007
(212) 233-6550


Mitchell G. Shapiro, Esq.


*SALZMAN & WINER, LLP.*
305 Broadway, Suite 1204
New York, NY 10007

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................ 1

STATEMENT OF FACTS ........................................................ 2

POINT I

The Complaint States A Plausible Claim For Relief Based On
Vicarious Liability Under The Doctrine Of Agency By Estoppel. ........ 4

Introduction ........................................................ 4

The standard of review ........................................................ 5

Applicable New York law of apparent agency ........................... 6

The complaint sufficiently alleges a claim for
vicarious liability based on agency by estoppel. ........................ 8

POINT II

Defendant Is Not Entitled To Dismissal Of The Amended
Complaint Based On The Doctrine Of *Forum Non Conveniens*. ........ 14

A. Introduction ........................................................ 14

B. Deference due to plaintiff's choice of forum ........................ 15

C. Adequacy of the alternative forum ........................... 16

D. Balancing private and public interests ........................ 17

   1. Private interests ........................................................ 17

   2. Public interests ........................................................ 22

CONCLUSION ........................................................ 25

## TABLE OF AUTHORITIES

Page

Cases:

*Accord E.F. Hutton Group, Inc. v. United States Postal Serv.*, 723 F.Supp. 951 (S.D.N.Y. 1989) ... 7

*Acosta v. JP Morgan Chase & Co.*, 219 Fed.Appx. 83 (2d Cir. 2007) ... 18

*American Steamship Owners Mut. Protection & Indem. Ass'n, Inc. v. Lafarge N.A., Inc.*, 474 F.Supp.2d 474 (S.D.N.Y. 2007), *aff'd*, 599 F.3d 102 (2d Cir. 2010) ... 21

*Amusement Industry, Inc. v. Stern*, 693 F.Supp.2d 327 (S.D.N.Y. 2010) ... 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ... 5,6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ... 6

*Bostany v. Trump Org. LLC*, 73 A.D.3d 479, 901 N.Y.S.2d 207 (1st Dept. 2010) ... 6

*Brass v. American Film Technologies, Inc.*, 987 F.2d 142 (2d Cir. 1993) ... 13

*Calavo Growers of California v. Generali Belgium*, 632 F.2d 963 (2d Cir. 1980), *cert. denied* 449 U.S. 1084 (1981) ... 18

*Clarke v. Marriott Int'l, Inc.*, 2013 WL 4758199 *6 (D.V.I. 2013) ... 14,21

*Cromer Finance, Ltd. v. Berger*, 158 F.Supp.2d 347 (S.D.N.Y. 2001) ... 18

*DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21 (2d Cir. 2002), *cert. denied*, 537 U.S. 1028 (2002) ... 15,16,18,21

*Drexel v. Union Prescription Ctrs., Inc.*, 582 F.2d 781 (3d Cir. 1978) ... 10

*Eurofins Pharma U.S. Holdings v. Bio-Alliance Pharma SA*, 623 F.3d 147 (3d Cir. 2010) ... 21

*Fogel v. Hertz Int'l, Ltd.*, 141 A.D.2d 375, 529 N.Y.S.2d 484 (1st Dept. 1988) ... 6

*Engle v. Dinehart*, 213 F.3d 639 (5th Cir. 2000) ... 6

*Four Star Capital Corp. v. NYNEX Corp.*, 1993 WL 350016 *3 (S.D.N.Y. 1993) ... 6,7,12

<u>**TABLE OF AUTHORITIES**</u> (cont.)

Page

*Fournier v. Starwood Hotels & Resorts Worldwide, Inc.*, 908 F.Supp.2d 519
  (S.D.N.Y. 2012)                                                                    17,23,24

*Francis v. Starwood Hotels & Resorts Worldwide, Inc.*, 2011 WL 3351320 *8
  (D.Col. 2011)                                                                            12

*Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142 (2d Cir. 2000)                     16

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)                                        15,16

*Hallock v. State of New York*, 64 N.Y.2d 224, 485 N.Y.S.2d 510 (1984)                   6,13

*Herbert Const. Co. v. Continental Ins. Co.*, 931 F.2d 989 (2d Cir. 1991)                   7

*Hill v. St. Clare's Hosp.*, 67 N.Y.2d 72 499 N.Y.S.2d 904 (1986)                           6

*Iragorri v. United Technologies Corp.*, 274 F.3d 65 (2d Cir. 2001)                     15,16

*Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518 (1947)                                  15

*Liamuiga Tours, Division of Caribbean Tourism Consultants, Ltd. v. Travel
  Impressions, Ltd.*, 617 F.Supp. 920 (E.D.N.Y. 1985)                                      22

*Licari v. Best Western Int'l, Inc.*, 2013 WL 3716523 *11 (D.Utah 2013)                    12

*Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604 (3d Cir. 1991)                       15

*Masuda v. Kawasaki Dockyard Co.*, 328 F.2d 662, 664–65 (2d Cir.1964)7

*Minskoff v. American Express Travel Related Svcs. Co.*, 98 F.3d 703 (2d Cir. 1996) 7

*Old Republic Inc. Co. v. Hansa World Cargo Serv., Inc.*, 51 F.Supp.2d 457
  (S.D.N.Y. 1999)                                                                           7

*Norex Petroleum Ltd v. Access Industries, Inc.*, 416 F.3d 146 (2d Cir. 2004),
  *cert. denied*, 547 U.S. 1175 (2006)                                                  15,17

*O'Donnell v. Club Mediterranee S.A.*, 2008 WL 794975 *13 (E.D.N.Y. 2008)                  21

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)                                         15

iii

## TABLE OF AUTHORITIES (cont.)

Page

*Primeaux v. United States*, 181 F.3d 876 (8th Cir. 1999), *cert. denied*, 528 U.S.
1154 (2009)                                                                                    7

*Ramirez de Arellano v. Starwood Hotels & Resorts Worldwide, Inc.*, 448 F.Supp.2d
520 (S.D.N.Y. 2006)                                                                            17

*Resnick v. Vantage Deluxe World Travel, Inc.*, 2003 WL 22052794 (S.D.N.Y.
2003)                                                                                          13

*Rodriguez v. Samsung Electronics, Ltd.*, 734 F.Supp.2d 220 (D.Mass. 2010)          20

