UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
VERONICA BROWN,

                    Plaintiff,

      -against-

MARRIOTT INTERNATIONAL, INC.,

                    Defendant.
-----------------------------------------------------------------x

**MEMORANDUM
AND ORDER**

14-CV-5960 (SLT) (MDG)

**TOWNES, United States District Judge:**

      Defendant Marriott International, Inc. ("Defendant") has moved to dismiss the Amended

Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or,

alternatively, on the grounds of *forum non conveniens*. (ECF No. 16, 43.) Defendant's motion

seeking dismissal based on *forum non conveniens* is DENIED.

      Defendant's motion seeking dismissal based on failure to state a claim under Rule

12(b)(6) is GRANTED as to Plaintiff's Second and Third Causes of Action. Plaintiff Veronica

Brown ("Plaintiff") has withdrawn her First, Fourth, and Fifth Causes of Action (Pl. Memo. of

Law in Opp. to Def. Mot. to Dismiss 1-2, ECF No. 46; Minute entry, Oct. 4, 2017). During oral

argument on Defendant's motion on October 4, 2017, Plaintiff's counsel confirmed on the record

that she has withdrawn these three claims. Thus, the Court will not rule on the portions of

Defendant's motion arguing that these three Causes of Action fail to state a claim.

      Plaintiff is granted leave to sufficiently plead the only claim that Plaintiff still seeks to

pursue – vicarious liability based on the theory of apparent agency. Within 30 days of entry of

this Memorandum and Order, Plaintiff is directed to file a Second Amended Complaint that

sufficiently alleges her claim for vicarious liability based on the theory of apparent agency consistent with this Memorandum and Order.

## THE FACTS

Plaintiff alleges "[t]hat on or about the 18[th] day of July, 2013 at approximately 10:30 a.m.," while a paid guest at "a certain hotel and resort located on Frigate Bay Road in Frigate Bay, St. Kitt's, BWI known variously as the St. Kitts Marriott Resort and/or St. Kitt's Marriott Hotel[,] .... she was caused to slip and fall as a result of water dripping down from the air conditioner and air conditioner vent in the ceiling in the aforementioned 'hotel room,' causing the plaintiff to strike and come into violent contact with the floor, thereby causing her to sustain serious and permanent personal injuries." (Am. Ver. Compl. ¶¶ 16, 25, 27, ECF No. 16.) St. Kitts island and the neighboring island of Nevis are an independent "two-island country in the West Indies" called the "Federation of Saint Kitts and Nevis ...."[1] As a result of the July 18, 2013 incident, Plaintiff allegedly "sustained serious injuries, a severe shock to her nervous system, and certain internal injuries, and has been caused to suffer severe physical pain and mental anguish as a result thereof. Upon information and belief, some of these injuries are of a permanent and lasting nature. Plaintiff has been rendered sick, sore, lame and disabled, and so remains; she has been incapacitated for her vocation and avocations; and she has been and will in the future be required to seek, obtain and undergo hospital and medical care, attention and treatment ...." (*Id.* at ¶ 30.)

---

[1]    https://en.wikipedia.org/wiki/Saint_Kitts_and_Nevis.

Plaintiff resides in Brooklyn, New York. (Pl. Memo. of Law in Opp. to Def. Mot. to Dismiss 15; Notice of Removal ¶ 9, ECF No. 1.) Defendant is a Delaware corporation with its principal place of business in Maryland. (Notice of Removal ¶ 7.)

On October 10, 2014, this action was removed from the Supreme Court of New York State, Kings County to the Eastern District of New York. (ECF No. 1.) Defendant moved for removal based on diversity jurisdiction. (*Id.* at ¶¶ 7, 9.) Initially, Plaintiff had also sued the "St. Kitts Marriott Resort and the Royal Beach Casino." (ECF No. 1.) After removal, Plaintiff filed an Amended Complaint in which she removed the St. Kitts entity as a defendant, leaving Marriott International, Inc. as the only defendant in this case. (Am. Ver. Compl.)

In the Amended Verified Complaint, Plaintiff has defined the "St. Kitts Entities" to include the hotel where she stayed, the "St. Kitts Marriott Resort & the Royal Beach Casino" (the "Hotel"), and the "Royal St. Kitts Beach Resort, Ltd.; Marriott St. Kitts Beach Club; Royal St. Kitts Golf Club; [and the] Luxury Hotels International Management St. Kitts Ltd." (*Id.* at ¶ 2.) The First Cause of Action alleges that Defendant is the "parent" of the "St. Kitts Entities[,]" the "St. Kitts Entities" are the agents of Defendant, Defendant "through its servants, agents and/or employees breached, violated and disregarded their affirmative duty, by causing, suffering, permitting and allowing the 'hotel room' of said 'premises' to become, be and remain wet, slippery, unmated, unsafe, defective and hazardous, and to continue to remain" in that condition, "so that it constituted a nuisance, hazard and trap to the unwary, particularly plaintiff[,]" and thus, Defendant is liable for the Hotel's "negligence, carelessness and recklessness" that led to her accident and resulting injuries. (*Id.* at ¶¶ 1-29.) The Second Cause of Action alleges liability based on "Agency." (*Id.* at ¶¶ 33-9.) The Third Cause of Action alleges

liability based on "Equitable Estoppel." (*Id.* at ¶¶ 40-4.) The Fourth Cause of Action alleges liability based on "Fraud[,]" and the Fifth Cause of Action alleges punitive damages. (*Id.* at ¶¶ 45-56.) Plaintiff seeks damages, punitive damages, and costs, in an amount to be determined at trial. (Am. Compl. at WHEREFORE clause.)

Fact discovery was scheduled to be completed by September 30, 2015. (Minute Entry Feb. 23, 2015.) But on September 18, 2015, United States Magistrate Judge Marilyn Go granted Defendant's unopposed request to stay discovery pending resolution of Defendant's anticipated motion to dismiss. (Order.) Based on the docket entries in this case and the documents submitted in connection with the present motion, Plaintiff did make discovery requests to address Defendant's *forums non conveniens* argument. (ECF No. 21; Scheduling Order docketed on May 27, 2015; ECF Nos. 25 and 28; Minute Order for Motion Hearing docketed on June 22, 2015.)

On October 16, 2015, Defendant moved to dismiss the entire Amended Verified Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) or based on *forum non conveniens*.[2] (ECF No. 44.) In opposing Defendant's motion, Plaintiff withdrew certain Causes of Action and narrowed her claim to just one – that Defendant is liable based on an "apparent agency" theory or "agency by estoppel[,]" and argued that she has sufficiently pled that claim. (Pl. Memo. of Law in Opp. to Def. Mot. to Dismiss, ECF No. 46.) Plaintiff did not oppose Defendant's motion under Rule 12(b)(6) as it pertained to her First, Fourth, and Fifth Causes of Action; Plaintiff's opposition under Rule 12(b)(6) is limited to her Second and Third Causes of Action. (*Id.*) Plaintiff also argued that the Court should deny Defendant's motion seeking dismissal based on *forum non conveniens*. (*Id.*)

---

[2] Although Defendant's Notice of Motion states that Defendant is also moving to dismiss the case under Federal Rules of Civil Procedure 12(b)(7) and 19(b) for failure to sue a necessary party, Defendant makes no arguments under these Rules. (ECF Nos. 43, 44.)

