UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

VERONICA BROWN,

                          Plaintiff,

   -against-

MARRIOTT INTERNATIONAL, INC.,

                       Defendant.

------------------------------------------------------------------------X

Docket No. CV-14-5960(SLT)
Hon. Nina Gershon

***Memorandum of Law
In Opposition***

---

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT MARRIOTT INTERNATIONAL, INC.'S MOTION
## FOR SUMMARY JUDGMENT DISMISSING THIS CASE

**BLOCK O'TOOLE &MURPHY, LLP**
One Penn Plaza, Suite 5315
New York, NY 10119
212-736-5300

*Attorneys for Veronica Brown*

By:    David L. Scher, Esq.
         Christina R. Mercado, Esq.

## Table of Contents

Table of Authorities.................................................................................................................3

Preliminary Statement ...........................................................................................................4

Argument

       **I.**    **Defendant Marriott International, Inc. Bore The Burden On Its Summary Judgment Motion To Dismiss This Case**...........7

      **II.**   **Issues Of Fact With Respect To Apparent Authority Preclude Summary Judgment**...…..…………..……………………………...8

Conclusion…………………………………………………………………........................21

# Table of Authorities

**CASES**

Amnesty America v. Town of W. Hartford, 361 F.3d 113 (2d Cir. 2007) ...........................7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ................................................7

Baldwin v. EMI Feist Catalog, Inc., 805 F.3d 18 (2d Cir. 2015) ....................................7

Brown v. Marriott Intl., Inc., 14CV5960SLTMDG, 2017 WL 4484194 (EDNY 2017) ...........8

Carris v. Marriott International, Inc., 466 F.3d 558 (7th Cir. 2007) ................................16

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) .......................................................7

Dalberth v. Xerox Corp., 766 F.3d 172 (2d Cir. 2014) ..............................................8

FDIC v. Great Am. Ins. Co., 607 F.3d 288 (2d Cir. 2010) ..........................................7

Greene v. Long Island R. Co., 280 F.3d 224 (2d Cir. 2002) ........................................10

Hart v. Marriott International, Inc., 758 N.Y.S.2d 435 (3d Dept. 2003) ......................12, 18

Herbert Const. Co. v. Cont. Ins. Co., 931 F.2d 989 (2d Cir. 1991) .................................8

In re Omnicom Grp., Inc. Sec. Litig., 597 F.3d 501 (2d Cir. 2010) .................................8

J.T. Magen & Co., Inc. v. Allen Edmonds Corp., 268 F.Supp.3d 481 (SDNY 2017) ..............7

Leach v. Kaykov, 07-CV-4060-KAM-VVP, 2011 WL 1240022 (EDNY 2011) ...................7

Masuda v. Kawasaki Dockyard Co., 328 F.2d 662 (2d Cir. 1964) ..................................8

Nebraskaland, Inc. v. Sunoco, Inc. (R & M), 2013 WL 5656143 (EDNY 2013) .................10

Schoenwandt v. Jamfro Corp., 689 N.Y.S.2d 461 (1st Dept. 1999) ................................12

Toppel v. Marriott Intern., Inc., 03 CIV. 3042 (DF), 2008 WL 2854302 (SDNY 2008)......*passim*

Toppel v. Marriott Intern., Inc., 03 CIV. 3042 (DAB), 2006 WL 2466247 (SDNY 2006)...*passim*

Wu v. Dunkin' Donuts, Inc., 105 F.Supp.2d 83 (EDNY 2000) ......................................12

**STATUTES**
Fed. R. Civ. P. 56(a).....................................................................................7

# PRELIMINARY STATEMENT

Defendant MARRIOTT INTERNATIONAL, INC. (hereinafter "MII" or "Marriott") is not entitled to summary judgment dismissing this case in which Plaintiff VERONICA BROWN fell and sustained injuries at *the* St. Kitts *Marriott* when she slipped on water that had come from a recurring leak in an air conditioner, which she had complained about prior to the accident.

Counsel for Defendant MII/Marriott argues that it did not own or operate the subject Marriott St. Kitts (and merely owns the Marriott name that it licensed) and cannot be liable under the apparent authority doctrine because, in essence, Plaintiff BROWN could not have reasonably relied on representations that the Marriott St. Kitts was a Marriott/MII (-owned/operated) hotel.

