UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
VERONICA BROWN,

                               Plaintiff,

-against-

MARRIOTT INTERNATIONAL, INC.,

                               Defendant.
------------------------------------------------------------------X

Docket No. CV-14-5960(SLT)
Hon. Nina Gershon

*Opposition to*
*Rule 56.1 Statement*

## LOCAL RULE 56.1(b) STATEMENT OF VERONICA BROWN IN RESPONSE TO AND IN ADDITION TO MARRIOTT INTERNATIONAL, INC.'S RULE 56.1 STATEMENT OF UNDISPUTED FACTS

Plaintiff VERONICA BROWN makes the following response in opposition to Defendant MARRIOTT INTERNATIONAL, INC.'s Statement of Facts in connection with its motion for summary judgment submitted in accordance with F.R.C.P. 56. The lettered exhibits referenced herein, refer to exhibits submitted with Defendant's motion, attached to the Declaration of Paul F. Clark, Esq. sworn to on December 17, 2018. The numbered exhibits referenced herein are attached to the Declaration of David L. Scher, Esq. sworn to on January 11, 2019.

| MARRIOTT'S STATEMENT | BROWN'S RESPONSE | SUPPORT FOR RESPONSE |
|---|---|---|
| **1.** MII is a Delaware corporation with a primary place of business in Maryland. **Exhibit G.** | Not disputed. | |
| **2.** MII is a parent company of affiliated subsidiaries including Marriott Worldwide Corporation ("Marriott Worldwide"). **Exhibit H,** Sonia Cunliffe dep. P. 11:6-14. | Not disputed. | |
| **3.** MII owns approximately 150 hotels worldwide and the balance of the approximate 5,200 hotels in the Marriott chain are either franchised or licensed to others. **Exhibit H,** Sonia Cunliffe dep. P. 15:6-14. | Not disputed. | |
| **4.** For example, in the Caribbean region, | Not disputed. | |

| MARRIOTT'S STATEMENT | BROWN'S RESPONSE | SUPPORT FOR RESPONSE |
|---|---|---|
| MII owns 16 hotels and about 400 others are license to use the Marriott trademark. **Exhibit H**, Sonia Cunliffe dep. P. 15:16-25. | | |
| 5. Royal St. Kitts Beach Resort Limited ("Royal St. Kitts), a company organized under the laws of the Federation of St. Christopher & Nevis, owns the St Kitts Beach resort. **Exhibit I – License Agreement.** | <u>Not disputed</u>. | |
| 6. In May 2006, Royal St. Kitts entered into a sixteen page Amended and Restated License and Royalty Agreement with Marriott Worldwide licensing it to use the Marriott trademarks for hotel services. **Exhibit I.** | <u>Disputed in part</u>. The hotel owner and MII and/or its affiliates entered into multiple agreements and covered more than just use of the Marriott trademarks for hotel services, as detailed further below. In addition, defense counsel admitted to this Court that MII, not merely "Marriott Worldwide" was heavily involved in this process; "the ownership of the hotel and property ... contact[ed] Marriott International and [] sign[ed] basically three agreements: A management agreement, a license agreement and, since this is St. Kitts, an international services agreement." | **Exhibit H, Exhibit I, Exhibit J, Exhibit K; Exhibit "1".** |
| 7. The License Agreement expressed the relationship of the parties, in pertinent part:<br>9.03 <u>Relationship</u><br>The relationship of Owner[Royal St. Kitts] and [Marriott Worldwide] shall be that of licensee and licensor, and nothing contained in this Agreement shall be construed to create an agency, partnership or joint venture between them or their successors in interest. **Exhibit I p. 11.** | <u>Not disputed</u>. The License Agreement did contain such quoted provisions. | |
| 8. Per the agreement, Royal St. Kitts was to comply with quality standards to enhance and protect the goodwill of the trademarks. **Exhibit I p. 4 Article III, 3.01A.** | <u>Not disputed</u>. | |
| 9. The only reference to MII in the license agreement is contained in a notice provision requiring that it be copied on certain communications. | <u>Disputed in part</u>. It is correct that MII is specifically listed as a party to which notice must be given (in additional to Marriott Worldwide Corporation at the | **Exhibit I**, Recitals, D; pp. 2, 4; *see* **Exhibit K**. |

