Exhibit "1"

```
                                                                    1

                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

 - - - - - - - - - - - - - X

 VERONICA BROWN,             :
                                       14-CV-5960(NG)
         Plaintiff,          :

            -against-        :         United States Courthouse
                                       Brooklyn, New York
 ST. KITTS MARRIOTT RESORT
 and ROYAL BEACH CASINO,     :
                                       November 8, 2018
         Defendant.          :         10:00 o'clock a.m.

 - - - - - - - - - - - - - X

            TRANSCRIPT OF PRE-MOTION CONFERENCE
            BEFORE THE HONORABLE NINA GERSHON
                UNITED STATES DISTRICT JUDGE.

 APPEARANCES:

 For the Plaintiff:          BLOCK O'TOOLE & MURPHY, LLP
                             One Penn Plaza, Suite 5315
                             New York, NY 10119

                             BY: DAVID L. SCHER, ESQ.
                                 STEPHEN JOSEPH DONAHUE, ESQ.


 For Defendant Marriott:     WADE CLARK MULCAHY
                             180 Maiden Lane, Suite 901
                             New York, NY 10036

                             BY: PAUL W. VITALE, ESQ.


 Court Reporter:             Charleane M. Heading
                             225 Cadman Plaza East
                             Brooklyn, New York
                             (718) 613-2643

 Proceedings recorded by mechanical stenography, transcript
 produced by computer-aided transcription.
```

             CMH      OCR      RMR      CRR      FCRR

2

1         THE CLERK:  Civil cause for a pre-motion conference.
2    Brown versus Marriott International.  Docket number
3    14-CV-5960.
4         May I have the appearance for the plaintiff, please.
5         MR. SCHER:  Good morning, Your Honor.  David Scher
6    of Block O'Toole & Murphy on behalf of plaintiff.
7         MR. DONAHUE:  Joseph Donahue, Block O'Toole &
8    Murphy, on behalf of the plaintiff.  Good morning, Your Honor.
9         THE CLERK:  For the defendant?
10        MR. VITALE:  Paul Vitale from Wade Clark Mulcahy on
11   behalf of the defendant Marriott International, Inc.  Good
12   morning, Your Honor.
13        THE CLERK:  Thank you.  Please be seated and just
14   pull the microphone closer.
15        THE COURT:  Good morning, Counsel.
16        So as I understand it, you have completed all your
17   discovery, correct?
18        MR. SCHER:  That is correct.
19        MR. VITALE:  Yes, Your Honor.
20        THE COURT:  Yes.  And the only issue is the proposed
21   motion to dismiss solely related to the role of Marriott
22   International, is that correct?
23        MR. VITALE:  Correct.
24        THE COURT:  Okay.  And are there factual disputes
25   regarding liability, damages, et cetera?