*Rosen v. Ritz-Carlton Hotel Co.*, 2015 WL 64736 *4 (S.D.N.Y. 2015)                   19

*Ross v. Choice Hotels Int'l, Inc.*, 882 F.Supp.2d 951 (S.D.Ohio 2012)                9

*Rovinsky v. Hispanidad Holidays, Inc.*, 180 A.D.2d 673, 580 N.Y.S.2d 49 (2d Dept.
1992)                                                                                          13

*Simons v. Starwood Hotels & Resorts Worldwide, Inc.*, 2009 WL 3159566 (Sup. Ct.
N.Y. Co. 2009)                                                                                 6

*Sims v. Marriott Int'l, Inc.*, 184 F.Supp.2d 616 (W.D.Ky. 2001)                  9,12,13

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007)            15

*Standard Funding Corp. v. Lewitt*, 89 N.Y.2d 546, 656 N.Y.S.2d 188 (1997)           7

*Suhail v. Trans-Americainvest (St. Kitts), Ltd.*, 2015 WL 4598809 (D.N.J. 2015)     20

*Toppel v. Marriott Int'l, Inc.*, 2006 WL 2466247 *4 (S.D.N.Y. 2006)            6,7,8,9,13

*We v. Merrill Lynch & Co.*, 2000 WL 1159835 *5 (S.D.N.Y. 2000)                        8

*Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555 (2d Cir. 1985)    6,13

Statutes:

Fed.R.Civ. P. 8(a)(2)                                                                          5

Fed.R.Civ.P. 12(b)(6)                                                                          6

Docket No.: 14-CV- 5960 (SLT) (MDG)

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

### VERONICA BROWN,

**Plaintiff,**

-against-

### MARRIOTT INTERNATIONAL, INC.,

**Defendant.**

-----------------------------------------------------------------

### PLAINTIFF'S MEMORANDUM OF LAW
### IN OPPOSITION TO DEFENDANT'S
### MOTION TO DISMISS

-----------------------------------------------------------------

### PRELIMINARY STATEMENT

Plaintiff, Veronica Brown, submits this memorandum of law in opposition to the

motion by defendant, Marriott International, Inc. ("Marriott"), to dismiss the amended

verified complaint, pursuant to Fed.R.Civ. P. 12(b)(6) for failure to state a cause of action

or, in the alternative, on the ground of *forum non conveniens*.

At the outset, plaintiff wishes to advise the court that she hereby withdraws her

fourth and fifth causes of action for fraud and punitive damages, respectively.  Nor does

plaintiff press the allegation in her complaint that the "St. Kitts Entities", as described in

the complaint, were alter egos of Marriott, that they were *actually* owned or controlled by

Marriott, or that there was an *actual* principal-agency relationship between them.  Rather,

plaintiff contends that the amended complaint states a claim for defendant's vicarious lia-

bility, based on its having created the appearance of an agency relationship between it

and the entity referred to in the amended complaint as the St. Kitts Marriott Resort and/or St. Kitts Marriott Hotel.  Therefore, the motion to dismiss for failure to state a claim should be denied.

Nor is Marriott deserving of dismissal on *forum non conveniens* grounds.  As we shall demonstrate herein, resolution of all three steps in determining such a motion warrants its denial.  Plaintiff's choice of forum is entitled to great deference, and the balancing of the private and public interests implicated in her choice of forum weighs overwhelmingly in favor of retaining this case in the Eastern District of New York.

## STATEMENT OF FACTS

Plaintiff takes no issue with defendant's statement of the basic procedural history of the case.

As to the facts surrounding plaintiff's accident, on July 18, 2013, plaintiff and her friend, Judith Gomez Cauldwell, were guests at the St. Kitts Marriott Resort and The Royal Beach Casino, in St. Kitts, British West Indies (see bill of particulars, attached to Stewart  Decl. as part of Exh. A).  They occupied room 455 (Shapiro Decl., Exh. A [incident report])[1] and had checked in the day before (Brown Affid., Exh. B [hotel invoice]).

According to a document denominated an "INCIDENT REPORT", on St. Kitts Marriott Resort stationery and with the words "St. Kitts Marriott International" above the title, an unnamed employee of the resort prepared an account of an incident reported by

---

[1] On a motion pursuant to Fed.R.Civ.P. 12(b)(6), the court may consider, in addition to the complaint, documents attached to or referred to in the complaint, including documents the plaintiff relied on in bringing suit, which are either in the plaintiff's possession or which the plaintiff was aware of when bringing suit. *See Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007).

plaintiff, stating the nature of the incident (slip and fall), the date and time (July 18 at

12:15 AM), and plaintiff's pedigree information (Shapiro Decl., Exh. A).

      In the narrative section of the report, the employee wrote that he or she had ar-

rived at room 455 and was met by Ms. Gomez Cauldwell, who introduced the employee

to plaintiff, who was in bed (*id.*).  Plaintiff explained to the employee that "she was mak-

ing her way to the restroom when she slipped and fell as a result of the water that dripped

from the AC vent in the ceiling onto the tiled floor" (*id.*).  The report further states that

plaintiff "landed on the outer side of her left leg" and was in pain "from her hip down to

her leg" (*id.*).

      The employee reported that one "Tyrone O'Laughlin (EOD) arrived in the room

before me.  He confirmed that there was water on the floor.  This was result [*sic*] of he

AC drainage pan having [*sic*] a leak which caused water to drip from the vent in the

ceiling on to the floor.  The repair process was under way by the Engineering Team"

(*id.*).

      Attached to the incident report was plaintiff's signed "Voluntary Statement" re-

garding her accident, on St. Kitts Marriott Resort stationery, stating (Brown Affid., Exh.

C): "I got up to walk to the bathroom.  I slipped and fell in water near the bathroom door.

There was a leaking air AC vent in the room."

      Plaintiff's hotel bill invoice reflects the fact that there was a leak in her room, that

she had fallen, and that her room was changed from the fourth to the 12th floor on July

21, 2013 (Brown Affid., Exh. B), three days after the accident.

## POINT I

### The Complaint States A Plausible Claim For Relief Based On Vicarious Liability Under The Doctrine Of Agency By Estoppel.