4

## I. THE *FORUM NON CONVENIENS* MOTION IS DENIED

### A. Legal Standard

"The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947), *superseded by statute on other grounds*. "[D]istrict courts enjoy broad discretion in" determining how to rule on a *forum non conveniens* motion. *Norex Petroleum Ltd. v. Access Industries, Inc.*, 416 F.3d 146, 153 (2d Cir. 2005), *cert. denied*, 547 U.S. 1175 (2006). The Second Circuit has "outlined a three-step process to guide the exercise of that discretion." *Id.* (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) (*en banc*)). "At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum.... At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute.... Finally, at step three, a court balances the private and public interests implicated in the choice of forum...." *Id.* (citing *Iragorri*, 274 F.3d at 73-4). The Supreme Court ruling in "Gilbert requires that there be an adequate alternative forum in order for a forum non conveniens dismissal to be granted. *330 U.S. at 506-07.*" *Blanco, F. v. Banco Indus. De Venezuela, S.A.*, 997 F.2d 974, 981 (2d Cir. 1993).

"The central purpose of a forum non convéniens inquiry is to determine where trial will be most convenient and will serve the ends of justice.... To prevail on a motion to dismiss based on forum non conveniens, a defendant must demonstrate that an adequate alternative forum exists and that, considering the relevant private and public interest factors set forth in *Gilbert, 330 U.S. at 508-09*, the balance of convenience tilts strongly in favor of trial in the foreign forum." *R. Maganlal & Co. v. M.G. Chemical Co.*, 942 F.2d 164, 167 (2d Cir. 1991). "The

Supreme Court has declined to fashion the exact circumstances that would justify or require

either grant or denial of remedy.... Consequently, a district court's inquiry is highly fact

specific." *Bohn v. Bartels*, 620 F.Supp.2d 418, 427-28 (S.D.N.Y. 2007) (internal quotation marks

and citations omitted). In ruling on a *forum non conveniens* motion, "a court considers not only

the allegations of the pleadings but all the evidence before it, and does not presume the facts

pleaded to be true." *Ramirez de Arellano v. Starwood Hotels & Resorts Worldwide, Inc.*, 448

F.Supp.2d 520, 522 (S.D.N.Y. 2006) (citation omitted). A district court's ruling on a *forum non*

*conveniens* motion is reviewed for "abuse of discretion." *Norex Petroleum Ltd.*, 416 F.3d at 153.

## B. Degree Of Deference to Accord Plaintiff's Choice of Forum

"Any review of a forum non conveniens motion starts with 'a strong presumption in favor

of the plaintiff's choice of forum.'" *Norex Petroleum Ltd.*, 416 F.3d at 154 (quoting *Piper*

*Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)). "[T]he presumption applies with less force

when the plaintiff or real parties in interest are foreign." *Piper Aircraft Co.*, 454 U.S. at 255;

*Norex Petroleum Ltd.*, 416 F.3d at 154. But "these are not abrupt or arbitrary rules.... Rather,

they illustrate a broader principle under which the degree of deference to be given to a plaintiff's

choice of forum moves on a sliding scale depending on the degree of convenience reflected by

the choice in a given case." *Norex Petroleum Ltd.*, 416 F.3d at 154 (internal quotation marks and

citation omitted). The Second Circuit has explained that:

> the greater the plaintiff's or the lawsuit's bona fide connection to the United States
> and to the forum of choice and the more it appears that considerations of
> convenience favor the conduct of the lawsuit in the United States, the more
> difficult it will be for the defendant to gain dismissal for *forum non conveniens*....
> On the other hand, the more it appears that the plaintiff's choice of a U.S. forum
> was motivated by forum-shopping reasons -- such as attempts to win a tactical
> advantage resulting from local laws that favor the plaintiff's case, the habitual
> generosity of juries in the United States or in the forum district, the plaintiff's
> popularity or the defendant's unpopularity in the region, or the inconvenience and
> expense to the defendant resulting from litigation in that forum -- the less

> deference the plaintiff's choice commands and, consequently, the easier it
> becomes for the defendant to succeed on a *forum non conveniens* motion by
> showing that convenience would be better served by litigating in another country's
> courts.

*Iragorri*, 274 F.3d at 72 (where the Court ruled on the degree of deference to accord a plaintiff's

choice of forum when a plaintiff resides in the United States but outside the district in which the

action is filed).

Where the plaintiff has sued in her home forum and "there are only two parties to a

dispute," as is the case here, the resident "should not be deprived of the presumed advantages of

his [or her] home jurisdiction except upon a clear showing of facts which either (1) establish

such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's

convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen

forum inappropriate because of considerations affecting the court's own administrative and legal

problems." *Koster v. American Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 524 (1947).[3] "In

any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his

[or her] home forum will normally outweigh the inconvenience the defendant may have shown."

*Id.*

Here, "considerations of convenience" rather than forum-shopping reasons support

Plaintiff's choice to sue in her home forum. *Iragorri*, 274 F.3d at 72. Documents and witnesses

pertaining to her damages claim are in this jurisdiction (*see infra* **D.1.**). Moreover, as to liability,

Plaintiff must show that she reasonably relied on representations made by Defendant that gave

---

[3]   "As we have previously recognized, *Koster* does not establish a separate standard from *Gilbert* for *forum non
conveniens* dismissals. *Alcoa S.S. Co., Inc. v. M/V Nordic Regent*, 654 F.2d 147, 152 (2d Cir. 1980) (*en banc*)
("In short, we believe that *Koster* should be read as a consistent, pragmatic application of *Gilbert*, rather than an
exception to it."). *Koster* and *Gilbert* were decided on the same day, and did not explicitly state that one
established a stricter standard than the other, which mitigates against any reading of them as establishing
separate standards. Moreover, in *Piper*, the Supreme Court characterized *Gilbert* and *Koster* as establishing a
single balancing test for *forum non conveniens*, with the rebuttable presumption that a plaintiff's choice of
forum would not be disturbed. *Piper*, 454 U.S. at 241." *Iragorri*, 274 F.3d at 74 n.6.

the impression that the Hotel was Defendant's agent that led her to decide to stay at the Hotel. (*see infra* **D.1.**). The locus of those operative facts is this jurisdiction, before Plaintiff left for vacation to St. Kitts. Moreover, based on the Court's analysis of the second and third steps, Defendant has failed to show that Plaintiff's choice to sue an American company in Plaintiff's home forum should be disturbed.

## C. Whether St. Kitts is an Adequate Alternative Forum

"At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum." *Piper Aircraft Co.*, 454 U.S. at 255 n.22. "Ordinarily, this requirement will be satisfied when the defendant is amenable to process in the other jurisdiction." *Norex Petroleum Ltd.*, 416 F.3d at 158 (internal quotation marks omitted) (citing *Gilbert*, 330 U.S. at 506-07). Here, Defendant has agreed to consent to personal jurisdiction in St. Kitts. (Memo. of Law in Support of Def. Mot. to Dismiss 19, n.3.) "In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative ...." *Piper Aircraft Co.*, 454 U.S. at 255 n.22. "Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute." *Id.* The Second Circuit had explicitly held that "a case cannot be dismissed on grounds of *forum non conveniens* unless there is presently available to the plaintiff an alternative forum that will permit it to litigate the subject matter of its dispute." *Norex Petroleum Ltd.*, 416 F.3d at 159. But the alternative forum does not have to provide "the identical cause of action" or "identical remedies." *Id.* at 158 (internal quotation marks and citation omitted).