However, in addition to the hotel bearing the very name 'Marriott', there is abundant evidence in the record that the hotel was held out as a 'Marriott' property—in fact, Ms. BROWN actually found it by Google-searching "Marriott St. Kitts"; it is listed on the Marriott (MII) website as a Marriott hotel and is referred to there as "*Our* [MII's] St. Kitts Marriott"; the Marriott name and logo appear on signage at the hotel, on stationary in the rooms, on receipts and invoices; Marriott reward points can be obtained or redeemed at the hotel; Marriott gift cards can be used there; the hotel staff has Marriott email addresses. Ms. BROWN further testified that she specifically chose to stay at this hotel because it was a 'Marriott'—because she trusted the 'Marriott' name for its reputation for, *inter alia,* service and safety, particularly abroad.

Moreover, the Defendant MII witness, Sonia Cunliffe, actually admitted that a customer such as Plaintiff BROWN would not know whether this 'Marriott' hotel was owned by Defendant MII versus licensed by Defendant MII (or one of its Marriott subsidiaries or affiliates, such as Marriott Worldwide and managed by another of its subsidiaries, Marriott St. Kitts Management Company, Inc.). To the consumer, it looked exactly the same as hotels owned and

4

operated by MII; they are all simply "Marriotts".

In addition to its unavailing argument that the 'mere' licensing of the Marriott name was not enough to cloak the hotel with apparent authority to act as 'Marriott' (which, as indicated above is directly contradicted by its own witness's admission), Defendant MII/Marriott attempts to distance itself from its subsidiary/affiliate entities in this case, Marriott Worldwide Corporation and Marriott St. Kitts Management Company, Inc., which were the licensor and **exclusive manager** for the hotel, while MII/Marriott was only directly a party to the International Services Agreement.

However, these same or similar arguments have been rejected against this Defendant (and specifically in connection with the same licensor subsidiary Marriott Worldwide) in the past in New York federal court.

Moreover, Defendant MII/Marriott, which is the parent 'Marriott' company at the top of the 'Marriott' structure, was directly involved in the process of licensing and managing the subject Marriott St. Kitts hotel, as well as being a party to the International Services Agreement.

In fact, defense counsel admitted before this Court that the hotel ownership contacted Defendant MII/Marriott to effectively make the hotel a Marriott, which was a process that is generally effectuated through the execution of (at least) three MII/Marriott-drafted agreements: a management agreement, a license agreement and an international services agreement. These agreements are related and cross-referenced and incorporated within one another.

In this case, Defendant MII/Marriott was intimately involved in this collective of three related agreements—including a specific Management Agreement, a Licensing Agreement and an International Services Agreement—which are referred to together as 'the Marriott Agreements', in the Management Agreement. These three agreements are not three independent

contracts that have no bearing on one another. Rather, the agreements operate collectively to not only license the hotel to use the Marriott name, but to provide that the hotel be ***exclusively and actively managed*** by a MII/Marriott subsidiary (Marriott St. Kitts Management Company, Inc.) that was formed for this very purpose—to operate the hotel as a Marriott.

Specifically, the Management Agreement provided that MII/Marriott's subsidiary would exclusively manage the hotel and be responsible for its operations from top to bottom, from hiring, firing and supervising employees; to ***performing repairs and maintenance***; to contracting with ***air conditioning contractors***. The employees had Marriott email addresses and were treated as employees of Marriott whether they worked for the hotel or MII/Marriott directly. Defendant MII/Marriott itself contracted to train the employees "the same as substantially all other Marriott Chain hotels in the Hotel Region" and, *inter alia,* to make the "Property Management System" available to the hotel and required the hotel to use the MII/Marriott "Property Management System, provided that substantially all other Marriott Chain hotels .. use [it]".

As such, there are issues of material fact that preclude summary judgment dismissing this action against Defendant MII/Marriott under the doctrine of apparent authority and Defendant MII/Marriott's Motion should, respectfully, be dismissed in its entirety.