| MARRIOTT'S STATEMENT | BROWN'S RESPONSE | SUPPORT FOR RESPONSE |
|---|---|---|
| **Exhibit I p.12-13.** | same address). The agreement also provides "the Hotel, together with other Marriott Chain hotels ... will be operated as part of an international system of Marriott Chain hotels providing distinctive and high quality hotel facilities and related services"; "'Marriott Trademarks' means (i) the name and mark 'Marriott'; (ii) the 'M' logo ... ; and (iii) all other trademarks, service marks, trade names ... used or registered by MWC *or any of its Affiliates*"; "the worldwide goodwill associated with the Marriott Trademarks (including on the island of St. Kitts)". In addition, as detailed below, the License Agreement was only one of several 'Marriott Agreements' that operated collectively in the operation of the hotel in conjunction with the licensing of the Marriott (MII) name. | |
| **10.** In May 2006, Royal St. Kitts entered into a seventeen page Amended and Restated International Services Agreement with MII with respect to certain international services including advertising, marketing, promotion, sales, and training programs as well as reservations, property management and other systems. **Exhibit J.** | Not disputed. | |
| **11.** The Recitals in the International Services Agreement state in part:<br>B. [Royal St. Kitts] desires certain services to be performed in support of the Hotel outside the Federation of St. Christopher & Nevis, and [MII] desires to perform such services.<br>**Exhibit J p.1.** | Not disputed. | |
| **12.** The International Services Agreement included a term describing the relationship of the contracting parties:<br>6.03 <u>Relationship</u><br>Marriott has been engaged by Owner | Not disputed. The Agreement did include such provisions as are quoted. | |

| MARRIOTT'S STATEMENT | BROWN'S RESPONSE | SUPPORT FOR RESPONSE |
|---|---|---|
| and is acting solely as an independent contractor, and nothing contained in this Agreement shall be construed to create an agency, partnership or joint venture between them or their successors in interest. **Exhibit J at p. 12**. | | |
| **13.** Royal St. Kitts also entered into an Amended and Restated Management Agreement with an indirect subsidiary of MII, Marriott St. Kitts Management Company, Inc., which was organized under the laws of the Federation of St. Christopher and Nevis. **Exhibit K**. | Disputed in part. The Amended and Restated Management Agreement – which is the only support cited by MII for paragraph 13 – does not indicate that Marriott St. Kitts Management Company, Inc. is an 'indirect subsidiary of MII' or otherwise state what the relationship is between these two "Marriott" entities, but does provide that "'Marriott Companies' shall mean Manager [Marriott St. Kitts Management Company, Inc.], Marriott [MII], and any Affiliates of Manager or Marriott [MII]" . | See **Exhibit K**, p. 11, §1.01. |
| **14.** In 2008 Marriott St. Kitts Management Company, Inc. changed its name to Luxury Hotels International Management St. Kitts Limited ("Luxury Hotels"). **Exhibit L**. | Disputed in part. Exhibit L is a one-page document, a copy of the "Certificate of Incorporation" for "Marriott St. Kitts Management Company, Inc." There is no reference to any name change. | See **Exhibit L**. |
| **15.** Luxury Hotels is not a direct subsidiary of MII. **Exhibit H**, Sonia Cunliffe dep. P. 76:21-25. | Disputed in part. No business formation documents are cited in support of this "fact", rather only the testimony of Sonia Cunliffe is cited. Ms. Cunliffe did not testify that Luxury Hotels is not a direct subsidiary of MII. Rather, Ms. Cunliffe's actual testimony was as follows:<br>Q    You said that the management company was a subsidiary of Marriott. Do you know if it's a direct subsidiary?<br>A    I don't believe it's a direct subsidiary. | **Exhibit H**, Cunliffe dep. p. 76:21-25. |
| **16.** Under the terms of the Management Agreement, Royal St. Kitts appointed Luxury Hotels to manage the hotel operations. **Exhibit K** p. 17 Section 2.01. | Disputed in part. Under the terms of the Management Agreement cited by Defendant MII, Royal St. Kitts appointed Marriott St. Kitts Management Company, Inc. The terms | **Exhibit K**, p. 17, §2.01. |