CMH        OCR        RMR        CRR        FCRR

3

1    MR. VITALE:  Well, the main crux of our motion is
2  going to be the plaintiffs putting on the apparent agent,
3  saying MII is apparent agent and that's what we're seeking to
4  attack on two fronts, Your Honor, which is, one, that the
5  plaintiff herself did not make sufficient evidentiary, there's
6  no sufficient evidentiary fact to show apparent agency and
7  that Marriott International, Inc., in itself, is not an agent,
8  you know, did not cloak the hotel in St. Kitts with apparent
9  agency.
10    THE COURT:  I understand that.
11    MR. VITALE:  Yes.
12    THE COURT:  My question was are there any factual
13  disputes regarding liability and damages or shall I assume
14  from your motion that you agree that there are factual issues
15  regarding liability and damages?
16    MR. VITALE:  There's a little bit of issue with
17  liability, Your Honor, and damages, I don't think, I don't
18  think we're going to make any motion or have anything with
19  regard to damages in our motion.
20    THE COURT:  Okay.  What is your issue regarding
21  liability?
22    MR. VITALE:  It would just be lack of notice but I
23  think the crux of our motion will be on the apparent agency.
24    THE COURT:  The only thing you're proposing to move
25  on is --

```
                                                                    4

 1              MR. VITALE:  The apparent agency.
 2              THE COURT:  The apparent agency.  Okay.
 3              So, just to begin, I will tell you where I am at
 4   based upon my review of your materials.
 5              I do not see any way that the defendant could be
 6   successful on this motion so my own inclination would be that
 7   we give you a date for a pretrial order and we fix a date for
 8   a trial.  If you insist you want to make a motion, obviously,
 9   I cannot stop you from making the motion, but I thought I
10   should let you know that I do not think it has much chance of
11   success.
12              So with that being said, let me know what you think.
13              MR. VITALE:  I still think we're going to be making
14   the motion.  I appreciate Your Honor's candor and thank you
15   very much but for my client, we are going to have to make that
16   motion.
17              THE COURT:  We are going to have to make that
18   motion?
19              MR. VITALE:  I will have to discuss it with my
20   client but at least at this time, Your Honor, I would like the
21   opportunity to still submit papers to the Court.
22              THE COURT:  All right.  Mr. Scher or Mr. Donahue?
23              MR. SCHER:  Well, obviously, we tend to agree with
24   Your Honor.  There's a Southern District case --
25              THE COURT:  You can sit down.


                    CMH     OCR     RMR     CRR     FCRR
```

```
 1             MR. SCHER:  Thank you.
 2             There's a Southern District decision on point
 3   involving the exact same defendant with a precisely identical
 4   agreement with a different hotel.  It just happened to be in
 5   the Bahamas as opposed to St. Kitts.  So I think our position
 6   has held out.  Obviously, we would be ready to proceed as Your
 7   Honor suggests.  We don't have any affirmative motion that we
 8   plan to make.
 9             THE COURT:  Okay.  What did you think about
10   Judge Posner's decision that they relied on?
11             MR. SCHER:  Judge Posner's decision?
12             THE COURT:  Yes, in the Seventh Circuit.
13             MR. SCHER:  Just give me a moment.
14             (Pause.)
15             MR. SCHER:  Well, at the outset, that decision only
16   considered the law of the State of Illinois and of the
17   Bahamas.  I think, frankly, on that basis alone, it's of
18   little value to this proposed motion.  Apparent authority is
19   different jurisdiction to jurisdiction.
20             THE COURT:  Sure.  And then the other thing that I
21   thought was remarkable was that the judge says, "Almost
22   everyone knows that chain outlets, restaurants, motels, et
23   cetera, et cetera, are very often franchised."
24             I don't know whether that was a fact in dispute in
25   the case but certainly from my experience, I would say the
```

1 opposite. This is the danger of judges drawing an inference
2 from their own experience.
3     Actually, while we are talking about that, you
4 finished your discovery so, therefore, all of you should know
5 exactly what the relationship of Marriott International is to
6 this hotel. The best that I can determine from the letters is
7 that the hotel is actually owned by some corporate entity in
8 St. Kitts, but is the defendant saying that you are a
9 franchisor? Is that what you want? Is that how you want to
10 identify yourself?
11     MR. VITALE: Actually, no, Your Honor. It's not a
12 franchise agreement. It's a license agreement so it's a
13 little bit different from a straight franchise.
14     THE COURT: So you are a licensor of what?
15     MR. VITALE: So, briefly, the ownership of the hotel
16 and property will contact Marriott International and will sign
17 basically three agreements: A management agreement, a license
18 agreement and, since this is St. Kitts, an international
19 services agreement. And --
20     THE COURT: And all those documents are in the
21 discovery?
22     MR. VITALE: Yes, that's been turned over.
23     MR. SCHER: Yes.
24     THE COURT: Okay.
25     MR. VITALE: And the ownership will sign those

7

agreements and they're allowed to put, use the Marriott trademark. So it's not MII, and that is also the difference, it is not MII. It's the Marriott trademark that they can use. They hire their staff, they hire the management company and it's a separate management company in this case, not MII, managing the hotel and property and, yes, you know --

THE COURT: What is the point of the trademark? What does the trademark do, after all? The trademark tells a customer this is a brand you can rely on, this is where this product comes from. That is definitional for trademark.

MR. VITALE: Yes.

THE COURT: So how can you win?

MR. VITALE: Well, again, Your Honor, it's what, it's, it is, A, plaintiff's reliance in showing --

THE COURT: She has evidence that she relied on it. She says, I relied on the Marriott trademark, that's why I went there.