**Introduction**

In the first cause of action of her amended verified complaint, plaintiff alleges, among other things, that her slip-and-fall accident in her hotel room as a result of her slipping on water that emanated from the air conditioner was due to the negligence of Marriott's "agents, servants, and/or employees" (¶ 28, attached to Stewart Decl. as Exhibit B).

In her second cause of action, plaintiff alleges that she "relied on what she perceived or presumed to be an apparent agency relationship between" Marriott and the hotel "in deciding to vacation at the subject premises (hotel)" (¶ 35), based on "appearances, advertisements, representations and other forms of media and communications made by defendant [Marriott] to her and the public in general that...[Marriott] controlled and in all ways was responsible for the subject premises (hotel) and any room she might occupy at the hotel" (¶ 36).

Plaintiff further claims that she "had no reason to know or realize that defendant [Marriott] would attempt to shift blame or liability for her accident to some or all of the St. Kitts entities, none of which had been disclosed to her before she made her decision to vacation at the subject hotel" (¶ 37). In addition, plaintiff alleges that her "understanding and belief that defendant [Marriott] would be responsible for and liable to her in the event she sustained injury at the hotel due to negligence was objectively reasonable" (¶ 38).

Plaintiff's related fourth cause of action, based on equitable estoppel, similarly alleges that Marriott's "various promotions, advertisements, representations, commercials,

4

brochures, internet site, stationary [*sic*], slogans and signs misled [her] into believing that defendant [Marriott] would stand behind the subject St. Kitt's [*sic*] Marriott Hotel, and would be answerable for any incidents caused by negligence on the subject premises and in particular in the subject hotel room" (¶ 41).

Plaintiff here, again, claims that she "relied to her detriment upon these misrepresentations in deciding to choose to vacation at the subject St. Kitt's [*sic*] Hotel" (¶ 42), and that Marriott "should be equitably estopped from denying responsibility or liability for the subject accident herein" (¶ 44).

The above allegations are prima facie sufficient to state a claim for relief, based on Marriott's alleged vicarious liability for the negligence of the staff at the hotel.

## The standard of review

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The rule does not demand detailed factual allegations, but it requires more than "labels and conclusions" "or a formulaic recitation of the elements of a cause of action... ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

There is no question but that the complaint satisfies this requirement in claiming, beyond mere labels, legal conclusions, or bare statement of the elements of the cause of action, that defendant Marriott is vicariously liable -- predicated on the doctrine of agency by estoppel -- for the injuries plaintiff sustained as a result of her slipping on water that dripped from the air conditioner in her hotel room.

For these same reasons, the factual allegations in the first, second, and third caus-

es of action are sufficient to withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(6).

The allegations, accepted as true and "read generously, with all inferences drawn in favor

of plaintiff", *Yoder v. Orthomolecular Nutrition Institute, Inc*., 751 F.2d 555, 562 (2d Cir.

1985); *accord Toppel v. Marriott Int'l, Inc*., 2006 WL 2466247 *4 (S.D.N.Y. 2006); *Four

Star Capital Corp. v. NYNEX Corp*., 1993 WL 350016 *3 (S.D.N.Y. 1993), "state a claim

to relief that is plausible on its face", *Ashcroft*, at 678 (internal quotation marks and cita-

tion omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), namely, vicarious li-

ability predicated on the principle of apparent agency, *see Bostany v. Trump Org. LLC*,

73 A.D.3d 479, 901 N.Y.S.2d 207 (1st Dept. 2010); *Fogel v. Hertz Int'l, Ltd*., 141 A.D.2d

375, 377, 529 N.Y.S.2d 484, 485 (1st Dept. 1988).   Apparent agency is also known as ap-

parent authority, agency by estoppel, ostensible agency, and agency by holding out, *see

Engle v. Dinehart*, 213 F.3d 639, n. 4 (5th Cir. 2000) (concurring and dissenting op.); *Hill

v. St. Clare's Hosp*., 67 N.Y.2d 72, 79, 499 N.Y.S.2d 904, 908 (1986); *Simons v. Star-

wood Hotels & Resorts Worldwide, Inc*., 2009 WL 3159566 (Sup. Ct. N.Y. Co. 2009), to

which we now turn.

### Applicable New York law of apparent agency

In *Hallock v. State of New York*, 64 N.Y.2d 224, 485 N.Y.S.2d 510 (1984), the

New York Court of Appeals stated the law of apparent agency, which applies even in the

absence of actual authority, thus (*id*., at 231):

> Essential to the creation of apparent authority are words or conduct of the prin-
> cipal, communicated to a third party, that give rise to the appearance and belief
> that the agent possesses authority to enter into a transaction. The agent cannot by
> his own acts imbue himself with apparent authority. Rather, the existence of 'ap-

> parent authority' depends upon a factual showing that the third party relied upon
> the misrepresentation of the agent because of some misleading conduct on the part
> of the principal -- not the agent [internal quotation marks and citations omitted].
> Moreover, a third party with whom the agent deals may rely on an appearance of
> authority only to the extent that such reliance is reasonable [internal quotation
> marks and citations omitted].

*Accord, Standard Funding Corp. v. Lewitt*, 89 N.Y.2d 546, 551, 656 N.Y.S.2d 188
(1997).

The above language was quoted by the Second Circuit in *Herbert Construction
Co. v. Continental Insurance Co.*, 931 F.2d 989, 993 (2d Cir. 1991), which also stated
that "[t]he existence of apparent authority is a question of fact". *Id.* (internal quotation
marks and citation omitted); *accord Minskoff v. American Express Travel Related Svcs.
Co.*, 98 F.3d 703, 708 (2d Cir. 1996); *Four Star Capital Corp.*, at *7; *see Toppel* at *7;
*Old Republic Inc. Co. v. Hansa World Cargo Serv., Inc.*, 51 F.Supp.2d 457, 471
(S.D.N.Y. 1999). As can be seen,

> [a]pparent authority is based on the principle of estoppel. It arises when a prin-
> cipal places an agent in a position where it appears that the agent has certain
> powers which he may or may not possess. If a third person holds the reasonable
> belief that the agent was acting within the scope of this authority and changes his
> position in reliance on the agent's act, the principal is estopped to deny that the
> agent's act was not authorized. *Masuda v. Kawasaki Dockyard Co.,* 328 F.2d
> 662, 664–65 (2d Cir.1964).