Defendant relies on an Affidavit from a lawyer who runs a practice in St. Kitts to argue that St. Kitts is an adequate forum because it "recognizes negligence and personal injury

actions." (Memo. of Law in Support of Def. Mot. to Dismiss 21; Daniel M. Stewart Decl. in

Support ("Stewart Decl."), Ex. F, Aff. of Adrian E. Scantlebury ¶ 7 "The applicable Common

Law recognizes negligence and personal injury actions"). But, as Plaintiff argues[4] (Pl. Memo of

Law in Opp. to Def. Mot. to Dismiss 17), Defendant fails to address whether St. Kitts recognizes

vicarious or agency liability, which is the only claim left in this case (Pl. Memo. of Law in Opp.

to Def. Mot. to Dismiss 1-2). Negligence is a necessary element to Plaintiff's claim, but

---

[4] Plaintiff also argues that St. Kitts is not an adequate alternative forum because she will not be afforded a trial by jury there and direct testimony is not presented live but rather through witness statements. (Pl. Memo of Law in Opp. to Def. Mot. to Dismiss 16-7). Defendant's St. Kitt's attorney states that St. Kitts permits discovery and Plaintiff can litigate her claim at trial and two appellate levels. (Memo. of Law in Supp. of Def. Mot. to Dismiss 21; Stewart Decl., Ex. F, Aff. of Adrian E. Scantlebury ¶ 7.) Plaintiff's arguments are not persuasive. "[S]ome inconvenience or the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate." *Agyenkwa v. Amer. Motors Corp.*, 622 F. Supp. 242, 245 (E.D.N.Y. 1985) (internal quotation marks omitted) (citing *Shields v. Mi Ryung Constr. Co.*, 508 F. Supp. 891, 895 (S.D.N.Y. 1981) and *Calavo Growers of California v. Generali Belgium*, 632 F.2d 963, 968 n.6 (2d Cir. 1980), *cert. denied*, 449 U.S. 1084 (1981)) In granting *forum non conveniens* dismissal, the *Agyenkwa* Court rejected the plaintiff's argument that Ghana was an inadequate alternative forum because of "limited" discovery and "the unavailability of a jury trial[,]" where the parties' legal experts disputed both issues. 622 F. Supp. at 245.

Plaintiff's argument that Defendant is a major employer in St. Kitts and thus, may get undue sympathy in those courts (Pl. Memo of Law in Opp. to Def. Mot. to Dismiss 16-7) is similarly unavailing. *See Blanco F.*, 997 F.2d at 981, 982 (in rejecting the argument that Venezuela is an inadequate alternative forum because its courts will be "biased" in favor of the defendant, holding that "we have repeatedly emphasized that 'it is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation.'" (quoting *Chesley v. Union Carbide Corp.*, 927 F.2d 60, 66 (2d Cir. 1991) (quoting *Jhirad v. Ferrandina*, 536 F.2d 478, 484-85 (2d Cir.), *cert. denied*, 429 U.S. 833 (1976))).

Plaintiff also argues that St. Kitts is not an adequate alternative forum because attorneys do not accept contingency fees. (Pl. Memo of Law in Opp. to Def. Mot. to Dismiss 16). Defendant's St. Kitt's attorney states that St. Kittian attorneys charge no "substantial fees upfront[,]" and that costs are awarded to the prevailing party as well as "substantial legal fees." (Memo. of Law in Supp. of Def.'s Mot. to Dismiss 21; Stewart Decl., Ex. F, Aff. of Adrian E. Scantlebury at ¶ 7). "[C]laim[s] of financial hardship may not be considered in determining the availability of an alternative forum but must be deferred to the balancing of interests relating to the forum's convenience." *Murray v. British Broadcasting Corp.*, 81 F.3d 287, 292-93 (2d Cir. 1996). Moreover, "if the lack of a contingent-fee system were held determinative, then a case could almost never be dismissed because contingency fees are not allowed in most foreign forums." *Id.* at 292-93 (internal quotation marks and citation omitted) (affirming grant of dismissal based on *forum non conveniens*); *see e.g., Lust v. Nederlandse Programma Stichting*, 501 Fed. Appx. 13, at *14-*15 (2d Cir. 2012) (rejecting argument "that the Netherlands is an inadequate forum because it lacks contingency fee arrangements, does not allow for awards of attorney's fees, and does not provide for a jury trial.... So long as it entertains causes of action encompassing the type of conduct covered by the cause of action in the United States, the alternative forum may be deemed adequate"). Thus, Plaintiff's argument that St. Kitts is not an adequate alternative forum because the attorneys do not accept contingency fees is also rejected.

Defendant fails to acknowledge that Plaintiff must also be able to present evidence of agency law.

Defendant argues that it need not address this issue because Plaintiff can sue the Hotel and the entity that allegedly owns and operates it, Luxury Hotels International Management St. Kitts Limited ("LHI") (Stewart Decl., Ex. E, Aff. of Jacques Hamou ¶¶ 2-6), in St. Kitts; therefore, Defendant argues, any vicarious or agency claim would become "moot." (Memo. of Law in Reply 7.) But Defendant's argument misses the mark. Although it is true that Plaintiff does not have to be able to pursue "an identical cause of action" in the alternative forum, she must be able to "litigat[e] ... the subject matter of the dispute." *Piper Aircraft Co.*, 454 U.S. at 255, n.22; *see also Norex Petroleum Ltd.*, 416 F.3d at 159. Here, the subject matter of Plaintiff's dispute is vicarious liability based on agency law. Thus, Defendant has failed to show that Plaintiff can litigate the subject matter of the dispute in St. Kitts.

Two other courts in this jurisdiction have arrived at similar conclusions. In *Ramirez de Arellano v. Starwood Hotels & Resorts Worldwide, Inc.*, the plaintiffs, like Plaintiff here, alleged that the defendant was vicariously liable for the theft of the plaintiffs' belongings at a hotel in Spain due to the hotel's negligence. 448 F.Supp.2d 520, 523 (S.D.N.Y. 2006). The defendant, like Defendant here, argued that it neither owns nor operates the hotel, the entity that does own and operate it is a Spanish entity, and the case should be dismissed because Spain is a more convenient forum to litigate the case. *Id.* at 522, 523. The Court denied the *forum non conveniens* motion, in part because the defendant had failed to even address whether Spain recognizes vicarious liability claims. *Id.* at 528. Similarly, in *Fournier v. Starwood Hotels & Resorts Worldwide, Inc.*, where the plaintiff and defendant made claims similar to the parties in this case, the Court denied the *forum non conveniens* motion and noted that "[a]lthough Starwood has

consented to personal jurisdiction in Finland, it has failed to demonstrate that a Finnish court would permit Fournier to litigate the issue of agency liability." 908 F.Supp.2d 519, 523 (S.D.N.Y. 2012) (ruling that it "need not determine whether Finland provides an adequate alternative forum, because, even if it does, the private and public interest factors tip decisively in Fournier's favor." *Id.* at 523-24).

Defendant has failed to meet its burden to show a necessary element of seeking dismissal based on *forum non conveniens*, that St. Kitts permits litigation of vicarious liability and/or agency claims. On this ground alone, the Court can properly deny this motion. *Norex Petroleum Ltd.*, 416 F.3d at 160 ("because defendants failed to carry their burden to demonstrate that Russia affords plaintiff a presently available adequate alternative forum, the motion to dismiss on *forum non conveniens* grounds should have been denied without consideration of the third step of analysis"). Nonetheless, in the third step of its analysis, the Court finds that public interest factors also weigh in favor of retaining this case.

**D.     Private And Public Interests**

**1.     Private Interests**

A court looks at private interest factors to determine which forum is the most convenient to host the litigation. *Iragorri*, 274 F.3d at 73. Relevant factors include "'the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* at 73-4 (quoting *Gilbert*, 330 U.S. at 508). "[A] district court is not required to address each of these factors specifically in exercising its considerable discretion to resolve a forum non conveniens motion." *Norex Petroleum Ltd.*, 416 F.3d at 155.