## ARGUMENT

### I.  Defendant Marriott International, Inc. Bore The Burden On Its Summary Judgment Motion To Dismiss This Case

"To prevail on a motion for summary judgment, the moving party must show that there is no genuine, triable issue of material fact, and that it is entitled to judgment as a matter of law." Leach v. Kaykov, 07-CV-4060-KAM-VVP, 2011 WL 1240022, at *9 (EDNY 2011) (citing Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)); *see also* J.T. Magen & Co., Inc. v. Allen Edmonds Corp., 268 F Supp 3d 481, 485 (SDNY 2017) ("[movant must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (citing Fed. R. Civ. P. 56(a)). "The moving party carries the burden of demonstrating the absence of a genuine issue of material fact." Leach, *supra* (citing FDIC v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir.2010); Celotex, *supra,* 477 U.S. at 323).

"A fact is considered material if it '*might* affect the outcome of the suit under the governing law,' and an issue of fact is a genuine one where 'the evidence is such that a reasonable jury *could* return a verdict for the nonmoving party.' Leach, *supra,* 2011 WL 1240022, at *9 (EDNY 2011) (emphasis added; citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)); *see also* Baldwin v. EMI Feist Catalog, Inc., 805 F.3d 18, 25 (2d Cir. 2015).

"In considering a motion for summary judgment, the court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his [or her] favor." Leach, *supra* (citing Amnesty America v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir.2007)); *see also* J.T. Magen & Co., Inc., *supra,* 268 F Supp 3d 481, 485 (SDNY 2017) ("In looking at the record, we construe the evidence in the light most favorable to the nonmoving party and draw all inferences and resolve all ambiguities in favor of the nonmoving party."

(citing <u>Dalberth v. Xerox Corp.</u>, 766 F.3d 172, 182 (2d Cir. 2014); <u>In re Omnicom Grp., Inc. Sec. Litig.</u>, 597 F.3d 501, 509 (2d Cir. 2010)).

## II. <u>Issues Of Fact With Respect To Apparent Authority Preclude Summary Judgment</u>

Plaintiff does not dispute Defendant MII's summary of the procedural history and prior motion in this case. It is not disputed that this case against MII is based on apparent authority.

Under New York law, the longstanding doctrine of apparent authority permits a principal (MII) to be held liable where no actual authority existed, but where the principal (MII) can be said to be responsible for an appearance of authority in an agent (the subject Marriott St. Kitts) and a third party (Plaintiff Brown) reasonably relied on the representations of the agent. <u>Herbert Const. Co. v. Cont. Ins. Co.</u>, 931 F2d 989, 993-94 (2d Cir. 1991) ("To recover on [apparent authority] theory the third party must establish two facts: (1) the principal 'was responsible for the appearance of authority in the agent to conduct the transaction in question,' and (2) the third party reasonably relied on the representations of the agent. (citations omitted)).

As correctly provided in the prior decision, "[a]pparent authority is based on the principle of estoppel .... If a third person holds the reasonable belief that the agent was acting within the scope of this authority and changes his position in reliance on the agent's act, the principal is estopped to deny that the agent's act was not authorized." <u>Brown v. Marriott Intl., Inc.</u>, 14CV5960SLTMDG, 2017 WL 4484194, at *12 (EDNY 2017) (citing <u>Masuda v. Kawasaki Dockyard Co.</u>, 328 F.2d 662, 665 (2d Cir. 1964) (citation omitted)).

In general, "[t]he existence of apparent authority is a question of fact." <u>Herbert Constr. Co.</u>, *supra,* 931 F.2d at 993-94 (2d Cir. 1991) (citations omitted)).

Here, Plaintiff Brown elected to stay at the subject Marriott St. Kitts because it was a "Marriott", or at least she reasonably believed it was a "Marriott" (*i.e.* a MII-owned and operated