4

| MARRIOTT'S STATEMENT | BROWN'S RESPONSE | SUPPORT FOR RESPONSE |
|---|---|---|
| | include that Marriott St. Kitts Management Company, Inc. was to "arrange for the provision of routine corporate and regional services ... for the benefit of the Hotel and the other hotels in the Marriott Chain, which services include: (i) executive supervision and support from Marriott international [MII] headquarters ... ; (ii) general expertise and general technical and operational assistance in areas such as ... quality assurance, insurance, life safety ..." Additional terms are addressed further below. | |
| 17. The Management Agreement specified that Royal St. Kitts would take actions necessary to enable the resort to comply with System Standards including operations, physical and technology:<br>2.04 Marriott Chain Standards<br>Owner acknowledges that the Hotel's compliance with System Standards is critical to the success of the Hotel and the Marriott Chain. Owner shall take such actions as are necessary to enable the Hotel to comply with such System Standards (including any quality assurance program that may apply to the Hotel).<br>**Exhibit K** p. 22 section 2.04 and p. 14 "System Standards" definition. | <u>Disputed in part</u>. The quoted portion of the Management Agreement is accurate. The paraphrased first sentence is superfluous and, to the extent it conflicts with the quoted section below it, is an inaccurate description of what the Management Agreement specified. | See **Exhibit K**, p. 22 §2.04. |
| 18. The Hotel employed approximately 500 to 550 employees on the Royal St. Kitts payroll. **Exhibit H**, Sonia Cunliffe dep. p. 61:4-11 and **Exhibit K** p.8 "Hotel Employees" definition and p. 51 Section 10.01. | <u>Disputed in part</u>. Discussed below. | See **Exhibit K**, **Exhibit H** |
| 19. MII did not manage the day-to-day operations of the hotel. **Exhibit H**, Sonia Cunliffe dep. p. 77:4-6. | <u>Disputed in part</u>. Discussed below. | See **Exhibit K**, **Exhibit H** |
| 20. No MII employees worked at the hotel. **Exhibit H**, Sonia Cunliffe dep. p. 61:10-15 and p. 77:7-9. | <u>Disputed in part</u>. It is correct that Ms. Cunliffe testified that no MII employees were employed to work and receive payment on a regular full- or | **Exhibit H**, Sonia Cunliffe dep. p. 61:2-18. |

5

| MARRIOTT'S STATEMENT | BROWN'S RESPONSE | SUPPORT FOR RESPONSE |
|---|---|---|
| | part-time basis to perform work at the hotel. However, she testified that "Marriott or a subsidiary of Marriott", such as MII, employees did do work for the Hotel for which they were "paid on an as needed basis." The details of Marriott's involvement of the hiring and controlling of employees is discussed more fully below. | |
| **21.** Luxury Hotels did not employ any MII employees. **Exhibit H**, Sonia Cunliffe dep. p. 77:7-9. | Disputed in part. Discussed below. | See **Exhibit K**. |
| **22.** Royal St. Kitts, the hotel owner, paid Luxury Hotels for its services. **Exhibit H**, Sonia Cunliffe dep. p. 77:10-11. | Not disputed. | |
| **23.** The plaintiff was a guest at the St. Kitts Marriott Resort in July 2013. **Exhibit A** Complaint ¶3 | Disputed in part. Plaintiff does not dispute that she was a guest at the St. Kitts Marriott Resort in July 2013. To the extent that MII cites Exhibit A, Complaint ¶3, Plaintiff corrects that she alleges, in ¶14 not ¶3, that "on or about the 18th day of July, 2013 …, plaintiff was lawfully upon said 'premises' and 'hotel room'." | See **Exhibit A**, Complaint ¶14 |
| **24.** The plaintiff testified that a month earlier she had been invited by her friend to attend a family reunion in St. Kitts. **Exhibit M**, Brown dep. p. 16:18-17::4 and 18:19-21. | Not disputed. | |
| **25.** The plaintiff's daughter-in-law worked as an event planner for a company through which she had a Friends and Family discount at Marriott properties. **Exhibit M**, Brown dep. p. 18:22-19:18. | Not disputed. | |
| **26.** The plaintiff's daughter-in-law told her [the plaintiff] there was a "Marriott in St. Kitts." **Exhibit M**, Brown dep. p. 21:22-23. | Disputed in part. The testimony cited by MII does provide that Plaintiff's daughter-in-law "told me that there was a Marriott in St. Kitts and I Googled to see what the Marriott in St. Kitts was like." However, Plaintiff earlier testified, more fully, that, she made the travel plans together with her daughter-in-law. While planning the | **Exhibit M**, Brown dep. pp. 18:22-19:9, 21:22-23. |