What more do you need to go to the jury on that?

MR. VITALE: I would argue, Your Honor, that the complaint that plaintiff set forth is different than her testimony in her deposition and that there are some issues that there are --

THE COURT: Well, you can present that to the jury. You say she is inconsistent, she did not tell the truth, she made it all up. It is completely reasonable sounding, right,

8

1  what she says?  You will argue this to the jury.  It cannot be
2  as a matter of law that she has not shown a reliance.
3          MR. VITALE:  And, Your Honor, I still believe that
4  the, in citing that Ninth Circuit case along with those other
5  cases, that we can show something, we can show this as a
6  matter of law.
7          THE COURT:  Okay.  All right.  When can you serve
8  the papers?
9          MR. VITALE:  Thirty days, Your Honor.
10         THE COURT:  December 7th.
11         Opposition?
12         MR. SCHER:  May we have 30 days to oppose, please?
13         THE COURT:  Okay.
14         THE CLERK:  That would be January 4th.
15         THE COURT:  January 4th.  Okay.  I think you are
16 doing four weeks, not exactly 30 days.
17         MR. SCHER:  Yes.
18         THE COURT:  And the reply, you need a week?
19         MR. VITALE:  Yes, a week or so, Your Honor, is fine.
20 I know we're coming close to the new year so if counsel needs
21 an extra day or so, but I have a feeling they'll have
22 something at the ready pretty quickly.
23         THE COURT:  I mean, the letters really -- that is
24 why I said do we really want to go through the expense and
25 time and energy of briefing it because it seems to me, I got a

```
                                                                    9
 1    very good picture -- I don't always in pre-motion letters, but
 2    in this case, I got a very good picture, I think, of what is
 3    at issue.
 4              MR. VITALE:  A week is fine.
 5              THE COURT:  January 11th.  I don't think I will need
 6    oral argument.  If I do, I will call you.
 7              MR. VITALE:  Thank you, Your Honor.
 8              THE COURT:  All right.  Thank you.
 9              MR. SCHER:  Thank you, Your Honor.
10              THE COURT:  Is there any possibility of settling
11    this case?  It doesn't look like there are huge damages.  Am I
12    right?
13              MR. VITALE:  We're in discussion, Your Honor.
14              THE COURT:  Okay.  Should I send you to the
15    Magistrate Judge or a mediator or something?
16              MR. SCHER:  We had a settlement conference in the
17    case already with Magistrate Mann who put a specific number on
18    the case.
19              THE COURT:  I see.
20              MR. SCHER:  I don't know if I'm at liberty to say
21    that.
22              THE COURT:  No.  I don't want to know about it.
23              MR. SCHER:  But we went through that process, but
24    our ears are still open and, frankly, we'd like to settle the
25    case.  I think we've been more than reasonable.  Hopefully,
```

```
                                                                 10
 1   we'll continue the discussions but we will try.
 2              MR. VITALE:  Definitely.
 3              THE COURT:  Okay.  So is there anything I can do to
 4   help you with that, that is, by sending you to the Magistrate
 5   Judge or sending you to a mediator?
 6              MR. VITALE:  At this point, Your Honor, I don't
 7   think so but I really appreciate it.  You now, if we need
 8   something, we would definitely reach out to the Court to see
 9   if you can help us.  I don't mean to speak for plaintiffs'
10   counsel, but I feel like I have a little bit.
11              THE COURT:  Okay.  Well, let me know or give me a
12   call.  If you feel you need outside assistance, call Victor
13   and he can either -- well, I am sure you can call Judge Mann
14   directly if you want to speak with her again but if you would
15   like a mediation order, call either her office or call Victor
16   and we can prepare an order for my signature.
17              MR. SCHER:  We'll discuss that.
18              THE COURT:  All right.  Thanks very much.
19              MR. VITALE:  Thanks very much, Your Honor.
20              MR. SCHER:  Thank you.
21              (Matter concluded.)
22
23
24
25
```

            CMH     OCR     RMR     CRR     FCRR
I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.
              /s/ Charleane M. Heading    January 9, 2019