*Accord E.F. Hutton Group, Inc. v. United States Postal Serv.*, 723 F.Supp. 951, 959
(S.D.N.Y. 1989). "Strictly speaking, ostensible agency is no agency at all; it is in reality
based entirely on an estoppel." *Primeaux v. United States*, 181 F.3d 876 (8th Cir. 1999),
*cert. denied*, 528 U.S. 1154 (2009) (internal quotation marks and citation omitted).

7

"'[A]pparent authority may exist even if the principal did not actually subjectively intend to create an agency relationship, as long as the third party's reliance upon the principal's statement or conduct is reasonable'." *Toppel* at 7, quoting *Standard Builders Supplies v. Gush*, 206 A.D.2d 720, 721, 614 N.Y.S.2d 632, 634 (3d Dept. 1994).

**The complaint sufficiently alleges a claim for**
**vicarious liability based on agency by estoppel.**

Here, the amended complaint sufficiently makes out a legal claim based on the doctrine of agency by estoppel by first asserting that "plaintiff relied on what she per-ceived or presumed to be an apparent agency relationship between" Marriott and the hotel "in deciding to vacation at the subject premises (hotel)" (¶ 35).[2] This legal conclusion is then supported by specific factual allegations underpinning plaintiff's perception and re-liance, namely, "appearances, advertisements, representations and other forms of media and communications made by defendant [Marriott] to her and the public in general that... [Marriott] controlled and in all ways was responsible for the subject premises (hotel) and any room she might occupy at the hotel" (¶ 36). *See Amusement Industry, Inc. v. Stern*, 693 F.Supp.2d 327, 344 (S.D.N.Y. 2010); *cf. We v. Merrill Lynch & Co.*, 2000 WL 1159835 *5 (S.D.N.Y. 2000) (bare conclusory statement of agency relationship not enough to survive motion to dismiss).

Plaintiff further points to Marriott's "various promotions, advertisements, repre-sentations, commercials, brochures, internet site, stationary [*sic*], slogans and signs [,which] misled [her] into believing that defendant [Marriott] would stand behind the sub-ject St. Kitt's [*sic*] Marriott Hotel, and would be answerable for any incidents caused by

---

[2] See Brown Affid., Exh. A, a document denominated a "Room Rate Discount Authorization Form", with Marriott's name and logo at the top.

negligence on the subject premises and in particular in the subject hotel room" (¶ 41).

Plaintiff attests in her affidavit "that nearly all the signage at the hotel contains the Mar-

riott name and logo, including the entranceway to the Hotel, brochures left out at the Ho-

tel, the resort map and restaurant guide" (Brown Affid., ¶ 9 and Exhibit D attached there-

to).

The above representations, supported by documents, allege Marriott's acts of

hold-ing out to the public and to plaintiff that, from all appearances, the St. Kitts Marriott

Resort was owned, operated, and/or controlled by Marriott, even if such was not, in fact,

the case.  That is the essence of the estoppel.  In *Toppel v. Marriott International*, the

court pointed to the plaintiff's submission of "various documents -- including a hotel re-

ceipt, hotel letterhead, and check-out and check-in cards -- all of which display the 'Mar-

riott' trademark, thereby suggesting" a relationship estopping Marriott "from disclaiming

responsibility for" the hotel owner/operator's alleged negligence. *Toppel* at *8, citing

*Fogel* at 377, 529 N.Y.S.2d at 485, and *Sims v. Marriott Int'l, Inc.*, 184 F.Supp.2d 616

(W.D.Ky. 2001); *see Ross v. Choice Hotels Int'l, Inc.*, 882 F.Supp.2d 951, 956 (S.D.Ohio

2012).

In view of the foregoing, defendant's argument that "plaintiff had no relationship

or communication with [Marriott] that could reasonably suggest to her that the owner and

operator of the hotel are agents of [Marriott]..." (Def's. Memo of Law, p. 12) is as conclu-

sory as Marriott claims the amended complaint to be.

It is interesting to note in this regard that Marriott's 2013 Annual Report, ex-

changed in response to plaintiff's supplemental notice of discovery and inspection, dated

March 4, 2015 (see Shapiro Decl., Exh. B), stresses on more than one occasion how im-

portant the Marriott Hotels "flagship brand" is to its success worldwide (Bates Stamp p. 97).  The report refers to the critical importance of "enforc[ing] the standards required for our brands under both management and franchise agreements" (*id*., p. 100) and to Marriott's success as "depend[ing] on the quality and reputation of our brands," the deterioration of which "could have an adverse impact on our market share, reputation..." (*id*.).

The report further emphasizes that "our franchisees and licensees *interact directly with customers...under our brand and trade names*.  If these franchisees or licensees fail to maintain or act in accordance with applicable brand standards...or project a brand image inconsistent with ours, our image and reputation could suffer" (*id*., p. 101) (emphasis added).  Marriott's worldwide reputation undoubtedly was instrumental in enabling it to win the title of "World's Most Admired Lodging Company" in 2013, as noted by Fortune Magazine (*id*., p. 192).

The foregoing evidences Marriott's deliberate creation, consistent with the facts alleged in the amended complaint, of "an *appearance* of ownership and control purposefully designed to attract the patronage of the public." *Drexel v. Union Prescription Ctrs., Inc.*, 582 F.2d 781, 796 (3d Cir. 1978) (emphasis added).

Further with respect to Marriott's maintaining of its worldwide brand name and reputation, the management agreement regarding the operation of the Marriott hotel in question requires the manager -- Marriott St. Kitts Management Company -- to "at all times act in a manner which preserves the character, standards, and *reputation* of the Hotel" (Stewart Decl., Exh. C.1, Bates Stamp p. 26) (emphasis added) -- a reputation inextricably bound up with that of Marriott's.

Thus, the agreement states that the manager's "compliance with System Standards is critical to the success of the Hotel and the Marriott Chain" (*id.*).  The "Marriott Chain" is defined as "the chain of first class, full-service hotels operated under the brand name 'Marriott' as part of a distinctive group...known as 'Marriott Hotels, Resorts and Suites'" (*id.*, p. 15).  The "System Standards" cover a host of categories, including guest services, food quality, cleanliness, and staffing, as well as the physical plant, technology standards, and telecommunications (*id.*, p. 18) -- all of which must comply with the standards "generally prevailing as part of a chain-wide program at other comparable hotels in the Marriott Chain" (*id.*, p. 18-19).