"When a transfer of the case would merely shift the inconvenience from one party to the other, the plaintiff's choice of forum should not be disturbed." *Breindel v. Levitt & Sons, Inc.*, 294 F. Supp. 42, 44 (E.D.N.Y. 1968) (citation omitted).

"Rather than simply characterizing the case as one in negligence, contract, or some other area of law, the court should focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for the trial of these issues." *Iragorri*, 274 F.3d at 74. Plaintiff has narrowed her claim to just one – that Defendant is liable based on an "apparent agency" theory or "agency by estoppel." (Pl. Memo. of Law in Opp. to Def. Mot. to Dismiss 1-2.) Under New York law, which both parties have relied on in arguing the Rule 12(b)(6) portion of Defendant's motion, to prove apparent agency Plaintiff must show that Defendant "was responsible for the appearance of authority in the … [Hotel] to conduct the transaction in question," and that Plaintiff "reasonably relied on the representations …." *Herbert Constr. Co. v. Continental Ins. Co.*, 931 F.2d 989, 993-94 (2d Cir. 1991) (internal quotation marks omitted) (citing *Ford v. Unity Hospital*, 32 N.Y.2d 464, 473, 346 N.Y.S.2d 238, 244, 299 N.E.2d 659, 664 (1973) and *Hallock v. State*, 64 N.Y.2d 224, 231, 485 N.Y.S.2d 510, 513, 474 N.E.2d 1178, 1181 (1984)). To prove negligence, Plaintiff also has to show that the Hotel "breach[ed]" its "duty" to Plaintiff and "injury to the plaintiff as a result thereof." *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (citing *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333, 424 N.E.2d 531, 441 N.Y.S.2d 644 (1981)). The Court will now determine convenience based on the evidence that will be needed to litigate these issues.

### a. Witnesses

This case will be inconvenient no matter where it is litigated because the relevant witnesses reside in three different jurisdictions – New York, Maryland, and St. Kitts. As to the negligence elements of Plaintiff's claim, Defendant notes that there are relevant witnesses in St. Kitts:

- Jacques Hamou, the General Manager of the Hotel, who has relevant knowledge of the Hotel's policies and procedures, and hiring and training practices (Memo. of Law in Reply 6; Stewart Decl., Ex. E, Aff. of Jacques Hamou ¶ 2, ECF No. 43-6);

- Collin Dos Santos, "the hotel employee who performed a search for relevant documents/records pertaining to the plaintiff's accident" (Memo. of Law in Reply 6);

- Tyrone O'Loughlin, a Hotel employee who is listed in the Incident Report dated July 18, 2013, as "confirm[ing] that there was water on the floor." (Decl. in Opp. by Mitchell G. Shapiro, Ex. A); and

- Dameon Lawrence (Decl. in Opp. by Mitchell G. Shapiro, Ex. F, Defendant's Rule 26(a) Disclosures at A), who Plaintiff assumes is "the unnamed hotel employee who prepared the accident report" (Pl. Memo. of Law in Opp. to Def. Mot. to Dismiss 19).

There are relevant witnesses in New York as well: Judy Gomez Caldwell, Plaintiff's traveling companion who witnessed the "leaking problem with the air conditioner vent" (Pl. Aff. in Opp. to Def. Mot. at ¶¶ 5, 7-8, 13; *Id.* at Ex. E, Aff. of Judy Gomez Caldwell ¶¶ 1-3); and Plaintiff. Most of the damages witnesses, Plaintiff's doctors, are also in New York. The "only medical attention that … [Plaintiff] received [in St. Kitts] was a brief visit to a local facility for an X-ray which could not be performed." (Pl. Memo. of Law in Opp. to Def. Mot. to Dismiss 19-20.) In New York, however, Plaintiff was treated by "an orthopedist and an osteopath, as well as the neurosurgeon who operated on her neck on August 21, 2013[,]" as well as the jurisdiction where she underwent physical therapy. (*Id.* at 20.) Plaintiff claims that "her medical providers are not available to testify in St. Kitts." (*Id.*)

Defendant has not identified any witnesses who may have relevant knowledge about the apparent agency issues. They are likely at Defendant's headquarters in Maryland. For instance, Carol Frensilli, Assistant Corporate Secretary for Defendant in Maryland, submitted an Affidavit discussing LHI. (Stewart Decl, Ex. C.) Frensilli stated that: LHI owns and operates the Hotel, not Defendant; LHI is an "indirect subsidiary" of Defendant that is authorized to do business in St. Kitts and Nevis; and LHI has no connection to New York. (*Id.* at ¶¶ 9-23). In *Fournier*, in denying dismissal based on *forum non conveniens*, the Court held that "[a]ssuming, arguendo, that American law will govern this question ..., Fournier will bear the burden of establishing that Starwood's conduct reasonably led her to believe that Hotel Kämp was authorized to act on the Company's behalf.... The sources of proof relevant to this question (e.g., evidence concerning Starwood's branding and marketing practices) exist not in Finland, but in Stamford, Connecticut, where the Company maintains its principal place of business." 908 F.Supp.2d at 524. In fact, "[o]f the eleven witnesses that Starwood identified in its initial disclosures, seven are in the United States and five are within this Court's 100-mile power to compel attendance[,]" none were in Finland. *Id.* Similarly here, defending against the apparent agency claim will likely involve witnesses with relevant knowledge about Defendant's marketing practices. Those witnesses are likely in Maryland, not St. Kitts.

And of course, Plaintiff is a key witness in proving apparent agency because she has to prove that Defendant made representations on which she reasonably relied, including any representations on which Plaintiff relied here in New York before deciding to vacation at the Hotel. Thus, the relevant witnesses to the entire case are split between New York, Maryland, and St. Kitts.

The Hotel's general manager, Hamou, is correct in stating in his Affidavit that it would be more "inconvenien[t]" and "expensive" for the Hotel employees to appear in this jurisdiction. (Stewart Decl., Ex. E at ¶¶ 2, 5, 10). This is especially true since live witness testimony is required only for cross-examination in St. Kitts; direct examination happens through witness statements (Stewart Decl., Ex. F, Aff. of Adrian E. Scantlebury at ¶ 7). But Defendant has identified only four witnesses located in St. Kitts, and if cross-examination is requested (which is likely for most of the witnesses), Plaintiff would have to transport her damages witnesses to St. Kitts and Defendant would have to transport its employees to St. Kitts. Thus, it is only slightly cheaper to litigate this case in St. Kitts.