*hotel*). *Ms.* Brown described her reasons for choosing to stay at the subject St. Kitts Marriott hotel as based on her history staying at various Marriotts and her comfort in the quality of Marriott hotels, including with respect to safety and cleanliness, service and attention. Specifically, Ms. Brown testified that she chose the subject St. Kitts Marriott because: she visited the hotel's website and "when you're going to the islands you want to stay at some place safe... I stay in the Marriott hotels all the time. I really like the service. And because, as I said, going to the islands I want to stay in a reputable hotel... All I remember I wanted the Marriott... I just looked at a nice Marriott hotel". (*See* Response to Facts ("looked on the computer [to] see what the Marriott resorts were and [her daughter-in-law] said there is a nice Marriott in St. Kitts and we saw it on the internet"). That is, Ms. Brown, reasonably relying on the online representations that the Marriott St. Kitts was a 'Marriott' hotel, made arrangements to stay in the subject Marriott St. Kitts. (*See, e.g.,* Toppel v. Marriott Intern., Inc., 03 CIV. 3042 (DF), 2008 WL 2854302, at *3 (SDNY 2008) ("According to Plaintiffs, they at all times believed that they were staying at a Marriott property. Mr. Toppel received a receipt for breakfast at a restaurant in the Hotel showing that it was the 'Nassau Marriott Hotel.' The room bill was also printed on 'Nassau Marriott' letterhead, with the largest word on the page being 'Marriott.' In addition, the Toppels' express check-in and check-out cards contained the label 'Marriott' in large letters").

Plaintiff Brown's injuries resulted from the inattentiveness and carelessness of the St. Kitts Marriott hotel's staff in responding to a recurring leak from a ceiling air conditioning unit, which Ms. Brown complained of prior to her accident, and which ultimately caused Ms. Brown to slip and fall. That is, the instrumentality of her injuries was the service at the Marriott, as well as the physical conditions at the property including an unrepaired leaking air conditioner. (*See* Fact Response).

In support of its motion for summary judgment to dismiss this entire case, Defendant MII [Marriott] first attempts to distance itself from the 'Marriott' brand by arguing that "MII was not involved in the International License Agreement that allowed Royal St. Kitts to utilize the Marriot trademark" as "[t]he License Agreement was between Marriott Worldwide [MII's subsidiary and affiliate corporation] and Royal St. Kitts." (MII Memorandum of Law, pages 8-9). Defendant MII further argues that "plaintiff disregards corporate structure" and that Marriott Worldwide, the entity that granted the Marriott licensing, was a separate corporation from Defendant MII. (MII Memorandum of Law, page 9).

However, first of all, the fact that Marriott Worldwide Corporation is a subsidiary of Defendant MII does not immunize MII from any and all liability. See Toppel v. Marriott Intern., Inc., 03 CIV. 3042 (DAB), 2006 WL 2466247, at *5-6 (SDNY 2006) ("While corporate ownership of a subsidiary and overlapping offices and directorates are not, without more, sufficient to impose liability on the parent for conduct of the subsidiary ... the parent may nonetheless be liable for operations of the subsidiary in which the parent itself, wearing its parenting hat, participates." (citing Greene v. Long Island R. Co., 280 F.3d 224 (2d Cir.2002)); see also Nebraskaland, Inc. v. Sunoco, Inc. (R & M), 10 CV 1091 RJD CLP, 2013 WL 5656143, at *7-8 (EDNY 2013) ("Although ... franchisee's mere use of [signage and advertising materials with the franchisor's logo] will not support a finding of apparent authority .... purported agent's use of such materials, supplied by the principal, in the course of forming a contract with a third-party may create a genuine issue of fact on the issue of apparent authority.").

In fact, in Toppel, this Court specifically considered the relationship between these two entities and held that Defendant MII could be held liable where Marriott Worldwide, not MII, was the franchisor, as "Marriott International [MII] wields significant influence over the

10

operations of Marriott Worldwide" and "Marriott International[MII]'s influence over the operations of a hotel with which Marriott Worldwide has formed a Franchise Agreement means that Marriott International [MII] may sufficiently control and dominate Marriott Worldwide." Toppel v. Marriott Intern., Inc., 2006 WL 2466247, at *5-6 (SDNY 2006) ("According to the face of the Franchise Agreement, Marriott International wields significant influence over the operations of Marriott Worldwide. Marriott International participates in designing the system by which the hotel's staffers are trained, sets standards for furnishing and renovating the hotel, requires the Franchisee's participation in promotional campaigns, is protected under an insurance policy for, among other things, comprehensive and commercial liability, and is to be indemnified by the franchisee for damages resulting from claims arising on the hotel premises. The Agreement further requires the Franchisee to make payments to Marriott Worldwide or to other Marriott Companies so designated by Marriott Worldwide, including Marriott International. Marriott International's influence over the operations of a hotel with which Marriott Worldwide has formed a Franchise Agreement means that Marriott International may sufficiently control and dominate Marriott Worldwide. ... If Marriott International is subject to liability for the alleged misconduct of Marriott Worldwide, the corollary question is whether Marriott Worldwide could itself be held liable under the Franchise Agreement. Defendants argue that a franchisor as a matter of law cannot exercise sufficient control or domination over a franchisee to warrant the franchisor's being held liable for injuries incurred on the franchisee's premises. Under New York law, 'in deciding whether a franchisor may be held vicariously liable for acts of its franchisees, courts determine whether the franchisor controls the day-to-day operations ... whether the franchisor exercises ... control over the instrumentality at issue in a given case.' A franchise agreement's labeling one of the two parties as a 'franchisee' is 'not dispositive' proof