6

| MARRIOTT'S STATEMENT | BROWN'S RESPONSE | SUPPORT FOR RESPONSE |
|---|---|---|
| | trip together with her daughter-in-law, her daughter-in-law, "looked on the computer [to] see what the Marriott resorts were and [her daughter-in-law] said there is a nice Marriott in St. Kitts and we saw it on the internet and she said – where she works she gets friends and family benefits, and I was on her family benefits." | |
| **27.** The plaintiff testified that she "Googled Marriott St. Kitts." **Exhibit M**, Brown dep. p. 20:19-21. | Not disputed. | |
| **28.** When shown the website printout from *http://www.marriott.com* attached as **Exhibit A** to her [plaintiff's] Second Amended Complaint at her deposition, the plaintiff could not remember if that was the website she viewed:<br>(At this point in time, six-page printout of website was marked as Defendant's Exhibit A, for identification, as of this date)<br>Q  Do you see what I put in front of you marked as Defendant's Exhibit A?<br>A  Yes<br>*  *  *<br>Q  You've had a chance to look at it?<br>A  Yes.<br>Q  The printout that's there, is that one of the websites you looked at in order to determine where you were going to stay in St. Kitts?<br>A  I don't remember. I just Googled Marriott St. Kitts. She told me that there was a Marriott in St. Kitts and I Googled to see what the Marriott in St. Kitts was like.<br>Q  You don't remember the exact website that you looked at?<br>A  I just Googled it Marriott St. Kitts.<br>Q  So what is shown in Defendant's Exhibit A, you don't have a specific recollection as to those items?<br>A  No.<br>**Exhibit M**, Brown dep. p. 21:1-22:7 | Disputed in part. The quoted section of testimony is accurate. However, Plaintiff testified that she was not sure if the printed-out pages were exactly the same as the internet site (likely multiple pages/links) she viewed, online, not on sheets of paper. Plaintiff did not claim that the internet pages she viewed differed in content or use of the Marriott name and appearance. More specifically, Plaintiff testified as follows:<br>Q  Did you look at other hotels?<br>A  We looked at other hotels in the area.<br>Q  Which ones?<br>A  I didn't. We Googled the hotels in the area and we saw the Marriott. There were other – there was no other Marriott or Hilton in St. Kitts, only Marriott.<br>Q  Did she have also friends and family benefits for Hiltons as well?<br>A  No.<br>Q  Just Marriotts?<br>A  Marriott.<br>Q  So you were looking to stay somewhere where you can use friends and family?<br>A  Not only, I was looking also for a quality hotel.<br>Q  Do you remember what other hotels you looked at or she looked at? | *See* **Exhibit M**, Brown dep. pp. 19:19-22:7; **Exhibit N**. |

7

| MARRIOTT'S STATEMENT | BROWN'S RESPONSE | SUPPORT FOR RESPONSE |
|---|---|---|
| and **Exhibit N**. | A   I can't remember, but I know she said there was a nice Marriott. She showed me the picture. I went on the website and I saw it, it was a beautiful place, and when you're going to the island you want to say at some place safe.<br>Q   When you looked at the hotel that you stayed at, what website did you look at?<br>A   I just Googled the St. Kitts Marriott.<br>* * *<br>Q   The printout that's there, is that one of the websites you looked at … ?<br>A   I don't remember. I just Googled Marriott St. Kitts. She told me that there was a Marriott in St. Kitts and I Googled to see what the Marriott in St. Kitts was like.<br>* * *<br>Q   So what is shown in Defendant's Exhibit A, you don't have a specific recollection as to those items?<br>A   No. | |
| **29.** The plaintiff could not recall if she saw the name Marriott International, Inc. on any website and denied any knowledge of the corporation. **Exhibit M**, Brown dep. p. 23:6-25. | Disputed in part. Plaintiff was asked "When looking through the website, did you notice the name Marriott International, Inc.?," to which she responded "If it was there. All I remember I wanted the Marriott. I'm not saying – maybe it wasn't there, but I see 'Marriott.'" She further testified that she was looking for the Marriott name, specifically, for the Marriott in St. Kitts. | **Exhibit M**, Brown dep. p. 23:6-25. |
| **30.** The plaintiff's daughter-in-law booked the room for plaintiff to utilize the Friends and Family discount. **Exhibit M**, Brown dep. p. 24:11-15. | Disputed in part. Plaintiff testified that her daughter-in-law booked the room so that she could get the friends and family rate and that her daughter-in-law gave her a paper to give to the hotel with her name. | **Exhibit M**, Brown dep. p. 24:11-22. |
| **31.** The plaintiff was not present when her daughter-in-law booked the room. **Exhibit M**, Brown dep. p. 25:5-7. | Not disputed. | |