The management agreement further provides that the owner "acknowledges and agrees that all goodwill associated with the Marriott Trademarks and the Owner's Trademark shall inure to Marriott and its Affiliates" (*id.*, p. 33).  Therefore, "the Hotel shall be known as a 'Marriott Hotel' or shall be called 'Marriott' together with other identifying names for first-class, full-service international hotels in the Marriott Chain" (*id.*, p. 49).

It is significant that the agreement requires that all notices, requests, demands, etc., to the manager in St. Kitts shall be delivered to Marriott at its Bethesda, Maryland address (*id.*, p. 66) thus:

Marriott St. Kitts Management Company, Inc.

c/o Marriott International, Inc.

10400 Fernwood Road

Bethesda, MD 20817

Plaintiff denies in the amended complaint any "reason to know or realize that defendant [Marriott] would attempt to shift blame or liability for her accident to some or all of the St. Kitts entities, none of which had been disclosed to her before she made her de-

cision to vacation at the subject hotel" (¶ 37).  Plaintiff, therefore, was never disabused of her reasonable belief that Marriott owned, operated, and/or controlled the St. Kitts Marriott Resort. *See Licari v. Best Western Int'l, Inc.*, 2013 WL 3716523 *11 (D.Utah 2013); *Sims* at 617; *Four Star Capital Corp.* at *6.

Defendant points to the fact that its website "indicates that 'Hotels shown on Marriott.com *may be* operated under a license from Marriott International, Inc. or one of its affiliates'" (Def's. Memo, pp. 12-13) (emphasis added) , as somehow suggesting the absence of reasonable reliance by plaintiff on Marriott's various promotional materials, including the website.  This argument is unavailing.  No one who reads the above-quoted statement would have any idea as to what information was intended to be conveyed, let alone the now hoped-for impression that there is not even the appearance of an ownership-or-control connection between Marriott and the St. Kitts Marriott Resort.

As if to underscore this point, on the very same website, Marriott seeks to distinguish itself from its own Marriott Vacation Club by using the following, explicit, language: "Marriott Vacation Club International and the programs and products provided under the Marriott Vacation Club Brand are *not owned, developed or sold* by Marriott International, Inc." (Shapiro Decl., Exh C) (emphasis added).  Marriott was certainly capable of using, when it wanted to, the appropriate language to alert its prospective patrons that there was no ownership or control connection in this instance. *Cf. Francis v. Starwood Hotels & Resorts Worldwide, Inc.*, 2011 WL 3351320 *8 (D.Col. 2011) ("[T]he presence of a prominently displayed disclaimer can undermine a claim of apparent agency.").

Also on its website, Marriott refers to the St. Kitts Marriott Resort as "*Our* St. Kitts hotel" (Shapiro Decl., Exh D) (emphasis added) and uses similarly prideful, possessive language elsewhere on the site, such as "stay with *us*..." and "*we* offer 500 locations worldwide" (*id.*) (emphasis added).

Taking the claims in the first three causes of action at their plausible face value and "with all inferences drawn in favor of plaintiff", *Yoder*, 751 F.2d at 562; *Toppel* at *8, it does not "'appear[ ] beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993), quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see Toppel* at *4.  This is all the more so when we consider that defendant has not yet sought to take plaintiff's deposition.[3]

Finally, defendant maintains that "[e]ven assuming, *arguendo*..., plaintiff could establish there was some misrepresentation, her Amended Complaint nevertheless fails to indicate how she was prejudiced" (Def's. Memo, p. 13).  This argument is without merit and is not supported by case law.  The prejudice to plaintiff is implicit in, and expressly arises out of, her claim that she was "misled" into believing she had recourse to Marriott International "and its name and reputation" -- not an independently owned local hotel that happened to have "Marriott" in its name -- "in the event of something untoward happening while [she] was a guest at the subject hotel" (¶ 43, and see ¶ 46).  That is at the core of plaintiff's claim for vicarious liability under the doctrine of agency by estoppel, and it was not necessary that she allege anything further. *See Hallock*, at 231; *Rovinsky v. Hispanidad Holidays, Inc.*, 180 A.D.2d 673, 580 N.Y.S.2d 49 (2d Dept. 1992); *Resnick v.*

---

[3] Defendant has made a motion before Hon. Magistrate Judge Marilyn D. Go for a stay of discovery (returnable on the same date as the present motion), which plaintiff does not oppose. Magistrate Judge Go has, accordingly, stayed discovery.

*Vantage Deluxe World Travel, Inc.*, 2003 WL 22052794 (S.D.N.Y. 2003); *Sims*, 184 F.Supp.2d 616.

That plaintiff can bring suit in St. Kitts, as defendant points out, does not negate her reasonable reliance on the fact that Marriott held itself out as owning and/or operating the St. Kitts Marriott Resort.

Based on the foregoing, the motion to dismiss for failure to state a claim for vicarious liability based on the doctrine of apparent agency should be denied.

## POINT II

### Defendant Is Not Entitled To Dismissal Of The Amended Complaint Based On The Doctrine Of *Forum Non Conveniens*.

#### A. Introduction

As a preliminary matter, we note that "[a] defendant must bring a motion to dismiss on grounds *of forum non conveniens* 'within a reasonable time' after the facts underlying the motion became known, or reasonably knowable, to the defendant." *Clarke v. Marriott Int'l, Inc.*, 2013 WL 4758199 *6 (D.V.I. 2013) (citing *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 177 [3d Cir. 1991], quoting *In re Air Crash Disaster Near New Orleans, La on July 9, 1982*, 821 F.2d 1147, 1165 [5th Cir. 1987], *vacated on other grds. sub nom. Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 [1989]). Untimeliness does not amount to a waiver, but it weighs heavily against granting the motion. *Id.*

Here, plaintiff commenced her action in New York Supreme Court in April 2014, when it became reasonably knowable to defendant soon thereafter that the accident had occurred in St. Kitts. That was 17 months ago. Defendant then waited six months before removing the case to this Court on October 9, 2014, and did not move to dismiss the

14

complaint on *forum non conveniens* grounds until August 28, 2015, more than nine months later.