Defendant argues that since it neither owns nor operates the Hotel, none of the Hotel employees are under its "direction and control" and therefore, Defendant cannot compel them to appear in this jurisdiction, nor does the Court have subpoena power over them. (Memo. of Law in Reply 7.) Thus, Defendant argues, the case should be dismissed. Defendant is correct that these witnesses are outside the Court's subpoena power. Defendant has not identified, however, which of the Hotel employees, if any, are unwilling to appear in this case. Nor has Hamou stated in his Affidavit that the Hotel's employees are unwilling witnesses. Defendant has not shown, therefore, that they will need to be compelled to appear in this jurisdiction. To the extent that the Hotel employees are unwilling witnesses, "the Court considers the ability to use letters rogatory[5]

---

[5] "Letters rogatory are the customary means of obtaining judicial assistance from overseas in the absence of a treaty or other agreement. Letters rogatory are requests from courts in one country to the courts of another country requesting the performance of an act which, if done without the sanction of the foreign court, could constitute a violation of that country's sovereignty. Letters rogatory may be used to effect service of process or to obtain evidence if permitted by the laws of the foreign country. Before initiating the letters rogatory process, parties should determine whether the country where they are seeking to serve process or take evidence is a party to any multilateral treaties on judicial assistance such as the Hague Service or Evidence Conventions, or the Inter-American Convention on Letters Rogatory and Additional Protocol."

https://travel.state.gov/content/travel/en/legal-considerations/judicial/obtaining-evidence/preparation-letters-rogatory.html

to get the foreign evidence." *Niv v. Hilton Hotels Corp.*, 710 F.Supp.2d 328, 341-42 (S.D.N.Y. 2008) (quoting *DiRienzo v. Philip Services Corp.*, 294 F.3d 21, 30 (2d Cir. 2002) ("Despite the preference for live testimony, we have recognized the availability of letters rogatory as relevant in deciding whether plaintiffs' chosen forum is inconvenient")). Thus, if St. Kittian courts honor letters rogatory from American courts, the parties could secure testimony from the Hotel employees and use the testimony in litigating the case in this jurisdiction. But neither party has addressed this issue.

The cases that Defendant relies on do not support dismissal on this point but rather reflect, as the Court has done here, a case-by-case approach. The *Breindel* case did not even concern the Court's ability to subpoena unwilling witnesses. Rather, in denying the defendant's motion to transfer venue under 28 U.S.C. § 1404(a), that Court found that the defendant failed to meet its burden to name witnesses and generally state what each would prove. 294 F.Supp. at 43-4. Moreover, in *Bohn v. Bartels*, the Court held that although the "[c]ompulsory process is unavailable in this forum for attendance of most, if not all, unwilling witnesses in this matter[,]" that nonetheless the case "may be tried without the live trial testimony of the unwilling witnesses[,]" because they are not "of paramount importance." 620 F. Supp. 2d 418, 432 (S.D.N.Y. 2007). In *Wechsler v. Four Seasons Hotels Limited*, the Court held that a court's "inability to" subpoena the attendance of unwilling witnesses weighs in favor of dismissal, and granted the *forum non conveniens* motion. No. 13 Civ. 8971, 2014 U.S. Dist. LEXIS 79104, at *8 (S.D.N.Y. Jun. 10, 2014). But there, the Court found that it was more convenient to litigate the issue in the alternative foreign forum in part because that defendant resided in the foreign

---

St. Kitts is not listed as a signatory to the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters. https://www.hcch.net/en/instruments/conventions/status-table/?cid=82; https://www.hcch.net/en/states/other-connected-states/details2/?sid=122

forum; thus, "Defendant would need to transport all of their documents and witnesses" to New York. *Id.* at *9-*10. Here, on the other hand, Defendant does not reside in St. Kitts but rather in Maryland. Thus *Wechsler*'s ruling is inapplicable.

Defendant also argues that it is the "events prior to medical treatment that establish that 'locus of operative facts,'" not where Plaintiff received medical treatment that give rise to determining convenience for the purposes of *forum non conveniens*. (Memo. of Law in Reply 6.) But the cases on which Defendant relies do not support this argument. In *Rosen v. Rotz Carlton Hotel Co. LLC*, the Court granted the motion to transfer venue under 28 U.S.C. § 1401(a) partly because "[t]he only factual connection with New York is the fact that Infant Plaintiff obtained further medical treatment in New York." No. 14-cv-1385, 2014 U.S. Dist. LEXIS 179215, at *8 (S.D.N.Y. Jan. 5, 2015). However here, in order to prove her apparent agency claim, Plaintiff must show that before she even left New York she relied on Defendant's representations in deciding to stay at the Hotel. Thus, unlike *Rosen*, the "[t]he only factual connection with New York" is not that Plaintiff received medical treatment here; the representations that she saw in New York and allegedly relied upon are key. Defendant's reliance on *Torres-Monroe v. Eternal Lobby Lounge, Inc.*, 12-cv-4243, Memo. and Order, May 10, 2013 (E.D.N.Y.) is inapplicable for the same reason.

   b.  Documents

Defendant has not made a specific argument regarding the convenience of document production. And nothing in the parties' papers indicates that document production poses an obstacle in either forum. Thus, document production is a neutral factor.

c.　　Viewing the site of the alleged accident

Viewing the vent, its placement in the Hotel room, and precisely where Plaintiff allegedly

fell in the room could be a key piece of evidence, particularly to establish Plaintiff's resulting

injuries. This factor weighs in favor of dismissal. The Court is not entirely persuaded by

Plaintiff's argument that "there is no critical need to view the air conditioner vent in question,

since the leak was a transient condition," and Plaintiff changed rooms "due to the persistent

problem with the vent." (Pl. Memo. of Law in Opp. to Def. Mot. to Dismiss 21.)

On balance, this litigation will be inconvenient whether it is litigated here or in St. Kitts,

and only slightly cheaper to litigate it in St. Kitts. This is not enough for a *forum non conveniens*

dismissal. Defendant must show "such oppressiveness and vexation" that it necessitates

disturbing Plaintiff's choice of home forum. *Koster*, 330 U.S. at 524. Defendant has failed to

make that showing.

### 2.　　Public Interests

The Court also considers public interest factors, such as how closely the dispute is related

to the forum, and whether it is more appropriate to litigate "a diversity case in a forum that is at

home with the state law that must govern the case, rather than having a court in some other

forum untangle problems in conflict of laws, and in law foreign to itself." *Iragorri*, 274 F.3d at

74 (quoting *Gilbert*, 330 U.S. at 509). "When a federal district court sits in diversity, it generally

applies the law of the state in which its sits, including that state's choice of law rules." *Klaxon*

*Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

Defendant argues that under New York choice-of-law rules, the Court would have to

determine whether any conflict exists between New York and St. Kittian law and, since the

Court has little experience with St. Kittian law, the Court should dismiss this case. (Memo. of

Law in Support of Def. Mot. to Dismiss 24-5.) But Defendant has not made any conflict of law arguments regarding either apparent agency or negligence. In fact, Defendant appears (as does Plaintiff) to agree that New York law applies because that is the law that Defendant relied on in briefing the Rule 12(b)(6) arguments concerning apparent agency and equitable estoppel (neither party addressed negligence). Under these facts, the Court is under no obligation to conduct a choice-of-law analysis. *Vishipco Line v. Chase Manhattan Bank, N.A.*, 660 F.2d 854, 860 (2d Cir. 1981) (rejected defendant's argument that plaintiffs failed to prove liability under Vietnamese law on the grounds that "we believe that the law of the forum may be applied here, where the parties did not at trial take the position that plaintiffs were required to prove their claims under Vietnamese law, even though the forum's choice of law rules would have called for the application of foreign law. This reflects the view adopted by ourselves and other federal courts since 1966"); *see also Clarkson Co. Ltd. v. Shaheen*, 660 F.2d 506, 512 n.4 (2d Cir. 1981), *cert denied*, 455 U.S. 990 (1982) (in upholding a jury verdict for plaintiffs, held that "[h]ere, none of the parties claimed the applicability of Canadian law or asserted that it differs from that of New York. Each seems to have assumed that New York law governs. Hence, the district court was not obligated to take judicial notice of Canadian law and correctly applied forum law").

Moreover, even if the parties had not settled on New York law and argued that it conflicted with St. Kittian law, choice-of-law analysis would likely have shown that American law applies to the agency claim. New York choice-of-law rules require that a court must first determine whether a conflict exists "between the laws of the jurisdictions involved." *In re Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223, 613 N.E.2d 936, 597 N.Y.S.2d 904 (1993); *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012)

(citations omitted). In ruling on a *forum non conveniens* motion, a court must consider "the issue of conflict of laws," but does not have to decide the issue. *Niv*, 710 F. Supp. 2d at 346.