that a particular franchisee-franchisor relationship is devoid of control" (citing <u>Wu v. Dunkin'</u> <u>Donuts, Inc.</u>, 105 F.Supp.2d 83, 87 (EDNY 2000); <u>Schoenwandt v. Jamfro Corp.</u>, 689 N.Y.S.2d 461, 461 (1st Dept.1999); <u>Hart v. Marriott International, Inc.</u>, 758 N.Y.S.2d 435, 438 (3d Dept 2003); *see also* <u>Toppel v. Marriott Intern., Inc.</u>, 2008 WL 2854302, at *3 (SDNY 2008).

Here, Defendant MII ["Marriott International, Inc."] is the parent 'Marriott' company at the top of the 'Marriott' structure and is referred to in the 'Marriott Agreements' in this case as, simply, 'Marriott'. MII itself only owns a small percentage of "Marriott" hotels around the world – the remainder are governed by licensing and management agreements with Defendant MII and its subsidiary companies, including Marriott Worldwide Corporation. (*See* Fact Response).

However, Sonia Cunliffe, the Defendant MII corporate representative produced for deposition in this case, admitted that a customer such as Plaintiff Brown would not know whether a given 'Marriott' hotel was owned by Defendant MII versus licensed/managed by Defendant MII or one of its Marriott subsidiaries or affiliates, such as Marriott Worldwide. To the consumer, they all look exactly the same; they are simply "Marriotts". (*See* Fact Response).

The defense witness, Ms. Cunliffe, further testified that MII expects that the use of the Marriott will "attracts customers" because of "Marriott's reputation for safety and cleanliness, especially abroad". She further admitted that, "Marriott [MII] expects that a customer staying at the Marriott St. Kitts can rely on receiving the Marriott standard". (*See* Fact Response).

The subject Marriott St. Kitts had 'Marriott' in its name; 'Marriott' (MII) signage was displayed; the 'Marriott' (MII) name was on customer receipts, invoices, discount forms and in-room stationary; Marriott (MII) loyalty rewards points could be acquired and redeemed at the subject Marriott St. Kitts; Marriott (MII) gift cards could also be used there. (*See* Fact Response).

The record also demonstrates that the only way to book a room at the subject Marriott St. Kitts is through Defendant MII's own booking system and that the "Marriott" name appears everywhere in relation to this hotel – on signage, bills, stationary, etc. The Marriott/Defendant MII website lists all of its hotels, and nowhere distinguishes those it technically owns from those which it does not. Further, the Marriott/Defendant MII website uses the possessive pronoun to identify "*Our* St. Kitts Hotel" – conveying the clear appearance of ownership and control. Ms. Cunliffe made clear during her deposition that Marriott corporate (*i.e.*, MII) insists on hotels, such as the St. Kitts Marriott, adhering to certain quality standards or else the hotel will be taken out of the Marriott system. (*See* Fact Response).

In its instant motion, Defendant MII further attempts to claim that it cannot be liable under apparent authority because it had no responsibility for the management of the subject St. Kitts Marriott hotel. (*See* MII Memorandum of Law, page 9 ("MII entered into an agreement with Royal St. Kitts to act as its independent contractor … MII agreed to provide Royal St. Kitts various services including advertising, marketing, promotion, sales, reservations, and systems management training.")).

However, this Marriott St. Kitts was not formed with some one-time, arms-length licensing deal. Rather, Defendant MII acted to form a subsidiary company—'Marriott St. Kitts Management Company'—to be the exclusive manager to supervise, direct and control the **management and operation** of the subject Marriott St. Kitts. And the MII subsidiary manager, 'Marriott St. Kitts Management Company' (later known as 'Luxury Hotel International') *was actively "managing the [subject] hotel"* at the time of the accident. (*See* Fact Response).