8

| MARRIOTT'S STATEMENT | BROWN'S RESPONSE | SUPPORT FOR RESPONSE |
|---|---|---|
| **32.** The plaintiff's daughter-in-law gave her a Room Rate Discount Authorization Form to utilize the Friends and Family rate at the resort. **Exhibit M**, Brown dep. p. 24:20-25:4. | <u>Disputed in part</u>. On the pages cited by MII, Plaintiff did not use the terms "Room Rate Discount Authorization Form" or "utilize the Friends and Family rate." Rather, Plaintiff testified that her daughter-in-law booked the room and then "g[a]ve me a paper to give to the hotel with my name and I had to show ID." She further testified: "she gave me the requisition paper to show them at the front desk who I am." | **Exhibit M**, Brown dep. pp. 24:20-25:4 |
| **33.** The Marriott Room Rate Discount Authorization Form includes the following language in part: According to Company policy, presentation of this Authorization Form entitles the below-named individual to receive the ... Friends and Family Rate on a space available basis **at participating Marriott International operated and franchised lodging or Marriott Vacations Worldwide Corporation properties globally.** **Exhibit O.** | <u>Disputed in part</u>. The Marriott Room Rate Discount Authorization Form annexed to MII's Motion as Exhibit O does include the language indicated by MII. However, to be clear, the Form annexed as Exhibit O is a blank form that does not contain Plaintiff's name or information and was not identified by Plaintiff or shown to her at her deposition. | *See* **Exhibit M**, Brown dep.; **Exhibit O**. |
| **34.** The plaintiff alleges that she fell in her room on water that leaked from an air conditioner vent in the ceiling on July 18, 2013. **Exhibit A** complaint ¶12. | <u>Disputed in part</u>. Plaintiff alleges, in ¶16 not ¶12, that "plaintiff was caused to slip and fall as a result of water dripping down from the air conditioner and air conditioner vent in the ceiling" on the said date of July 18, 2013. | *See* **Exhibit A**, Complaint ¶16, ¶14. |
| **35.** The folio (resort receipt) identifies the property as "St. Kitts Resort & The Royal Beach Casino" and includes the Marriott trademark at the top of the page and a business address at the bottom that identifies the hotel owner, "Royal St. Kitts Beach Resort Limited," along with its taxpayer ID number. No such information is provided for MII, nor does the folio include any reference to MII. **Exhibit P.** | <u>Disputed</u>. The folio includes the Marriott name and trademark which, respectfully, is a 'reference to MII.' | *See* **Exhibit P.** |
| **36.** The incident report does not include any reference to MII, referring only to St. Kitts Marriott Resort at the top of the one page document. **Exhibit Q.** | <u>Disputed</u>. The incident report specifically includes the name "Marriott International" which, respectfully, is a 'reference to MII | *See* **Exhibit Q.** |

| MARRIOTT'S STATEMENT | BROWN'S RESPONSE | SUPPORT FOR RESPONSE |
|---|---|---|
| | [Marriott International Inc.].' | |
| **37.** The St. Kitts Resort & the Royal Beach Casino brochure includes the Marriott trademark but identifies the resort by name. It does not contain any reference to MII. **Exhibit R**. | <u>Disputed</u>. Exhibit R is not a marked document and was not identified by Plaintiff at her deposition. In addition, Exhibit R, the "St. Kitts Resort & the Royal Beach Casino" brochure, includes the Marriott trademark and identifies the resort with "Marriott" included in name. In fact, on almost every page the brochure refers to the establishment with the Marriott name included: "St. Kitts Resort & the Royal Beach Casino Marriott"; "St. Kitts Marriott Resort and Royal Beach Casino warmly welcomes you"; "Spa…at the St. Kitts Marriott Resort"; "Our Caribbean hideaway boasts a friendly and knowledge-able staff here at the St. Kitts Marriott Resort … who are ready to assist with your every need"; "Welcome & Enjoy Your Stay! St. Kitts Marriott Resort"; "St. Kitts Marriott"; "Weekly Events at the St. Kitts Marriott Resort"; "The St. Kitts Marriott Resort features a variety of restaurants to fit your expectations"; "Marriott Resort St Kitts The Royal Beach Casino"; "www.stkittsmarriott.com"; "Marriott Resort St Kitts The Royal Beach Casino"; "Marriot's St. Kitts Beach Club"; "To connect while in the room select **Marriott Guest Wi-Fi**"; "To connect while in the public area select **Marriott Lobby Wi-Fi**"; "We welcome all Marriott Rewards members". These, respectfully, are 'references to MII.' | *See* **Exhibit R**. |

## ADDITIONAL FACTS IN SUPPORT OF BROWN'S OPPOSITION

| BROWN'S STATEMENT | SUPPORT FOR STATEMENT |
|---|---|
| **38.** According to Defendant MII's representative, Sonia Cunliffe, the subject Marriott St. Kitts was part of "an international system of Marriott chain hotels providing a distinctive and high quality | *See* **Exhibit H**, Cunliffe dep. pp. 45-46. |