With this as background, we address the three-step process that guides the Court in exercising its discretion to grant or deny a *forum non conveniens* motion: (1) determining the degree of deference due the plaintiff's choice of forum; (2) whether the alternative forum proposed by the defendant is adequate to adjudicate the dispute; and (3) balancing the private and public interests implicated in the choice of forum. *See Norex Petroleum Ltd v. Access Industries, Inc.*, 416 F.3d 146, 153 (2d Cir. 2004), *cert. denied*, 547 U.S. 1175 (2006). The "heavy burden" with respect to all three elements is on the defendant in opposing the plaintiff's forum choice. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007); *see Iragorri v. United Technologies Corp.*, 274 F.3d 65, 71 (2d Cir. 2001); *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 609 (3d Cir. 1991).

## B. Deference due to plaintiff's choice of forum

There is "a strong presumption in favor of the plaintiff's choice of forum," *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981); so much so that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should *rarely* be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (emphasis added); *see Norex* at 154; *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30-31 (2d Cir. 2002), *cert. denied*, 537 U.S. 1028 (2002).

Here, there is no indication that plaintiff's choice of forum in New York was made for anything other than bona fide reasons, namely, that plaintiff resides there and that Marriott -- a Delaware corporation with its principal place of business in Maryland and

doing business in New York -- was amenable to suit in New York. Plaintiff's choice, in what is now only a two-party lawsuit, *see Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) ("Where there are only two parties to a dispute, there is good reason why it should be tried in the plaintiff's [chosen] home forum... ."), was legitimate and not a tactical maneuver intended to "'vex,' 'harass,' or 'oppress' the defendant by inflicting upon [it] expense or trouble not necessary to [her] own right to pursue [her] remedy." *Gilbert* at 508; *see DiRienzo* at 30; *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 145-46 (2d Cir. 2000). Marriott, to be sure, has not shown otherwise.

## C. **Adequacy of the alternative forum**

With respect to the adequacy of St. Kitts as an alternative forum, the second step in the analysis of a *forum non conveniens* motion, we are constrained to acknowledge that, while St. Kitts is, technically speaking, an available and adequate forum, *see Gilbert*, at 250, and that defendant has consented to jurisdiction there (Def's. Memo, p. 19, n. 3), still it must be considered that plaintiff will not be afforded a trial by jury in St. Kitts, where cases are decided by a single judge (Stewart Decl., Exh. F).

In addition, attorneys in St. Kitts may not accept fees on a contingent basis, and personal injury trials consist of written witness statements supplemented by oral testimony (*id.*), not the live testimony that is given in the United States before a jury that can discern a witness's demeanor. We would further note that, were the trial to be held in the small Caribbean Island of St. Kitts, there remains the possibility that a major employer such as Marriott will receive undue sympathy by the judge. In this connection, the court in *Iragorri* wrote, 274 F.3d at 75: "Courts should be mindful that, just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismis-

16

sal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of similar forum-shopping reasons.  District Courts should therefore arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience and a clear preferability of the foreign forum."

As further evidence that Marriott has not demonstrated a clear preferability of the foreign forum, we note that both Marriott and the St. Kitts Marriott Resort are named insureds on the same foreign commercial, general liability insurance policy in effect at the time of the accident, issued by New York insurer American Home Assurance Company, (see Shapiro Decl., Exh. E ).  One would be forgiven for concluding, therefore, that the real party in interest in this litigation is not Marriott but the insurer, which wants this case tried in St. Kitts for obvious reasons.

With respect to Marriott's consent to personal jurisdiction in St. Kitts, it has "failed to demonstrate that a [Kittian] court would permit [plaintiff] to litigate the issue of agency liability." *Fournier v. Starwood Hotels & Resorts Worldwide, Inc*., 908 F.Supp.2d 519, 523 (S.D.N.Y. 2012).  In *Fournier*, the plaintiff brought a negligence action against Starwood "under a theory of [apparent] agency liability." *Id.*  The court quoted from *Ramirez de Arellano v. Starwood Hotels & Resorts Worldwide, Inc*., 448 F.Supp.2d 520 (S.D.N.Y. 2006), stating that "'issues of corporate law and vicarious liability' are 'uniquely American'," *id.*, at 528, which argues against the adequacy of St. Kitts as an alternative forum. See § D.2 below for further discussion of this point.

## D. Balancing private and public interests

### 1. Private interests

Defendant, a worldwide hotelier, can easily and inexpensively make its two witnesses available to the forum district. *See Norex* at 155.  "There is no serious inconvenience", *Cromer Finance, Ltd. v. Berger*, 158 F.Supp.2d 347, 360 (S.D.N.Y. 2001), for two witnesses from St. Kitts to travel to New York for, at most, a one- or two-day trial on liability and be put up in a Marriott hotel. *See id.*; *Calavo Growers of California v. Generali Belgium,* 632 F.2d 963, 969 (2d Cir. 1980), *cert. denied* 449 U.S. 1084 (1981) ("A forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel.  It will often be quicker and less expensive to transfer a witness or a document than to transfer a lawsuit.") (Newman, J., concurring); *DiRienzo* at 30 ("Willing witnesses can easily travel from Toronto to New York by a direct 90 minute flight.")  The flight time from St. Kitts to New York is approximately three hours.  Defendant, moreover, has all but conceded that "the Kittian witnesses would not incur substantial expense in being compelled to travel to New York" (Def's. Memo, p. 23), presumably because they will be reimbursed for their travel expenses and will incur none for food or lodging.