New York has a special set of choice-of-law rules for tort cases. *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 383 (2d Cir. 2006). Those rules apply an "interest analysis[,]" meaning that the "law of the jurisdiction" that has the "greatest interest in the litigation" applies. *Id.* at 384 (internal quotation marks omitted) (citing *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197, 480 N.E.2d 679, 491 N.Y.S.2d 90 (1985) (citation omitted)). Where vicarious liability is claimed for a tort, as is the case here, the claim looks to "allocat[e] losses" and thus, "the site of the tort is less important, and the parties' domiciles are more important." *Id.* at 384-85 (citing *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72, 612 N.E.2d 277, 595 N.Y.S.2d 919 (1993)). Here, the parties' domiciles are New York and Maryland, not St. Kitts. Thus, the courts in both *Ramirez de Arellano* and *Fournier* concluded that American law rather than the law of the country where the tort occurred would likely apply to the agency claims arising under facts similar to the facts at issue here. *Ramirez de Arellano*, 448 F.Supp.2d at 528 ("issues of corporate law and vicarious liability -- ... [are] uniquely American and intrinsic to the law of the polity under which the corporation was created." (citing *Fletcher v. Atex*, 68 F.3d 1451, 1456 (2d Cir. 1995)); *Fournier*, 908 F.Supp.2d at 525 ("In such circumstances, the law of Finland typically would apply.... However, in cases involving loss-allocating rules, New York courts generally recognize that the locus jurisdiction has at best a minimal interest in determining the right of recovery.... Therefore, we would likely apply U.S. law to the dispositive issue in this case, confirming our conclusion that the public interest factors favor retention." (internal quotation marks and citations omitted)).

Moreover, whether a New York resident can hold an American company that does business in New York liable under an apparent agency theory is of interest to New York citizens. Defendant again ignores the subject matter of this litigation (its potential liability) in arguing that St. Kitts has a greater interest in deciding issues regarding "property in St. Kitts, the actions of Kittian citizens and operations of St. Kitts hotel, and the condition of an air-conditioner in St. Kitts." (Memo. of Law in Supp. of Def. Mot. to Dismiss 25). Thus, public interest factors weigh heavily in favor of retaining this case.

Defendant's motion to dismiss based on *forum non conveniens* is DENIED. Therefore, the Court will now rule on Defendant's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II.      THE MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM IS GRANTED IN PART

### A.      Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint where the plaintiff has failed to state a claim upon which relief can be granted. In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Indeed, a plaintiff "need only satisfy Rule 8(a)'s standard of a 'short and plain statement of the claim showing that [he] is entitled to relief.'" *Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008) (citing FED. R. CIV. P. 8(a)(2)). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Twombly* at 570. A claim will

have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief ...." *Twombly*, 550 U.S. at 558.

## B.     First Cause of Action

The First Cause of Action alleges liability based on allegations that the Hotel is Defendant's alter ego and actual agent. (Am. Ver. Compl. ¶¶ 4, 10, 11, 16-28.) Plaintiff alleges that: Defendant "controlled" the St. Kitts' Entities; the St. Kitts' Entities were the "alter egos" and "agents" of Defendant; and since Defendant controlled the St. Kitts Hotel, its employees, and her Hotel room, Defendant should be held liable for the Hotel's "negligence, carelessness and recklessness" which led to Plaintiff's injuries. (*Id.*) In opposing Defendant's motion, Plaintiff withdrew this claim by stating that she will no longer "press the allegation ... that the 'St. Kitts Entities' ... were alter egos of Marriott, that they were actually owned or controlled by Marriott, or that there was an actual principal-agency relationship between them." (Pl. Memo. of Law in Opp. to Def. Mot. to Dismiss 1.) She does not oppose this portion of Defendant's motion to dismiss under Rule 12(b)(6). Moreover, during oral argument on Defendant's motion on October 4, 2017, Plaintiff's counsel confirmed on the record that she was withdrawing her First Cause of Action based on actual agency. (Minute entry dated Oct. 4, 2017.) The First Cause of Action, therefore, is withdrawn, and the Court need not address Defendant's motion to the extent that it seeks dismissal of this claim under Rule 12(b)(6). *See e.g., Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 420 (S.D.N.Y. 2010) ("In their memorandum of law opposing the Fairfield Defendants' motion to dismiss, Plaintiffs apparently narrow the scope of this cause of action by noting that only Plaintiffs who were limited partners in Greenwich Sentry, L.P., or

Greenwich Sentry Partners, L.P. -- and therefore parties to the partnership agreements for those entities -- adequately allege claims of mutual mistake.... Accordingly, only the partnership agreements of the Domestic Funds are part of the mutual mistake claim") (internal quotation marks omitted)).

## C.     <u>Second and Third Causes of Action</u>

Plaintiff has narrowed her claim to just one – "plaintiff contends that the amended complaint states a claim for defendant's vicarious liability, based on its having created the appearance of an agency relationship between it and the entity referred to it in the amended complaint as the St. Kitts Marriott Resort and/or St. Kitts Marriott Hotel." (Pl. Memo. of Law in Opp. to Def. Mot. to Dismiss 1-2, ECF No. 46.) Plaintiff's Second Cause of Action for "Agency" claims liability based on apparent agency. She alleges that she "relied on what she perceived or presumed to be an apparent agency relationship between defendant 'MII' and the St. Kitts entities or other entities, in deciding to vacation at the subject premises (hotel)." (Am. Ver. Compl. ¶ 35.)

Under New York law,[6] an "apparent agency" claim, as is alleged here, is also called an "apparent authority" claim. "Upon failure to properly determine the scope of authority, and in the face of damages resulting from an agent's misrepresentations, apparent authority is not automatically available to the injured third party to bind the principal. Rather, the existence of apparent authority depends upon a factual showing that the third party relied upon the misrepresentations of the agent because of some misleading conduct on the part of the principal -- not the agent." *Herbert Constr. Co.*, 931 F.2d at 993 (internal quotation marks omitted) (citing *Ford*, 32 N.Y.2d at 472-73, 346 N.Y.S.2d at 244, 299 N.E.2d at 664 (citations omitted)).

---

[6]    Since there is no dispute that New York law is applicable, the Court will also rely on New York law.

Moreover, "[t]he mere creation of an agency for some purpose does not automatically invest the agent with apparent authority to bind the principal without limitation ...." *Ford*, 32 N.Y.2d at 472.

"To recover on this theory the third party must establish two facts: (1) the principal was responsible for the appearance of authority in the agent to conduct the transaction in question, ... and (2) the third party reasonably relied on the representations of the agent ...." *Herbert Constr. Co.*, 931 F.2d at 993-94 (internal quotation marks omitted) (citing *Ford*, 32 N.Y.2d at 473 (citation omitted)); *see also Hallock v. State of New York*, 64 N.Y.2d 224, 231, 474 N.E.2d 1178, 485 N.Y.S.2d 510 (1984); *Standard Funding Corp. v. Lewitt*, 89 N.Y.2d 546, 551, 678 N.E.2d 874, 656 N.Y.S.2d 188 (1997) (citations omitted). "The third party ... must accept the services of the agent in reliance upon the perceived relationship between the agent and the principal, and not in reliance on the agent's skill ...." *Begley v. City of New York*, 111 A.D.3d 5, 30, 972 N.Y.S.2d 48 (2d Dep't 2013) (citing, *inter alia, Hallock*, 64 N.Y.2d at 231) (in upholding grant of summary judgment to the defendant, held that it was not vicariously liable for alleged negligence of nurse partly because the plaintiff interviewed and selected the nurse "based on ...[the plaintiff's] own assessment ..."), *lv to appeal denied*, 23 N.Y.3d 903, 11 N.E.3d 204 (2014). "Apparent authority is based on the principle of estoppel.... If a third person holds the reasonable belief that the agent was acting within the scope of this authority and changes his position in reliance on the agent's act, the principal is estopped to deny that the agent's act was not authorized." *Masuda v. Kawasaki Dockyard Co.*, 328 F.2d 662, 665 (2d Cir. 1964) (citation omitted).[7]

---

[7] Defendant is not arguing that Plaintiff has failed to sufficiently allege negligence by the Hotel. Thus, the Court will uphold the negligence allegations in Plaintiff's Amended Verified Complaint.