Under the management agreement, "Marriott" was defined to mean "Marriott International, Inc. [MII]" and the term 'Marriott' appeared repeatedly throughout the agreement. The Management Agreement incorporated the licensing agreements, identifying them as the 'Marriott Agreements'

and including licensing protocols and terms as part and parcel to much of the management terms. (*See* Fact Response).

Under the management agreement, the MII subsidiary management company, 'Marriott St. Kitts Management Company' agreed to "arrange for the provision of … executive supervision and support from Marriott [MII] … [including in] quality assurance …" (*See* Fact Response).

Under the management agreement, the MII subsidiary management company, 'Marriott St. Kitts Management Company' agreed to "Employ, train, supervise … all personnel … to provide proper operation, supervision and management of the Hotel …" (*See* Fact Response).

Under the management agreement, the MII subsidiary management company, 'Marriott St. Kitts Management Company' agreed to "enter into … contracts … necessary or desirable in the ordinary course of business in operating the Hotel, including … contracts for … electricity, … other utility … *air conditioning maintenance* … and other services …". The MII subsidiary management company, 'Marriott St. Kitts Management Company' also agreed to "Perform … maintenance and repairs"; and, *inter alia*, to "***make*** or cause to be made such routine ***repairs, routine maintenance***, and minor alterations … as it deems necessary to maintain the Hotel in good repair and condition". The MII subsidiary management company, 'Marriott St. Kitts Management Company' was also "authorized to take appropriate remedial action … without receiving Owner's prior consent … if the continuation of the given condition would subject Manager and/or Owner to civil … liability, and if Owner has … failed to remedy the situation". (*See* Fact Response).

The management agreement further provided that "All …communications … permitted … shall be in writing and delivered to … <u>To Manager</u>: ***Marriott St. Kitts Management Company, Inc. c/o Marriott International, Inc. [MII]*** 10400 Fernwood Road … <u>With a copy to Marriott [MII]</u>: Marriott International, Inc. [MII] 10400 Fernwood Road …" (*See* Fact Response).

Defendant MII additionally attempts to distance itself by claiming that it did not directly

'employ' any employees at the subject Marriott St. Kitts.

However, under the management agreement, the MII subsidiary management company, 'Marriott St. Kitts Management Company' agreed that "key Hotel Employees … may be employees of Manager or any of its Affiliates"; that it had "*absolute discretion to hire, terminate, promote, supervise, direct and train all Hotel Employees* … and generally to establish and maintain all employment policies and practices, including the assignment from time to time of Hotel Employees to work at other hotels within a 'cluster' of hotels …"; that it was "permitted to provide complimentary accommodations and amenities to its and its Affiliates' employees and representatives"; that "Anticipated gratuitous and discounted accommodations and amenities … shall be provided consistent with Marriott Chain procedures and policies". (*See* Fact Response).

In addition, the record demonstrates that MII considers its 'employees' to be not only direct employees of MII, but also employees of other 'Marriott' entities as well as employees of outside hotel-owner entities of hotels that have licensed the 'Marriott' name. Marriott (MII) also considers employees of licensees to be Marriott (MII) employees, in that the Marriott (MII) employee discount can be used by 'employees' of hotels that are not owned by Marriott/MII but are, rather, licensees. (*See* Fact Response).

Further, employees of the subject Marriott St. Kitts, including the managers, used Marriott (MII) email addresses (@marriotthotels.com) at the time of the accident. (*See* Fact Response).

Defendant MII further contends that Plaintiff Brown has not proven that she knew the specific corporate identity of MII (as opposed to 'Marriott', as MII's own witness, other courts and the Management Agreement in this case refer to it); that Ms. Brown has not proven that she looked at MII's specific website when she testified that she viewed the St. Kitts Marriott website; that Ms. Brown did not physically book her own stay so must not have viewed the MII reservation page; or that Ms. Brown should have known that MII might not have owned the

Marriott St. Kitts because the discount room rate form stated "at participating Marriott International operated and franchised lodging or Marriott Vacations Worldwide Corporation properties". (MII Memorandum of Law, pages 9-10).