| BROWN'S STATEMENT | SUPPORT FOR STATEMENT |
|---|---|
| hotel facilities and related services." | |
| **39.** Defendant MII is the 'parent company that is at the top of the Marriott corporate structure.' The term 'Marriott' generally refers to MII. | **Exhibit H**, p. 11:6-8; *see generally* **Exhibit H**, Cunliffe dep.; **Exhibit K**. |
| **40.** Marriott Worldwide Corporation is a subsidiary of MII that is "part of the license and royalty agreement." | *See* **Exhibit H**, Cunliffe dep. p. 13:18-23. |
| **41.** Ms. Cunliffe testified that Marriott, which she uses interchangeably with MII, itself only actually owns a small percentage of 'Marriott' hotels around the world – the remainder are governed by licensing and management agreements with MII and its subsidiary companies. But Ms. Cunliffe admitted that a customer such as Plaintiff Brown would not know whether a given 'Marriott' hotel was owned by Marriott versus licensed/managed by Marriott (let alone owned, licensed or managed by Marriott Worldwide Corporation versus MII (Marriott International, Inc.)). To the consumer, they all look exactly the same; they are simply 'Marriotts'. | *See* **Exhibit H**, Cunliffe dep. pp. 14-15. |
| **42.** Ms. Cunliffe testified that Marriott (MII) "license[s] its name so … a customer will know that it's a Marriott Hotel. It's the systems that they buy into for the use of the Marriott name. That's associated with a certain standard," which she considers a high standard. And 'if a customer were to book any of Marriott licensed hotels, the customer 'can rely that the hotel will be up to a certain standard, to whatever level of Marriott [that it is designated]." | **Exhibit H**, Cunliffe dep. p. 17:1-24. |
| **43.** When staying at a hotel bearing the Marriott name, Marriott, that is MII, expects (*i.e.* knows that its conduct in licensing the name will cause) customers to rely on "getting a specific standard. … [being] greeted when they check in… certain size room… beds … [of] a certain standard." | *See* **Exhibit H**, Cunliffe dep. p. 18:4-8. |
| **44.** The actual goal of the licensing agreement between MII (and/or one of its Marriott affiliates) and hotel owners is to 'attract customers' due to 'Marriott's reputation, reliability, reputation for safety particularly abroad, cleanliness, amenities, service. | *See* **Exhibit H**, Cunliffe dep. pp. 18-19. |
| **45.** Ms. Cunliffe testified that MII/Marriott (through its conduct in licensing its name, plus having its subsidiary manage the hotel to ensure | **Exhibit H**, Cunliffe dep. pp. 19-20. |

11

| BROWN'S STATEMENT | SUPPORT FOR STATEMENT |
|---|---|
| it is run consistent with the Marriott name would expect that) a person staying at the subject Marriott St. Kitts would expect to receive the MII/Marriott standard of service. Ms. Cunliffe admitted that, "Marriott expects that a customer staying at the Marriott St. Kitts can rely on receiving the Marriott standard". | |
| 46. Ms. Cunliffe specifically admitted that a customer "wouldn't know" that 'a license hotel', such as the subject Marriott St. Kitts, was 'not owned by Marriott' (MII). | **Exhibit H**, Cunliffe dep. p. 20:7-9. |
| 47. Ms. Cunliffe testified that 'Marriott' appeared in the name of the subject hotel, which she referred to as "*the* Marriot St. Kitts Resort" (emphasis added). The Marriott name and logo appeared on signage in and around the hotel. 'Marriott' also appeared on the stationary in the rooms, discount forms, invoices and receipts. | *See* **Exhibit H**, Cunliffe dep. pp. 20-22. |
| 48. The subject Marriott St. Kitts hotel could only be booked through Marriott (that is MII)'s reservations system. | *See* **Exhibit H**, Cunliffe dep. pp. 22-23. |
| 49. Marriott (MII) loyalty rewards program points could be acquired and redeemed at the subject Marriott St. Kitts hotel. Marriott (MII) gift cards could also be used there. | *See* **Exhibit H**, Cunliffe dep. pp. 23-24. |
| 50. Importantly, the subject Marriott St. Kitts was not formed with some one-time, arms-length Marriott licensing deal. Rather, MII formed a subsidiary—'Marriott St. Kitts Management Company—to be the "exclusive manager to supervise, direct and control the *management and operation* of the [subject Marriott St. Kitts]." | *See* **Exhibit H**, Cunliffe dep. pp. 18:2-20:4, 56:3-57:5, 59-60 (emphasis added); *see also* p.65:4-8. |
| 51. And the MII subsidiary management company, 'Marriott St. Kitts Management Company' (later known as 'Luxury Hotel International') *was actively "managing the [subject] hotel"* at the time of the accident. | *See* **Exhibit H**, Cunliffe dep. p. 28:8-19 (emphasis added); *see also* pp. 57-58. |
| 52. Under the management agreement, "Marriott" was defined to mean "Marriott International, Inc. [MII]" and the term 'Marriott' appeared repeatedly throughout the agreement. | *See* **Exhibit K**, Management Agreement p. 10, §1.01. |
| 53. Under the management agreement, the MII subsidiary management company, 'Marriott St. Kitts Management Company' agreed to "arrange for the provision of … executive supervision and support from Marriott [MII] … [including in] quality assurance …" | *See* **Exhibit K**, Management Agreement p. 17, §2.01(B). |