There are only four known witnesses involved in the liability aspect of this case. Defendant's discovery response dated March 19, 2014, indicates that, "[a]side from the plaintiff and any individuals identified in her medical records," all of whom are from New York (see Brown Affid., ¶ 11), it was aware of only three "individuals who may have information relevant to the lawsuit" (Shapiro Decl., Exh. F).  One is Judy Gomez Caldwell, plaintiff's roommate at the Marriott St. Kitt's Resort.  She was a witness to the

leaking problem with the air conditioner vent (see Brown Affid., ¶¶ 5, 7-8; Shapiro Decl., Exh. A).[4]

The other two witnesses are Tyrone O'Laughlin and Dameon Lawrence.  Mr. O'Laughlin, a hotel employee, was the maintenance man summoned to the room (see Winer Decl., Exh. A); he informed plaintiff and Ms. Caldwell that the leaking vent was a recurring problem.  Mr. Lawrence is presumably the unnamed hotel employee who prepared the accident report.  It is to be expected that these witnesses are willing to testify.  Indeed, Marriott has not identified any Kittian witnesses who would not be willing to appear in New York to testify on its behalf.  It has merely referred to the fact that any (as yet unidentified) Kittian witnesses are necessarily beyond the Court's subpoena power (Def's. Memo, pp. 22-23) -- an irrelevancy at this point.[5]  *See Rosen v. Ritz-Carlton Hotel Co.*, 2015 WL 64736 *4 (S.D.N.Y. 2015) ("[I]f neither party asserts that a witness will be unwilling to testify voluntarily, the availability of process to compel testimony is irrelevant to the transfer analysis.").  Defendant also refers to the "numerous Kittian witnesses" it will have to transport to New York (*id.*), without identifying them or indicating their involvement in this case.

Apart from the four liability witnesses, including two from New York, all of plaintiff's damages witnesses are from New York.  Plaintiff attests in her affidavit that the only medical attention she received in St. Kitts was a brief visit to a local facility for an

---

[4] "It has long been the law of this Circuit that in the determination of a motion to dismiss for *forum non conveniens*, the court may consider the affidavits submitted by the moving and opposing parties and make findings of fact." *Acosta v. JP Morgan Chase & Co.*, 219 Fed.Appx. 83, 85 (2d Cir. 2007) (internal quotation marks and citations omitted).

[5] Defendant refers to the supposed inconvenience of having to try "the tortured theories of liability in [plaintiff's] Amended Complaint" in New York (Def's. Memo, p. 24).  We have already demonstrated that plaintiff's theory of vicarious liability, based on apparent agency, is meritorious on its face.  Defendant, in any event, has not cited a single case granting a *forum non conveniens* motion on the ground that, according to the defendant, the complaint lacks merit.

X-ray, "which could not be performed" (Brown Affid., ¶ 11). On the other hand, she has been seen and treated by several medical providers in New York, including an orthopedist and an osteopath, as well as the neurosurgeon who operated on her neck on August 21, 2013 (*id.*). Plaintiff also underwent physical therapy and was seen on follow-up visits in New York (*id.*). Thus, all of her medical records and physicians are located in New York, and her medical providers are not available to testify in St. Kitts.[6] *See Rodriguez v. Samsung Electronics, Ltd.*, 734 F.Supp.2d 220, 226 (D.Mass. 2010).

This case is unlike *Suhail v. Trans-Americainvest (St. Kitts), Ltd.*, 2015 WL 4598809 (D.N.J. 2015), on which Marriott heavily relies (Def's. Memo, pp. 19-21). There, in granting the motion for *forum non conveniens*, the court wrote: "Trans has provided the Court with a list of witnesses it intends to call, which includes security and management personnel who responded to the incident, police and paramedic emergency responders, engineers who certified that the [collapsed] walkway in question was in compliance with the building code, [university] personnel who responded to the accident," and numerous medical providers, "*all of whom are located in St. Kitts.*" *Id.*, at *4 (emphasis added). That is a far cry from the sparseness of the witness list here, so far as liability is concerned, and the complete absence of medical providers who treated plaintiff in St. Kitts, so far as damages are concerned.

Also, unlike in *Suhail*, Marriott has not pointed to any expected difficulties in securing the voluntary presence of its *two* liability witnesses in this forum. In *Suhail*, "the majority of evidence and witnesses are located in St. Kitts, or their location is unknown",

---

[6] Although testimony is generally taken on written statements in St. Kitts, it is also "supplemented by oral testimony" (Stewart Decl., Exh. F, ¶ 7.vii), presumably at the direction of the Judge deciding the case. Thus, there can be no guarantee that oral testimony by plaintiff's physicians, let alone by plaintiff herself and Ms. Gomez Cauldwell, would not be demanded at some point.

*id.*, at \*5, and "[a]ny sources of proof, including the premises and records of past acci-

dents or remedial measures...are located in St. Kitts." *Id.* That is not the case here.

We would further note that plaintiff Suhail, a medical student residing in a St.

Kitts hotel, was provided with certain rules and policies as part of her initial student agre-

ement, in connection with which she "'unequivocally' agree[d] 'to submit to the jurisdic-

tion of St. Kitts'." *Id.*, at \*1.

Defendant has no overriding need of a live witness to produce its accident report,

and there is no critical need to view the air conditioner vent in question, since the leak

was a transient condition, and, as indicated in plaintiff's affidavit (¶ 8), the hotel's bill in-

dicated the necessity for a change of rooms from the 4th to the 12th floor due to the per-

sistent problem with the vent. *See Gilbert* at 507; *Eurofins Pharma U.S. Holdings v. Bio-

Alliance Pharma SA*, 623 F.3d 147, 161 (3d Cir. 2010); *Clarke* at \*9 ("A view of the pre-

mises would not necessarily be critical or appropriate to this action, as the current condi-

tion of the bathtub is far less relevant than the condition of the bathtub at the time of

Plaintiff's alleged injury."); *O'Donnell v. Club Mediterranee S.A.*, 2008 WL 794975 \*13

(E.D.N.Y. 2008). There appears to be virtually no dispute in this case that Marriott had

prior notice of the recurring problem with the leaking air conditioner vent as the cause of

plaintiff's accident and resultant injury (see Brown Affid., Exh. E).

Marriott's claim that "the vast majority of pertinent documents are located" in St.

Kitts (Def's. Memo, pp. 18-19), without specifying what they are or their relevance to the

case, is not supported by the record and does not entitle it to a change of forum. The only

known documents relevant to the issue of liability are the invoice, the accident report, and

plaintiff's voluntary statement, all of which have already been exchanged and only con-

21

firm the fact of Marriott's vicarious liability. *See DiRienzo* at 30 (defendants "failed to explain how transporting the documents or copies of them would be 'oppressive' or 'vexatious'"); *American Steamship Owners Mut. Protection & Indem. Ass'n, Inc. v. Lafarge N.A., Inc.*, 474 F.Supp.2d 474, 484 (S.D.N.Y. 2007), *aff'd*, 599 F.3d 102 (2d Cir. 2010) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents."); *O'Donnell* at *14. This is not a complicated liability case, and the documents bear that out.