Plaintiff's "presumed ... agency" or "apparent agency" claim is premised on her allegation that she stayed at the Hotel because she "was misled by appearances, advertisements, representations and other form of media and communications made by defendant 'MII' [Marriott International, Inc.] to her and the public in general that it [sic] defendant 'MII' controlled and in all ways was responsible for the subject premises (hotel) and any room she might occupy at the hotel." (Am. Ver. Compl. ¶ 36.) But Plaintiff has not alleged what in these "appearances, advertisements, representations and other form of media and communications" (*id.* at ¶ 36) gave her this impression. Therefore, the Court cannot draw a reasonable inference that Plaintiff has sufficiently alleged the first criteria of an apparent agency or authority claim, that it was Defendant's words or conduct that gave Plaintiff the impression that the Defendant "controlled and in all ways was for responsible for" the Hotel. (*Id.* at ¶ 36). *See Taylor v. The Point at Saranac Lake, Inc.*, 135 A.D.3d 1147, 1149, 23 N.Y.S.3d 682, 684 (3d Dep't 2016) ("[T]o establish a negligence claim based upon an apparent agency theory, a plaintiff must show evidence of words or conduct of the principal communicated to a third party, which give rise to a reasonable belief and appearance that the agent possesses authority to act on the principal's behalf") (internal quotation marks omitted) (citing, *inter alia*, *Hallock*, 64 N.Y.2d at 231)).

In opposing Defendant's motion and to support her allegations, Plaintiff attached multiple documents to her Affidavit and her attorney's Declaration. (Exhibits A-E to Pl.'s Aff. in Opp. to Def.'s Mot., ECF No. 45-1; Exhibits A-D to Decl. in Opp. by Mitchell G. Shapiro, ECF No. 45.) But in ruling on a Rule 12(b)(6) motion, the Court is limited to reviewing the "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Newman v. Schwartz*, 102 F.3d 660, 661, 662-63 (2d Cir. 1996) (overturning grant of 12(b)(6) motion because lower court "improperly relied upon information outside of the four corners of

... [the] complaint," which information was not referenced in the complaint). Here, none of the documents that Plaintiff has submitted in her opposition papers were incorporated by reference into the Amended Complaint. The Amended Complaint does not mention which of Defendant's "appearances, advertisements, representations and other form of media and communications" are at issue. Thus, the Court cannot properly consider any of the documents that Plaintiff attached to her opposition papers in deciding the Rule 12(b)(6) motion. "When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (internal quotation marks and citation omitted). "This conversion requirement is strictly enforced whenever there is a legitimate possibility that the district court relied on material outside the complaint in ruling on the motion." *Id.* (internal quotation marks and citation omitted). "Thus, a district court errs when it considers affidavits and exhibits submitted by defendants, *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991), or relies on factual allegations contained in legal briefs or memoranda, *see Fonte* [*v. Board of Managers of Continental Towers Condominium*], 848 F.2d [24] at 25 [(2d Cir. 1988], in ruling on a 12(b)(6) motion to dismiss." *Id.* at 83-4 (internal quotation marks omitted). Since the parties have had only limited discovery thus far, this case is not yet ripe for summary judgment disposition and the Court will not convert this motion into one under Federal Rule of Civil Procedure 56.

Plaintiff also attempts to supplement her Second Cause of Action with facts stated in her Affidavit opposing Defendant's motion (Pl. Aff. in Opp. to Def. Mot.), but Plaintiff cannot amplify her complaint with factual assertions contained in her Affidavit. *See e.g, Faulkner v.*

*Beer*, 463 F.3d 130, 134 n.1 (2d Cir. 2006) ("Plaintiffs also introduced, *inter alia*, declarations of plaintiffs Smith and Lawson and an affidavit of defendant Orben that touch on the merits of the action. It is not clear, however, the extent to which, if at all, the district court relied on the declarations of Smith and Lawson and the declaration of Orben; it would have been error for the district court to have dismissed the amended complaint on the basis of these documents, rather than on the basis of the amended complaint. *See, e.g., Friedl v. City of New York*, 210 F.3d 79, 84 (2d Cir. 2000)"); *Montesa v. Scwartz*, 836 F.3d 176, 191 n.1 (2d Cir. 2016) (in dismissing complaint for plaintiff's lack of standing, ruling that "Student-Plaintiffs further assert in their briefs that Board Defendants' children do not attend the District's schools. We do not consider this allegation, which appears for the first time in their brief"). The Court, therefore, declines to consider any new facts in Plaintiff's Affidavit in deciding Defendant's motion to dismiss for failure to state a claim. Accordingly, Plaintiff has failed to sufficiently plead that Defendant's words or conduct led Plaintiff to believe that the Hotel had the apparent authority to act on Defendant's behalf.

As to "reasonable reliance," Plaintiff alleges that she "had no reason to know or realize that defendant 'MII' would attempt to shift blame or liability for her accident[,]" and that it had not been disclosed to her before she decided to vacation at the Hotel that Defendant could not be held liable for the Hotel's actions. (Am. Ver. Compl. ¶ 37.) She also alleges that her "belief that defendant 'MII' would be responsible for and liable to her in the event she sustained injury at the hotel due to negligence was objectively reasonable." (*Id.* at ¶ 38.) Defendant argues that Plaintiff cannot show reasonable reliance "as a matter of law" because "it would be unreasonable ... for the Court to accept the proposition that a person chooses to stay at a particular hotel because of an expectation that they might get hurt during their stay." (Memo. of Law in Reply 3.) But

Defendant's argument goes to the merits of Plaintiff's claim, not the sufficiency of her allegations. She has sufficiently pled reasonable reliance.

Since Plaintiff may be able to sufficiently allege that Defendant is vicariously liable based on apparent agency, within 30 days of entry of this Memorandum and Order, Plaintiff should file a Second Amended Complaint sufficiently alleging this cause of action consistent with this Memorandum and Order.

Plaintiff has also failed to sufficiently allege her Third Cause of Action for "equitable estoppel." (Am. Ver. Compl. ¶¶ 40-4.) Plaintiff alleges that Defendant "through and by its various promotions, advertisements, representations, commercials, brochures, internet site, stationary, slogans and signs misled plaintiff into believing that defendant 'MII' would stand behind the subject St. Kitt's Marriott Hotel, and would be answerable for any incidents caused by negligence" on the premises of the Hotel. (*Id.* at ¶ 41.) Plaintiff also alleges that Defendant "intended to mislead plaintiff and the public in general" that Defendant's "name and reputation would attach to the subject hotel …, in the event of something untoward happening while plaintiff was a guest at the subject hotel." Thus, Plaintiff alleges, Defendant "should be equitably estopped from denying responsibility or liability for the subject accident herein, that the defendant 'MII' and St. Kitt's Entities corporate veils should be pierced and their protective shields disregarded so as to prevent fraudulent misrepresentation, and enforce this paramount equity." (Id. at ¶¶ 41-4.)