In support of Defendant MII's inaccurate position that these contentions entitle it to summary judgment, MII relies on a 2006 decision from the Seventh Circuit in which it had been a defendant. (MII Memorandum of Law, pages 11-12 (citing Carris v. Marriott International, Inc., 466 F.3d 558 (7th Cir. 2007)).

However, as detailed in Plaintiff's pre-motion letter, Carris is not controlling, as that case only considered Illinois and Bahamian law.

In response to Plaintiff's pre-motion letter Defendant MII attempts to address the 2008 SDNY decision in which it was also a defendant – Toppel v. Marriott International, Inc., 03 CIV. 3042 (DF), 2008 WL 2854302 (SDNY 2008). In that case, Defendant MII was denied summary judgment on an apparent authority claim stemming from a slip and fall accident that occurred at a "Marriott" hotel in the Bahamas; a hotel governed by a franchise agreement that appears to be extremely similar to the one at issue in this case. This Court found that triable issues existed not only as to the extent of MII's control and right of control over the general operations of the hotel, but also whether the hotel acted with Marriott (MII)'s apparent authority. *See* Toppel, *supra*, 2008 WL 2854302, at *4 (SDNY 2008) ("summary judgment should be denied where a franchise agreement demonstrates that the *franchisor* has retained specific control over the particular instrumentality or condition at issue, or where there are disputed facts bearing on the extent of control exercised by the franchisor.").

Defendant MII argues that Toppel was decided against Defendant MII because plaintiff's injuries arose out of renovations which Marriott controlled. However, in Toppel, summary

judgment was denied based on a number of factors and was not specifically related to any specific renovations. The plaintiff had alleged various reasons for her fall, and renovations in the area of the accident had not yet taken place but were merely used to show control over the area and instrumentality of her accident. Toppel v Marriott Intern., Inc., 03 CIV. 3042 (DF), 2008 WL 2854302, at *9 (SDNY 2008) ("there are several specific 'instrumentalities' that may have led to Ms. Toppel's fall down the flight of stairs and resultant injuries. Plaintiffs point to the location of the menu next to the stairs, the dim lighting around the area of the incident, and the carpeting, which allegedly did not distinguish the stairs, as the bases of their negligence claim.").

Here, Plaintiff Brown has alleged that her accident was caused by the inattentive service of the Marriott personnel, by the recurring air conditioner problem and failure to repair the condition. The record, as described above and in the Fact Response, demonstrates that, under the Management Agreement, MII's subsidiary manager (under terms requiring MII to be copied on all communications) was responsible for hiring, training and supervising employees; for contracting with air conditioning contractors; and for performing repairs and maintenance.

Furthermore, in Toppel, this Court rejected arguments made by Defendant MII that are similar to the ones Defendant MII makes in this case (*i.e.* that it could not be liable because Marriott Worldwide not MII was the party to the licensing agreement; that the License Agreement did not demonstrate any control; that plaintiff's submission of documents bearing the Marriott name, particularly receipts and letterhead that would not have been seen by plaintiff until after the room was booked—were insufficient to raise issues of fact on an apparent authority claim). Toppel, *supra,* 2008 WL 2854302, at *10 (SDNY 2008) ("despite their argument to the contrary, the Franchise Agreement, taken as a whole, suggests that Defendants exercised or retained at least some control over the general operations of the Hotel. The

agreement also suggests that Defendants had at least some control over the particular instrumentalities that allegedly caused Ms. Toppers injuries."); id. at *11 ("although Defendants argue that Plaintiffs have submitted no evidence to support their position that the Hotel acted with apparent authority, Plaintiffs have in fact submitted a hotel receipt, hotel letterhead, and check-in and check-out cards, all displaying the 'Marriott' trademark."); id. ("certain provisions in the Franchise Agreement suggest that Defendants were attempting to create an appearance that the Hotel was Marriott-owned and operated. (... (requiring Franchisee to participate in Marriott promotional campaigns) ... (mandating that Franchisee ... 'prominently' display[] Marriot 'brand-specific posters' in public areas as well as 'Cross Brand Marketing Brochures' and 'Marriott Rewards Brochures' at the Front Desk).) On this record, regardless of Defendants' argument that it lacked sufficient actual control of the premises to render it potentially liable in this case, the evidence suggests that Plaintiffs may still prevail on a theory of 'apparent authority,' and thus summary judgment based on the Franchise Agreement would, in any event, be inappropriate.").