| BROWN'S STATEMENT | SUPPORT FOR STATEMENT |
|---|---|
| **54.** Under the management agreement, the MII subsidiary management company, 'Marriott St. Kitts Management Company' agreed to "Employ, train, supervise ... all personnel as may be reasonably required to provide proper operation, supervision and management of the Hotel ..." | *See* **Exhibit K**, Management Agreement p. 17, §2.02(B)(i). |
| **55.** Under the management agreement, the MII subsidiary management company, 'Marriott St. Kitts Management Company' agreed to "enter into ... contracts ... necessary or desirable in the ordinary course of business in operating the Hotel, including ... contracts for ... electricity, ... other utility ... *air conditioning maintenance* ... and other services ..." | *See* **Exhibit K**, Management Agreement p. 19, §2.02(B)(v). |
| **56.** The MII subsidiary management company, 'Marriott St. Kitts Management Company' had duties to "Perform .. maintenance and repairs"; and, *inter alia*, to "*make* or cause to be made such routine *repairs, routine maintenance*, and minor alterations ... as it deems necessary to maintain the Hotel in good repair and condition". | **Exhibit K**, Management Agreement p. 20, §2.02(B)(xi); p. 37, §6.01 (emphasis added). |
| **57.** The MII subsidiary management company, 'Marriott St. Kitts Management Company' (later known as 'Luxury Hotel International') was "authorized to take appropriate remedial action ... without receiving Owner's prior consent ... if there is an emergency threatening the Hotel, its guests ....; or ... if the continuation of the given condition would subject Manager and/or Owner to civil ... liability, and if Owner has ... failed to remedy the situation". | **Exhibit K**, Management Agreement p. 40, §6.03(C). |
| **58.** The subject hotel owner and the MII subsidiary management company, 'Marriott St. Kitts Management Company' were obligated to have "meetings periodically ... [where MII subsidiary management company would be] represented by the General Manager and such other members of the executive committee at the Hotel ... to exchange information and opinions on all aspects of management of the Hotel". | **Exhibit K**, Management Agreement p. 45, §7.06. |
| **59.** The management agreement provided that the subject hotel "shall be named and identified as the St. Kitts Marriott Resort and otherwise in accordance with MWC[Marriott, MII]'s customary policy and protocols for identifying Marriott Chain Hotels ... the Hotel shall be | **Exhibit K**, Management Agreement p. 45, §8.01. |

| BROWN'S STATEMENT | SUPPORT FOR STATEMENT |
|---|---|
| known as a 'Marriott Hotel' or shall be called 'Marriott'. This provision further included that the 'Marriott' Trademarks being licensed to the Hotel and addressed in the management agreement were not only the property of MWC, but also, "Marriott [MII]". | |
| 60. Under the management agreement, the MII subsidiary management company, 'Marriott St. Kitts Management Company' agreed to "procure and maintain ... property insurance ... [and] Commercial general liability insurance". | **Exhibit K**, Management Agreement pp. 47-48, §9.01(A), §9.02(A)(i). |
| 61. The management agreement provided that "All ...communications ... permitted ... shall be in writing and delivered to ... <u>To Manager</u>: *Marriott St. Kitts Management Company, Inc. c/o Marriott International, Inc. [MII]* 10400 Fernwood Road ... <u>With a copy to Marriott [MII]</u>: Marriott International, Inc. [MII] 10400 Fernwood Road ..." | **Exhibit K**, Management Agreement pp. 62-63, §15.09 (emphasis added). |
| 62. While Defendant MII's contends that it did not directly 'employ' any employees at the subject Marriott St. Kitts hotel, Marriott (MII) trained the Marriott St. Kitts hotel employees. | *See* **Exhibit H**, Cunliffe dep. pp. 56-57; *see also* **Exhibit I**; **Exhibit J**; **Exhibit K**, Management Agreement. |
| 63. Moreover, under the management agreement, the MII subsidiary management company, 'Marriott St. Kitts Management Company' agreed that "key Hotel Employees ... may be employees of Manager or any of its Affiliates"; that it had "*absolute discretion to hire, terminate, promote, supervise, direct and train all Hotel Employees* ... and generally to establish and maintain all employment policies and practices, including the assignment from time to time of Hotel Employees to work at other hotels within a 'cluster' of hotels ..."; it was "permitted to provide complimentary accommodations and amenities to its and its Affiliates' employees and representatives"; that "Anticipated gratuitous and discounted accommodations and amenities ... shall be provided consistent with Marriott Chain procedures and policies". | **Exhibit K**, Management Agreement p. 51, §10.01(A) (emphasis added), §10.01(B), §10.01(E). |
| 64. In addition, MII considers its 'employees' to be not only direct employees of MII, but also employees of other 'Marriott' entities as well as employees of outside hotel-owner entities of hotels that have licensed the 'Marriott' name. For | *See* **Exhibit H**, Cunliffe dep. p. 8:15-24. |