## 2. **Public interest**

The court in *Liamuiga Tours, Division of Caribbean Tourism Consultants, Ltd. v. Travel Impressions, Ltd.*, 617 F.Supp. 920 (E.D.N.Y. 1985), wrote that "[f]actors of public interest are perhaps less weighty and include congestion of the forum's docket," *id.*, at 930, an issue defendant has failed to address. In *Liamuiga*, the court declared that the public interest did not warrant granting the motion, because, "as the case concerns a New York citizen, and apparently New York law, the community has an interest in its resolution." *Id.*, at 931; *cf. Arellano* at 530 (noting that "the issue of court congestion...seems at best a makeweight argument").

Here, it is unseemly for Marriott to insist on applying Kittian law, when the very management agreement between the hotel owner (St. Kitts Marriott Resort) and the manager (Luxury Hotels International Management St. Kitts Ltd.) -- both of which are Kittian corporations (see Stewart Decl., Exhs. C, E) -- provides that the agreement "is executed pursuant to, and shall be construed under and governed *exclusively* by, the *laws of the State of New York,...without regard to the conflict of law provision thereof*" (Stewart Decl., Exh. C.1, p. 65) (emphasis added).

The instant litigation, of course, does not require interpretation of the management agreement, but it certainly evidences Marriott's absolute insistence on applying New York law to the exclusion of local, Kittian law. (No doubt this provision exists in every other management agreement involving a Marriott brand hotel.) Therefore, the general reluctance of courts to apply foreign law as a factor in the public interest analysis, *see Arellano* at 531, does not come into play here. Indeed, in *Fournier v. Starwood Hotels*, a negligence action involving an assault on the plaintiff while a guest at a Starwood hotel in Helsinki, Finland, the court noted that "the dispositive issue in this case", 908 F.Supp.2d at 523, and "the key dispute at this stage of the litigation", *id.*, at 525, are "whether Hotel Kamp acted as Starwood's apparent agent", not "the alleged assault in Finland." *Id.*[7] As stated earlier, the question of apparent agency was referred to as "the unique issue of whether a U.S. citizen may hold an American company vicariously liable for the actions of a foreign entity operating under the American company's brand." *Id.*

The court in *Fournier* went on to say that

[t]here can be little doubt that U.S. courts and jurors would have a greater interest in this question than their Finnish counterparts. *Cf. Ramírez de Arellano*, 448 F.Supp.2d at 530–31 (noting that "the United States, having created the corporation as a legal person and having endowed it with the ability to limit its liability for the acts and omissions of its subsidiaries and contractors, has a greater local interest in litigating issues relating to the propriety of naming Starwood as a defendant" than does the forum where the underlying tort allegedly occurred).

*Id.* The same principle squarely applies to the instant case.

---

[7] Marriott does not seek dismissal of the amended complaint because it was not negligent, but because it claims it is not vicariously liable for the hotel's negligence.

In addition to Marriott's stated insistence on applying New York law to disputes involving the operation of the hotel, the *Fournier* court's discussion of the conflict of law issue further points directly to the application of New York law here and, hence, to the conclusion that public interest considerations warrant the denial of Marriott's *forum non conveniens* motion.  It is worth quoting at length. 908 F. Supp. 2d at 525:

> With respect to choice of law, it seems possible, if not probable, that U.S. law will govern the question of Starwood's vicarious liability. *See Niv. v. Hilton Hotels Corp.,* 710 F.Supp.2d 328, 346 (S.D.N.Y.2008) (noting that, on a motion to dismiss for *forum non conveniens,* a court "is not required to decide the issue of conflict of law," but must nonetheless consider it). To the extent that an actual conflict arose, this Court would apply New York's choice-of-law rules. *See Forest Park Pictures v. Universal Television Network, Inc.,* 683 F.3d 424, 433 (2d Cir. 2012). Under those rules, the three-prong framework set forth in *Neumeier v. Kuehner,* 31 N.Y.2d 121, 335 N.Y.S.2d 64 (1972), would apply. *See, e.g., Global-Net Financial.Com, Inc. v. Frank Crystal & Co., Inc.,* 449 F.3d 377, 384 (2d Cir. 2006) (stating that vicarious liability rules are loss-allocating).
>
> Here, the third *Neumeier* rule would govern, because the parties are domiciled in different states, and neither party is a domiciliary of Finland, where the tort allegedly occurred. *See Edwards v. Erie Coach Lines Co.,* 17 N.Y.3d 306 [,321-22], 929 N.Y.S.2d 41 (2011). In such circumstances, the law of Finland typically would apply. *Id.* However, in cases involving loss-allocating rules, New York courts generally recognize that the locus jurisdiction "has at best a minimal interest in determining the right of recovery." *Dargahi v. Honda Lease Trust,* 370 Fed.Appx. 172, 174 (2d Cir. 2010) (internal quotation marks omitted); *see also O'Brien v. Marriot Int'l, Inc.,* No. 04 Civ. 3369(WP), 2006 WL 1806567, at *4 (E.D.N.Y. June 29, 2006) (collecting cases). Therefore, we would likely apply U.S. law to the dispositive issue in this case, confirming our conclusion that the public interest factors favor retention.

Finally, we submit that retaining jurisdiction in the Eastern District benefits the American public by fostering transparency between Marriott and its customers. If Marriott brand hotels are, in fact, independently owned and operated such that there should be no basis for an apparent agency relationship between them, the public should know about it before hand.

Based on the forgoing, Marriott has failed to carry its "heavy burden" of demonstrating that plaintiff's choice of forum should not be retained.

## **CONCLUSION**

Marriott's motion to dismiss should be denied in its entirety.

Dated: New York, N.Y.
      September 24, 2015

                                       Respectfully submitted,

                                       SALZMAN & WINER, LLP
                                       Attorneys for Plaintiff

                                       By _____
                                          MITCHELL G. SHAPIRO
                                       305 Broadway, Suite 1204
                                       New York, N.Y. 10007
                                       (212) 233-6550

ALEXANDER J. WULWICK
Of Counsel