"Under New York law, the party asserting estoppel must show that the party alleged to be estopped (1) engaged in conduct which amounts to a false representation or concealment of material facts; (2) intended that such conduct would be acted upon by the other party; and (3) knew the real facts." *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996)

28

(citing *Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68, 81, 430 N.Y.S.2d 179 (4th Dep't 1980)). The party alleging estoppel must also "show with respect to h[er]self: (1) lack of knowledge of the true facts; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change in h[er] position." *Id.* at 302 (citing *Airco Alloys Div., Airco Inc.*, 76 A.D.2d at 81-2). Detrimental reliance means alleging that "these acts induced ... [the plaintiff] to believe, act upon this conduct and change its position so as to suffer injury ...." *Holm v. C.M.P. Sheet Metal, Inc.*, 89 A.D.2d 229, 235, 455 N.Y.S.2d 429 (4th Dep't 1982) (granting the defendant summary judgment on equitable estoppel claim on the grounds that the record lacked evidence of "detrimental reliance" on the defendant's ratification). "Thus, equitable estoppel is a principle or an affirmative defense that serves to stop another party from denying a material fact." *Readco, Inc.*, 81 F.3d at 301 (citing 57 N.Y. JUR. 2d, Estoppel § 13, at 17-18 (1986) (equitable estoppel "is the principle by which a party is absolutely precluded from denying, or asserting the contrary of, any material fact"); 28 AM. JUR. 2d, Estoppel & Waiver § 27, at 629 (1966) (equitable estoppel is a "rule . . . of substantive law, for the reason that it absolutely precludes a person from asserting what would otherwise be his right")).

"The doctrine of equitable estoppel is to be invoked sparingly and only under exceptional circumstances." *In the Matter of Lorna F. Gross*, 122 A.D.2d 793, 794, 505 N.Y.S.2d 678, 679 (Second Dep't 1986). The doctrine "does not operate to create rights otherwise nonexistent; it operates merely to preclude the denial of a right claimed otherwise to have arisen." *Holm*, 89 A.D.2d at 234 (citation omitted); *Coggins v. County of Nassau*, 615 F.Supp.2d 11, 22 (E.D.N.Y. 2009) ("The Appellate Division has clearly expressed New York's 'rather restrictive' view of equitable estoppel") (quoting and discussing *Holm*, 89 A.D.2d at 234)).

Similar to Plaintiff's apparent agency claim, Plaintiff makes a conclusory allegation that Defendant "engaged in conduct which amounts to a false representation or concealment of material facts ...." *Readco, Inc.*, 81 F.3d at 301. Plaintiff alleges that Defendant "through and by its various promotions, advertisements, representations, commercials, brochures, internet site, stationary, slogans and signs misled plaintiff into believing that defendant 'MII' would stand behind the subject St. Kitt's Marriott Hotel, and would be answerable for any incidents caused by negligence" on the premises of the Hotel. (Am. Ver. Compl. ¶ 41.) From these allegations, the Court cannot draw a reasonable inference as to what or how these representations from Defendant misrepresented or concealed that Defendant allegedly could not be sued for the Hotel's negligence. The Court is also unclear as to what Plaintiff's detrimental reliance allegation is. Plaintiff alleges that she "relied to her detriment upon ... [Defendant's] misrepresentations in deciding to vacation" at the Hotel. (*Id.* at ¶ 42.) Defendant argues that this is insufficient because Plaintiff "fails to indicate how she was prejudiced" because she can sue entities other than Defendant, like the Hotel itself, for her injuries. (Memo. of Law in Support of Def. Mot. to Dismiss 13.) The Court agrees. Moreover, the Court is unclear as to what her alleged injury is, is it that she got injured at the Hotel or that Defendant is arguing that she cannot sue it for her injuries? Plaintiff does not have to plead her equitable estoppel cause of action with particularity. But Plaintiff's allegations must allow the Court to draw at least a reasonable inference that Defendant may be liable under this theory. That is not the case here.

None of the New York cases on which Plaintiff relies are applicable to this claim. They concern vicarious liability of a principal based on an apparent or presumed agency relationship, not equitable estoppel as a separate claim. *See e.g., Hill v. St. Clare's Hosp.*, 67 N.Y.2d 72, 79, 490 N.E.2d 823, 499 N.Y.S.2d 904 (1986) ("While vicarious liability for medical malpractice

generally turns, therefore, on agency or control in fact (*see generally*, Ann., 69 ALR2d 305), we have also, in *Hannon v Siegel-Cooper Co.* (167 NY 244), recognized as a predicate for malpractice liability apparent or ostensible agency (or, as it is sometimes called, agency by estoppel or by holding out)"); *Fogel v. Hertz Int'l., Ltd.*, 141 A.D.2d 375, 376, 529 N.Y.S.2d 484 (1st Dep't 1988) ("Among the factual issues presented are whether the nature and content of the advertisements placed by the Hertz defendants to encourage Americans to rent automobiles in Europe were such as to constitute a holding out to the public which would estop them from disclaiming responsibility for Hertz Italiana's negligence"); *Bostany v. Trump Org. LLC*, 73 A.D.3d 479, 480, 901 N.Y.S.2d 207, 208 (1st Dep't 2010) ("It certainly may be found, on this record, that the acts of the putative principal, Trump Organization, constitute a 'holding out' to plaintiff and the public which would estop Trump Organization from disclaiming responsibility for the agent's torts (*see Fogel v Hertz Intl.*, 141 AD2d 375, 529 NYS2d 484 [1988])").

Plaintiff's Third Cause of Action for equitable estoppel is dismissed.

**D.    Fourth and Fifth Causes of Action**

Plaintiff has withdrawn her Fourth Cause of Action for Fraud and Fifth Cause of Action seeking punitive damages. (Am. Ver. Compl. ¶¶ 45-56; Pl. Memo. of Law in Opp. to Def. Mot. to Dismiss 1 (Plaintiff is "withdraw[ing] her fourth and fifth causes of action for fraud and punitive damages"); Oral arg. held on Oct. 4, 2017.) Accordingly, the Court will not address Defendant's argument seeking dismissal of these claims under Rule 12(b)(6).

## CONCLUSION

For the reasons set forth above, the Court holds that:

- Defendant's motion is denied to the extent that it seeks dismissal based on *forum non conveniens*;

- Plaintiff has withdrawn her First Cause of Action alleging liability based on actual agency, Fourth Cause of Action alleging liability for fraud, and Fifth Cause of Action seeking punitive damages; thus, the Court is not ruling on the portions of Defendant's motion seeking dismissal of these three Causes of Action for failure to state a claim; and

- Plaintiff's Second Cause of Action based on apparent agency and Third Cause of Action for equitable estoppel fail to state a claim under Federal Rule of Civil Procedure 12(b)(6).

Plaintiff is granted leave to sufficiently plead the only claim that she seeks against Defendant, vicarious liability based on the theory of apparent agency. Within 30 days of entry of this Memorandum and Order, Plaintiff is directed to file a Second Amended Complaint that sufficiently alleges her claim for vicarious liability based on the theory of apparent agency consistent with this Memorandum and Order. If Plaintiff fails to timely file a Second Amended Complaint, the Court will dismiss this case and direct that the case be closed.


**SO ORDERED.**

s/SLT

/SANDRA L. TOWNES
United States District Judge

Dated: **October 6**    , 2017
Brooklyn, New York