Another case involving Defendant MII, Hart v. Marriott International, Inc., 758 N.Y.S.2d 435 (3d Dept. 2003), is also instructive. In Hart, the New York appellate court made clear that the apparent authority claim failed only because the plaintiff had failed to even allege that she had relied upon MII's name, skill or reputation in choosing to attend a function at the Marriott hotel at issue there. See Hart, supra, 304 A.D.2d 1057, at FN 1. The opposite is true in this case.

It must be stressed that Defendant MII's actual control over the subject Marriott St. Kitts is not necessary to Plaintiff Brown's apparent authority claim; the "appearance" of control is sufficient. See Toppel, supra, 2008 WL 2854302, at *11 (SDNY 2008) ("the Franchise Agreement, in combination with the other evidence ... raises triable issues as to the extent of

Marriott's control (and right of control) over the general operations of the Hotel, as well as its control over the very instrumentalities that allegedly caused [plaintiff's] fall, … It also raises an issue as to whether the Hotel may properly be characterized as fully 'independent' of Marriott, and whether the Hotel acted with Marriott's apparent authority. As the record demonstrates the existence of disputed facts and conflicting inferences that may be drawn from the evidence, Defendants' motion for summary judgment in its favor … is denied.").

Here, it is evident that Defendant MII had both real *and* perceived control of the subject Marriott St. Kitts. The <u>Toppel</u> Court's denial of Defendant MII's summary judgment motion relied upon the plaintiff's submission of hotel receipts, letterhead and check-in cards that all displayed the "Marriott" trademark and evidence that MII required certain Marriott branding and participation in Marriott promotions. *See* <u>Id.</u> All of those things are true in the case at bar as well. (*See* Fact Response). A jury in this case could thus reasonably find, certainly viewing the evidence in a light most favorable to Plaintiff Brown, that Defendant MII created an appearance that this Marriott St. Kitts was Marriott-owned, operated and controlled; things that Ms. Brown reasonably believed and which actually caused her to stay at the hotel called 'Marriott' in St. Kitts. The inattentiveness and carelessness of the hotel's staff in responding to a recurring leak from a ceiling air conditioning unit, which Plaintiff Brown complained of prior to her accident, caused Ms. Brown to slip, fall and suffer severe cervical spine injuries – injuries for which MII should be responsible. (*See* Fact Response).

Defendant MII did all it could to portray this Marriott St. Kitts to the public and to Plaintiff Brown as one that Marriott (Defendant MII) owned and controlled in order to attract business and increase profits. Defendant MII's own witness admitted this was Defendant MII's goal and that there was no way for the public to know which hotels were Marriott-owned versus

subject to franchise/license/management agreements. The very first time Defendant MII conveyed in any way to Ms. Brown that it had no responsibility for the operation of this Marriott St. Kitts hotel was after she sued MII. We submit respectfully that this sort of practice is precisely why apparent authority exists in the law and it should be applied herein to impose liability upon Defendant MII.

As such, respectfully, summary judgment should be denied.

## CONCLUSION

There is more than enough evidence on this record to raise issues of material fact with respect to Defendant MII/Marriott's liability under the apparent authority doctrine. Because of Defendant MII/Marriott's actions, Plaintiff reasonably believed the subject St. Kitts Marriott was a Marriott (-owned and operated) hotel and chose to stay there because she reasonably believed it was a Marriott. Based on her past experiences with Marriott and the Marriott reputation, she reasonably believed the subject St. Kitts Marriott would provide safe accommodations with a high standard of service. Instead, the staff was inattentive and failed to repair an air conditioner with a recurring leak, which ultimately caused her to slip and fall, resulting in injuries.

Based on the facts and law, it is respectfully requested that the Court deny Defendant MARRIOTT INTERNATIONAL INC.'s motion for summary judgment dismissing this case in its entirety; and for such other and further relief as to this Court seems just and proper.

Dated:  New York, NY
   January 11, 2019

            Respectfully submitted,

            BLOCK O'TOOLE &MURPHY, LLP
            Attorneys for Veronica Brown

            By:_____
             David L. Scher
             One Penn Plaza, Suite 5315
             New York, NY 10119
             (212) 736-5300
             dscher@blockotoole.com