| BROWN'S STATEMENT | SUPPORT FOR STATEMENT |
|---|---|
| example, Ms. Cunliffe testified that her employment with MII, with other Marriott entities and with other owner-entities that are not Marriott entities but 'only' licensees using the Marriott name are all considered to be 'Marriott' (MII) employment. ("**Q:** …19 years … of service with Marriott. What do you mean by that? **A:** The length of service is – you go from different ownership groups. So owners own the property, I was the director of finance of the properly with a different ownership group. But the length of service with Marriott continues when you go from property to property and even when you go abroad and work for Marriott International."). | |
| 65. Marriott (MII) also considers employees of licensees to be Marriott (MII) employees, in that the Marriott (MII) employee discount can be used by 'employees' of hotels that are not owned by Marriott/MII but are, rather, licensees. | *See* **Exhibit H**, Cunliffe dep. pp. 32-33. |
| 66. Employees of the subject St. Kitts Marriott, including the managers, used Marriott (MII) email addresses (@marriotthotels.com) at the time of the accident. | *See* **Exhibit H**, Cunliffe dep. p. 36:8-17. |
| 67. The Marriott (MII) website lists all of 'its' hotels, and nowhere distinguishes those it technically owns from those which it does not. Further, the Marriott (MII) website uses the possessive pronoun to identify the subject Marriott St. Kitts as "*Our* St. Kitts Hotel" – conveying the clear appearance of ownership and control. Ms. Cunliffe made clear during her deposition that Marriott (MII) insists on licensee hotels, such as the Marriott St. Kitts, adhering to certain quality standards or else the hotel will be taken out of the Marriott system. | *See* **Exhibit R**; **Exhibit H**, Cunliffe dep. pp. 30-32. |
| 68. Defendant MII/Marriott itself directly contracted to, *inter alia,* train the hotel employees and that "the extent of Hotel Employee participation in … Training Programs are substantially the same as substantially all other Marriott Chain hotels in the Hotel Region". | **Exhibit J**, p. 5 ¶2.02(A)(3). |
| 69. Defendant MII/Marriott itself directly contracted to, *inter alia,* make the "Property Management System" available to the hotel and required the hotel to use the MII/Marriott "Property Management System, provided that | **Exhibit J**, p. 6 ¶2.04(B)(1). |

15

| BROWN'S STATEMENT | SUPPORT FOR STATEMENT |
|---|---|
| substantially all other Marriott Chain hotels … use [it]". | |
| **70.** Plaintiff Brown elected to stay at the subject St. Kitts Marriott Hotel/Resort because of her history staying at various Marriotts and her comfort in the quality of Marriott hotels, including with respect to safety and cleanliness. As indicated above, Defendant MII inaccurately summarizes Ms. Brown's deposition testimony about why she chose to stay at the St. Kitts Marriott, as being related only to a 'friends and family discount'. In fact, Ms. Brown gave the following deposition testimony about why she chose the subject hotel: she visited the hotel's website and "when you're going to the islands you want to stay at some place safe… All I remember I wanted the Marriott… I just looked at a nice Marriott hotel". | *See* **Exhibit M**, Brown dep. pp. 18:22-22:7. |
| **71.** Plaintiff Brown additionally, specifically testified that she chose to stay at the specific hotel for the Marriott reputation for safe, nice quality accommodations and services, as follows:<br>Q   And why did you choose this hotel?<br>A    I stay in the Marriott hotels all the time. I really like the service. And because, as I said, going to the islands I want to stay in a reputable hotel. | *See* **Exhibit M**, Brown dep. p. 22:18-22. |
| **72.** Plaintiff Brown testified as to the inattentiveness and carelessness of the hotel's staff in responding to a recurring leak from a ceiling air conditioning unit, which Ms. Brown complained of prior to her accident, and which ultimately caused Ms. Brown to slip, fall and suffer severe cervical spine injuries. | *See* **Exhibit M**, Brown dep. |

Dated:  January 11, 2019

Respectfully submitted,

BLOCK O'TOOLE &MURPHY, LLP
Attorneys for Veronica Brown

By: _____
David L. Scher
One Penn Plaza, Suite 5315
New York, NY 10119
(212) 736-5300
dscher@blockotoole.com