### St. Kitts Marriott Resort
## Voluntary Statement:

With the understanding that I'm not obligated to give a statement and that I might seek legal advice at any time before any statement or declaration is given.

| Full Name: (Please Print Name) | | | | D.O.B (mm/dd/yyyy) |
|---|---|---|---|---|
| Mrs. Mr. Ms. | VERONICA BROWN - MULLARVEY | | | 4/9/56 |

**Address:** 463 EAST 56 ST

**City:** BROOKLYN NY

**Country:** USA

**State/Province:** NY

**ZIP:** 11203   **Email:** Buffie3@verizon N   **Date:** (mm/dd/yyyy) 9/18/13

**Phone Number/s:** 718 629-1213 - 917 584-6432

**Work Address:** (Associate Department:) DOE 5460 Tilden Ave   **Job Title:** Registered Nurse

To the best of your ability, describe the incident. Please include all information.

I got up to walk to the leathroom
I Uelipped and fell in water
near the leathroom door. There
was a leaking air AC
vent in the leathroom

I have reviewed this statement and believe it is true and accurate to the best of my recollection.

**Signature:**

**Associate:**   Guest:   witness:   Other:   Witness: Less Prevention   Judith Gomez Cold Well

Report code: (office use only): 13-0097

If this statement continues please specify the total at the end. Copy 1 of 1

MI - 00085



EXHIBIT 7 5/30/18 86



# St. Kitts Marriott International
## INCIDENT REPORT

| Type of incident | | | Date of Incident | Date of Report | Guest (X) |
|---|---|---|---|---|---|
| Slip and Fall | | | 18/07/2013 | 18/07/2013 | Associate ( ) |
| Exact Location of Incident | | | Time of Incident | Time of Report | Incident Code |
| On Floor Next to restroom sink. | | | 00:15 | 00:20 | 13-0097 |
| Name | | | Address | | |
| Mrs. Veronica Brown-Mulvaney | | | 463 East 56 St, Brooklyn, New York, U.S.A. | | |
| Date of Birth | Sex | Work Telephone | Home Telephone # | E-mail Address | |
| April 9th 1956 | F | 1-718-629-1213 | 1-917-584-9432 | Buffie3@verizon.net | |

**NARRATIVE:** Give details in concise terms: What occurred, where, by whom, to whom, why. Identify all people involved and list all witnesses with Addresses. If theft, state what was taken, value, description and, if possible, how could have happened

On Wednesday 18th July 2013 at about 00:20 hrs, I was informed of a slip and fall in room 455. I left to investigate.

I arrived at room 455 and was met at the door by Ms. Judith Gomez. She allowed me in and introduced Mrs. Victoria Brown-Mulvaney. Ms. Brown-Mulvaney stated, she was making her way to the restroom when she slipped and fell as result of the water that dripped from the AC vent in the ceiling onto the tiled floor. She landed on the outer side of her left leg. There was pain in the covering from her hip down to her leg. She did not see the need for further care but would monitor throughout her stay and inform us if anything developed.

I arrived at the room and met Mrs.-Brown-Mulvaney quietly lying in bed. She declined being taken to the hospital or having an ice pack applied to the area. Specific mention was made as to having the incident reported. When asked about providing a statement she scheduled for a later time. I received her voluntary statement in the Lobby at 07:15 hrs. At that point she stated that her left ankle was swollen as a result. She walked through the Lobby Entrance/Exit unassisted, after handing me her statement.

Tyrone O'Loughlin (EOD) arrived in the room before me. He confirmed that there was water on the floor. This was result of the AC drainage pan having a leak which caused water to drip from the vent in the ceiling on to the floor. The repair process was under way by the Engineering Team.

Please See Accompanying Data

a) Voluntary Statement of Mrs. Brown - Mulvaney
b) Room Folio



MI - 00084

ST. KITTS MARRIOTT RESORT

AMENDED AND RESTATED
LICENSE AND ROYALTY AGREEMENT

between

MARRIOTT WORLDWIDE CORPORATION

and

ROYAL ST. KITTS BEACH RESORT LIMITED


EXHIBIT
Cunliffe
9   5/30/18

# TABLE OF CONTENTS

Page

ARTICLE I ................................................................................................... 2
    1.01    Definitions ................................................................................. 2
    1.02    Interpretation ............................................................................ 3
ARTICLE II .................................................................................................. 3
    2.01    Grant of License ...................................................................... 3
ARTICLE III ................................................................................................. 4
    3.01    Quality Standards .................................................................... 4
ARTICLE IV ................................................................................................ 5
    4.01    Payments ................................................................................. 5
ARTICLE V ................................................................................................. 5
    5.01    Ownership of Marriott Trademarks ........................................ 5
ARTICLE VI ................................................................................................ 7
    6.01    Term ........................................................................................ 7
ARTICLE VII ............................................................................................... 7
    7.01    Events of Default .................................................................... 7
    7.02    Termination ............................................................................. 8
    7.03    Remedies ................................................................................. 9
ARTICLE VIII ............................................................................................. 9
    8.01    Assignment ............................................................................. 9
ARTICLE IX ................................................................................................ 10
    9.01    Right to Make Agreement ....................................................... 10
    9.02    Consents, Approvals, and Agreements; No Warranties .......... 10
    9.03    Relationship ............................................................................ 11
    9.04    Confidentiality ........................................................................ 11
    9.05    Applicable Law ....................................................................... 12
    9.06    Arbitration .............................................................................. 12
    9.07    Notices ................................................................................... 12
    9.08    Currency ................................................................................. 14
    9.09    Waiver .................................................................................... 14
    9.10    Partial Invalidity .................................................................... 14
    9.11    Entire Agreement ................................................................... 15

217071v1 Final

ST. KITTS MARRIOTT RESORT

AMENDED AND RESTATED
LICENSE AND ROYALTY AGREEMENT

This Amended and Restated License and Royalty Agreement is executed to be effective as of the 18 day of May, 2006 ("Effective Date"), between:

Royal St. Kitts Beach Resort Limited ("Owner"), a company organized and existing under the laws of the Federation of St. Christopher & Nevis,

and

Marriott Worldwide Corporation ("MWC"), a corporation organized and existing under the laws of the State of Maryland, United States of America.

R E C I T A L S:

A.      Owner and MWC entered into that certain License and Royalty Agreement dated as of January 30, 2001 and amended as of February 25, 2003 (collectively the "License and Royalty Agreement"). Owner and MWC desire to amend and restate the License and Royalty Agreement to make certain modifications thereto in order to conform to certain amendments being made to the Management Agreement.

B.      MWC and its Affiliates have developed and perfected a system for providing high quality distinctive hotel services, which system includes the right to use the Marriott Trademarks.

C.      MWC desires to grant, and Owner desires to obtain, a nonexclusive and nontransferable license to use the Marriott Trademarks for hotel services in the geographic area on the island of St. Kitts, exclusively in connection with the Hotel under the terms and conditions set forth herein.

D.      Upon such grant, the Hotel, together with other Marriott Chain hotels now or hereinafter operated or licensed by MWC and its Affiliates, will be operated as part of an international system of Marriott Chain hotels providing distinctive and high quality hotel facilities and related services.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

ARTICLE I
DEFINITIONS; INTERPRETATION

1.01 Definitions

The following terms when used in this Agreement have the meanings set forth below:

"Agreement" means this agreement (including the exhibits, schedules and addenda hereto), as amended, restated or supplemented from time to time.

"Effective Date" means the date of this Agreement as set forth in the introductory paragraph of this Agreement.

"Event of Default" has the meaning stated in Section 7.01.

"Initial Term" has the meaning stated in Section 6.01.

"Management Agreement" means the Amended and Restated Management Agreement executed as of the Effective Date by Owner and Manager, as amended, restated or supplemented from time to time.

"Manager" means Marriott St. Kitts Management Company, Inc., its legal successors and permitted assigns.

"Marriott Trademarks" means (i) the name and mark "Marriott"; (ii) the "M" logo, attached hereto as Exhibit A; and (iii) all other trademarks, service marks, trade names, symbols, logos, slogans and designs (including restaurant names, lounge names, or other outlet names) used or registered by MWC or any of its Affiliates; whether registered or unregistered and whether used alone or in connection with any other words, trademarks, service marks, trade names, symbols, logos, slogans, and designs. All right, title, and interest (including copyright and patent rights) to the name "Royal" and any other name developed exclusively by Owner and used in connection with the Hotel, shall at all times be proprietary to Owner and shall in all events be the exclusive property of Owner.

"MWC" has the meaning stated in the introductory paragraph to this Agreement and includes its legal successors and permitted assigns.

"Owner" has the meaning stated in the introductory paragraph to this Agreement and includes its legal successors and permitted assigns.

"Renewal Term" has the meaning stated in Section 6.01.

"Term" means the Initial Term plus all Renewal Terms.

217071v1 Final

2

1.02    Interpretation

A.      Unless otherwise stated, references to the Recitals, Articles, Sections, Exhibits, Schedules and Addenda are to the Recitals, Articles, Sections, Exhibits, Schedules and Addenda of or to this Agreement, and all such Exhibits, Schedules and Addenda are hereby incorporated herein by reference.

B.      Words indicating the singular include the plural and vice versa as the context may require.  Words indicating a gender include every gender as the context may require.

C.      Unless otherwise defined, references to days, months, and years are to calendar days, calendar months, and calendar years, respectively.

D.      The headings to the Articles and Sections are for convenience only and have no legal effect.

E.      The words "include," "included" and "including" shall be terms of enlargement or example and shall not imply any restriction or limitation unless the context clearly requires otherwise.

F.      The word "or" shall not indicate exclusivity and shall be interpreted to mean both "and" and "or" unless the context clearly requires otherwise.

G.      "Dollars," "$," and "U.S.$" mean the lawful currency of the United States of America.

H.      When used with reference to this Agreement, the word "termination" shall mean the expiration of the Term or prior termination of this Agreement, unless the context clearly requires otherwise.

I.      Every word or term in this Agreement which is capitalized for the purpose of indicating a particular meaning and not specifically defined herein has the meaning set forth in the Management Agreement.

ARTICLE II
LICENSE

2.01    Grant of License

A.      MWC hereby grants to Owner a non-exclusive (subject to subsection D below) and non-transferable right and license to use the Marriott Trademarks for hotel services offered only in connection with the Hotel, subject to the terms and conditions of this Agreement and the Management Agreement.  The performance by MWC of its obligations under this Agreement is contingent upon the continued performance by Owner of all of its obligations hereunder.

B.     All use of the Marriott Trademarks by Owner under this Agreement inures to the benefit of MWC and its Affiliates whether or not the Marriott Trademarks are registered and regardless of the source of the Marriott Trademarks.  MWC represents and warrants that as of the Effective Date and all times during the term of this Agreement, the Marriott Trademarks are and shall be registered with respect to hotel services for use in St. Kitts.

C.     Nothing in this Agreement should be construed to grant to Owner any right to use or license others to use the Marriott Trademarks or any names, marks, logos, commercial symbols, or indicia of origin owned by MWC or its Affiliates except as explicitly set forth herein.

D.     Except as set forth in the Management Agreement in Section 15.19, MWC reserves the right to use and grant to others the right to use all or part of the Marriott Trademarks, as may be applicable, in connection with other hotels or other types of goods and services offered by MWC, its Affiliates or others, provided that Owner shall have the exclusive right and license to use the Marriott Trademarks within the geographic area defined in Section 15.19 of the Management Agreement (the "Area"), and provided further that Owner's use shall be limited to the (i) Hotel and (ii)the Term of the Management Agreement.

E.     Nothing contained in this Agreement shall be construed as an assignment or grant to the Owner of any right, title, or interest in or to the Marriott Trademarks, it being understood that all rights relating thereto (except for the license to use the Marriott Trademarks as set forth herein) are reserved by MWC and its Affiliates.

F.     Owner acknowledges that the worldwide goodwill associated with the Marriott Trademarks (including on the island of St. Kitts) is of great value and that the Marriott Trademarks and all rights therein and goodwill pertaining thereto belong exclusively to MWC and its Affiliates.

ARTICLE III
STANDARDS

3.01   Quality Standards

A.     Owner shall strictly comply with all quality standards applicable to the Hotel pursuant to the Management Agreement, including those governing the use of the Marriott Trademarks and the nature and quality of all goods or services advertised or sold under the Marriott Trademarks. The Owner recognizes and agrees that such quality standards are necessary to protect and enhance the value of the Marriott Trademarks and the goodwill associated with the Marriott Trademarks. MWC shall further be entitled to demand the immediate cessation of any use of the Marriott Trademarks that does not comply with the terms and conditions of this Agreement.

B.     Owner shall not use any Marriott Trademarks other than in strict accordance with this Agreement and the Management Agreement.

217071v1 Final

ARTICLE IV
PAYMENTS



ARTICLE V
OWNERSHIP

5.01    Ownership of Marriott Trademarks

A.    Owner acknowledges that MWC and its Affiliates are the sole and exclusive owners of all rights, title and interest of every kind and nature, whether by statute or common law, in law or equity, which exist, attach, inhere, or subsist in the Marriott Trademarks and all goodwill associated with the Marriott Trademarks.  Owner agrees to use the Marriott Trademarks exclusively in connection with the Hotel in St. Kitts under the terms and conditions set forth herein, provided that, subject to MWC's prior written approval (which shall not be unreasonably withheld or delayed and shall be based upon Marriott's judgment that the proposed use of the Marriott Trademarks does not imply management or participation in such non-Hotel components of the resort), Owner may use the Marriott Trademarks as a locational identification in connection with the casino, residential villas, and other non-hotel components of the resort of which the Hotel is a part.  Nothing in this Agreement or in Owner's use of the Marriott Trademarks shall give Owner any ownership right whatsoever in the Marriott Trademarks or in any mark similar to the Marriott Trademarks.

B.    Owner agrees that it will not during the term of this Agreement or thereafter (i) attack the title or any rights of MWC or its Affiliates in and to the Marriott Trademarks, contest the validity of the Marriott Trademarks or take any action that could impair, jeopardize, violate, or infringe the Marriott Trademarks; (ii) claim adversely to MWC, its Affiliates or anyone claiming through MWC any right, title, or interest in and to the Marriott Trademarks; (iii) misuse or harm or bring into dispute the Marriott Trademarks; (iv) register or apply for registration in any country of the world for

217071v1 Final

5

Owner's benefit (directly or indirectly) the Marriott Trademarks or any other mark which is, in MWC's reasonable opinion, the same as or confusingly similar to the Marriott Trademarks.

      C.     Owner further agrees to cooperate fully and in good faith with MWC for the purpose of securing and preserving MWC's and its Affiliates' rights in and to the Marriott Trademarks in St. Kitts and elsewhere and to provide such consents and other assistance as MWC may reasonably request to perfect and protect MWC's and its Affiliates' ownership of the Marriott Trademarks. MWC shall reimburse Owner for any out-of-pocket expenses reasonably incurred in connection with such assistance.

      D.     Except as otherwise expressly provided herein, Owner shall have no right to assign, transfer, sublicense or divide any rights to which it may be entitled under this Agreement.

      E.     If Owner becomes aware of (i) any objection by any Person to use of the Marriott Trademarks in connection with the Hotel, or (ii) any claim that the grant of the license by MWC to Owner under this Agreement or the use of the Marriott Trademarks in relation to the business or operation of the Hotel pursuant to the terms of this Agreement constitutes a breach or infringement of the rights of any Person, then Owner shall promptly notify MWC of such objection or claim. Owner shall not (i) commence any legal action, file any defense, or seek any remedy with respect to any such objection or claim, or (ii) settle or otherwise compromise any such objection or claim without the prior consent of MWC. MWC shall defend and Owner shall cooperate fully with MWC in the disposition of any litigation or other action related to any such objection or claim, and MWC shall reimburse Owner for any out-of-pocket expenses reasonably incurred in connection with such assistance.

      F.     If Owner becomes aware of any use or attempted use by any Person (other than Owner) of the Marriott Trademarks or any variations similar thereto, Owner shall promptly notify MWC of such use or attempted use. In the event MWC becomes involved in any litigation or other action relating to such use or attempted use of the Marriott Trademarks, Owner shall execute any and all documents and do such acts and things as, in the opinion of counsel for MWC, may be necessary or advisable with respect to such litigation or action; provided, however, that MWC or an Affiliate thereof shall not, as a result, name Owner in any civil or criminal litigation or otherwise expose Owner to any civil or criminal liability or sanction. MWC shall reimburse Owner for any out-of-pocket expenses reasonably incurred in connection with such assistance.

      G.     For so long as the Marriott Trademarks are, in fact, being used by the Hotel under the terms of this Agreement, the payments to MWC hereunder will continue without abatement or diminution. The foregoing shall not be affected by any alleged infringement of the Marriott Trademarks by any third party, so long as an MWC breach has not occurred and is continuing with respect to MWC's grant to Owner and preservation of an exclusive license to use the Marriott Trademarks in the Area (subject to any limitations set forth herein).

      H.     If Owner or any Person claiming through Owner uses any of the Marriott Trademarks in violation of any of the terms of this Agreement (either before or after termination), MWC shall be entitled to injunctive relief and to any other right or remedy available at law or in equity.

217071v1 Final

6

I.      All right, title, and interest (including copyright and patent rights) to the name "Royal Beach" and any other name developed exclusively by Owner and used in connection with the Hotel, shall at all times be proprietary to Owner and shall in all events be the exclusive property of Owner, and this Agreement shall not be deemed to convey to MWC or any other Marriott Company any rights in such right, title or interest or any benefits derived from the use thereof by Owner.

ARTICLE VI
TERM

6.01   Term

A.      The initial term ("Initial Term") of this Agreement shall commence with the Effective Date and, unless sooner terminated as herein provided, shall end on December 31, 2022.  MWC thereafter has the option to renew this Agreement on the same terms and conditions for three (3) periods of ten (10) Fiscal Years each (each a "Renewal Term").  MWC shall be deemed to have elected to exercise such option to renew unless it shall give Owner notice that it does not elect to renew at least 11 months prior to the expiration of the Initial Term or the then-current Renewal Term.

B.      Notwithstanding the provisions stated in Section 6.01 A, this Agreement is coterminous with the Management Agreement.  If the Management Agreement is terminated, this Agreement shall be immediately and automatically terminated, and if the Management Agreement is renewed or extended, this Agreement shall be immediately and automatically renewed or extended.

C.      Owner and MWC acknowledge that the Term specified herein is material to this Agreement, and neither shall contest or challenge the validity of this Section 6.01.

ARTICLE VII
EVENTS OF DEFAULT; TERMINATION; REMEDIES

7.01   Events of Default

Each of the following shall constitute an event of default ("Event of Default") to the extent permitted by applicable law:

A.      The filing of a voluntary petition under any bankruptcy, insolvency or similar law or a petition for reorganization under any bankruptcy, insolvency or similar law by any party, the admission by any party that it is unable to pay its debts as they become due or the consent by any party to an involuntary petition under any bankruptcy, insolvency or similar law;

B.      The failure to vacate, within 90 days from the date of entry thereof, any order approving an involuntary petition under any bankruptcy, insolvency or similar law by any party;

217071v1 Final

C.     The entering of an order, judgment, or decree by any court of competent jurisdiction, on the application of a creditor, adjudicating any party as bankrupt, insolvent or similar status or approving a petition seeking reorganization or appointing a receiver, trustee, judicial manager, or liquidator of all or a substantial part of such party's assets, and such order, judgment, or decree continuing unstayed and in effect for any period of more than 90 days;

D.     The failure of any party to pay any amount required to be paid pursuant to this Agreement within 10 days after notice that such amount has not been paid;

E.     The occurrence of an event of default under the Management Agreement;

F.     The failure of any party to perform, keep, or fulfill any of the other material warranties, covenants, undertakings, obligations, standards or conditions set forth in this Agreement, which failure shall continue for a period of more than 30 days following notice thereof by the non-defaulting party (or such longer period of time as is necessary to cure such Default if such failure is not susceptible to being cured within 30 days and the defaulting party shall promptly after such notice diligently begin, prosecute, and complete curing such failure, so long as such cure shall be accomplished within 90 days after receiving notice by the non-defaulting party); and

G.     The occurrence of an event of default under the International Services Agreement, the Fee Agreement, or any Manager or Owner default under any Non-Disturbance and Attornment Agreement;

7.02   <u>Termination</u>

A.     Upon termination, Owner shall cease using the Marriott Trademarks immediately without the need for any further action by either of the parties to this Agreement, except for any permitted use described in Section 7.02.B, below. Owner shall thereupon remove from the Hotel any signs or other materials which contain any Marriott Trademark, except for Inventories or Fixed Asset Supplies that are not purchased by MWC or its Affiliates in accordance with the following paragraph.



Owner shall immediately stop the use of and sell for cash to MWC or such Affiliate such items purchased by MWC or such Affiliate within such 30-day period. If MWC or any of its Affiliates does not fully exercise such option, Owner may use any unpurchased items only in connection with the operation of the Hotel until the then existing supply is exhausted, provided that (i) prior to termination or as soon as possible thereafter, such Marriott Trademarks shall be removed,

covered or otherwise permanently hidden from the view of Hotel customers and guests, and (ii) in no event shall the use of such items continue for more than six months after the date of termination.

C.     Termination of this Agreement shall not affect obligations (including the payment of any royalties) which have accrued as of the date of termination.

D.     Owner hereby empowers MWC and agrees to assist MWC at MWC's expense, to the extent so required, to cancel, revoke, transfer, or withdraw from any governmental registration or authorization permitting Owner to use the Marriott Trademarks upon termination of this Agreement. This covenant shall survive termination.

7.03   Remedies

Unless otherwise provided herein, no right or remedy conferred upon or reserved to a non-defaulting party by this Agreement is intended to be or shall be deemed to be exclusive of any other right or remedy herein or by law or equity provided or permitted, but each such right or remedy shall be cumulative of every other right or remedy. Nothing contained herein shall bar a party's right to obtain injunctive relief under applicable equity rules (including the applicable rules for obtaining restraining orders and preliminary injunctions) against threatened conduct that may cause it to incur loss or damages.

ARTICLE VIII
ASSIGNMENT

8.01   Assignment

A.     Except as otherwise provided in this Agreement, no party shall assign or transfer or permit the assignment or transfer of this Agreement without the prior consent of the other.

B.     MWC shall have the right without consent to assign its interest in this Agreement to any of its Affiliates; provided that (i) the Affiliate shall possess all legal rights and capacity necessary to afford Owner the rights to the use of the Marriott Trademarks described in this Agreement, (ii) the Affiliate shall assume MWC's obligations under this Agreement in writing for the benefit of Owner and (iii) that no such assignment shall release MWC of responsibility for such Affiliate's full and timely performance under this Agreement or from MWC's undertaking to afford Owner the limited exclusive rights described in Section 2.01.D.

C.     Nothing in this Agreement shall prevent (i) the transfer of this Agreement in connection with a merger, consolidation, or sale of all or substantially all of the hotel management assets of MWC or any of its Affiliates (in which case the assignor shall be relieved of its obligations under this Agreement and the assignee shall be deemed to be MWC for purposes of this Agreement), or (ii) an assignment or transfer of this Agreement in connection with any pledge of the Hotel as security for a financing by Owner or any Hotel Sale permitted by the Management Agreement (including, without limitation, any foreclosure or deed in lieu of foreclosure of any loan of Owner).

217071v1 Final

D. If any party consents to an assignment or transfer of this Agreement by the other, no further assignment or transfer shall be made without the consent of such party unless such assignment or transfer may otherwise be made without such consent pursuant to this Agreement. Unless otherwise specified in this Agreement or otherwise agreed by Owner and MWC, an assignment by either Owner or MWC of its interest in this Agreement shall not relieve the assignor from its obligations under this Agreement.

E. Notwithstanding anything in this Agreement to the contrary, Owner shall not assign or transfer this Agreement to any Person unless such Person is a permitted assignee under the Management Agreement and the Management Agreement is simultaneously assigned or transferred to such Person.

ARTICLE IX
MISCELLANEOUS

9.01  Right to Make Agreement

A. Each party represents, warrants and covenants, with respect to itself, that neither its execution of this Agreement nor the performance of its obligations hereunder: (i) violates any provision of law or any judgment, writ, injunction, order, or decree of any court or governmental authority having jurisdiction over it or any of its Affiliates; (ii) results in or constitutes a material breach or material default under any indenture, contract, commitment, or restriction to which it or any of its Affiliates is a party or by which it or any of its Affiliates is bound; or (iii) requires any consent, vote, or approval which has not been given or taken, or at the time of the transaction involved shall not have been given or taken. Each party represents and warrants that it has the full right and authority to enter into this Agreement. Each party represents and warrants that it and its Affiliates have and covenants that it and its Affiliates shall continue to have through the Term the full right and authority to perform its obligations hereunder.

B. Each party represents and warrants that this Agreement constitutes a legal, valid and binding obligation of such party, enforceable against such party in accordance with its terms.

C. Each party shall indemnify, defend, and hold harmless the other party from and against all Damages based on or arising from any breach of this Section 9.01.

9.02  Consents, Approvals, and Agreements; No Warranties

A. Unless otherwise provided, wherever in this Agreement the consent, approval, or agreement of Owner or MWC is required, such consent, approval, or agreement shall not be unreasonably withheld, delayed, or conditioned, shall be in writing, and shall be executed by a duly authorized officer or agent of the party granting such consent, approval, or agreement. Unless otherwise provided, if either Owner or MWC fails to respond affirmatively or negatively within 30 days or as otherwise specified in this Agreement to a request by another party for a consent, approval, or agreement, such consent, approval, or agreement shall be deemed to have been given.

217071v1 Final

10

B.     Except as specifically provided in this Agreement, MWC makes no representation, warranty, or guarantee upon which Owner may rely.  MWC assumes no liability or obligation to Owner by providing (or denying) any waiver, approval, consent, agreement, or suggestion to Owner in connection with this Agreement.

9.03   Relationship

The relationship of Owner and MWC shall be that of licensee and licensor, and nothing contained in this Agreement shall be construed to create an agency, partnership or joint venture between them or their successors in interest.  Notwithstanding the license relationship created by this Agreement, and subject to the exclusive rights within the Area described in Section 2.01.D, above, nothing contained herein shall prohibit, limit, or restrict MWC or any of its Affiliates from developing, owning or partially owning, leasing, operating or franchising hotels in addition to the Hotel or from entering into marketing or other arrangements with hotels in the trade area in which the Hotel is located or from licensing the Marriott Trademarks to any other party.

9.04   Confidentiality

A.     The parties hereto agree that the matters set forth in this Agreement and all statements, reports, projections and other information relating to the operation of the Hotel or to any other hotel in the Marriott Chain are strictly confidential, and each party shall make every effort to ensure that the information is not disclosed to any Person (including the press) other than a party hereto without the prior written consent of the other party; provided, however, (i) Owner may disclose information relating to the Hotel (but not relating to Marriott Chain services or other Marriott Chain information) as may be required by any Legal Requirement and as may be reasonably necessary to obtain licenses, permits, and other public approvals necessary for the refurbishment or operation of the Hotel, or in connection with Owner's financing of the Hotel, a Hotel Sale, a sale of a controlling interest in Owner (except any financing or sale involving a private or public offering of securities), or in connection with reports and other disclosures to Owner's partners, prospective partners, lenders, prospective lenders, consultants, attorneys, and agents; and (ii) MWC may disclose information relating to the Hotel as may be required by any Legal Requirement and as may be reasonably necessary to obtain licenses, permits, and other public approvals necessary for the refurbishment or operation of the Hotel, or in connection with any financing of the Hotel, a Hotel Sale, a sale of a controlling interest in Manager, MWC or an Affiliate (except any financing or sale involving a private or public offering of securities), or in connection with reports and other disclosures to MWC's consultants, attorneys, and agents.  Notwithstanding the foregoing, MWC (and any other Marriott Company) may use any Intellectual Property for any purpose (including, without limitation, the use of such Intellectual Property at the Hotel or at other hotels in the Marriott Chain) and may use any information described in the first sentence of this Section 9.04 A to the extent reasonably necessary for the benefit of the Hotel or other hotels in the Marriott Chain.

B.     No reference to MWC or any of its Affiliates may be made in any prospectus, private placement memorandum, offering circular, similar document, or any documentation related to any of the foregoing (collectively, "Prospectus") issued by or on behalf of Owner or any of its Affiliates, which is intended to interest potential investors or lenders in the Hotel, unless MWC has previously

217071v1 Final

11

received and approved the accuracy of a copy of all such references. Regardless of whether MWC so receives and approves all such references, neither MWC nor any of its Affiliates shall be deemed a sponsor of the offering described in the Prospectus or have any responsibility for the Prospectus, and the Prospectus shall clearly state such non-sponsorship and non-responsibility. Unless MWC agrees in advance, the Prospectus shall not include any Marriott Trademarks (except as required to identify MWC, Manager and its affiliates as parties to this Agreement, the Management Agreement and related Agreements) or the text of this Agreement. Owner shall indemnify, defend, and hold MWC and its Affiliates (including their respective directors, officers, shareholders, employees and agents) harmless from and against all Damages and third party claims based on or arising from any Prospectus or the offering described therein, and this obligation shall survive termination. Owner shall comply with all applicable securities and related laws and regulations relevant to any offering in connection with such Prospectus.

9.05   Applicable Law

This Agreement is executed pursuant to, and shall be construed under and governed exclusively by, the laws of the State of New York, United States of America, without regard to the conflict of law provisions thereof.

9.06   Arbitration

Except as otherwise specified in this Agreement, any dispute, controversy, or claim arising out of or relating to this Agreement, or the breach, termination, or invalidity thereof, shall be settled by arbitration in accordance with the rules of procedures of the American Arbitration Association (or any similar successor rules thereto) as are in force on the date when a notice of arbitration is received. The appointing authority shall be the American Arbitration Association. The number of arbitrators shall be one unless a party to the arbitration requests otherwise, in which case there shall be three. The language to be used in the proceedings shall be English. The place of arbitration shall be New York, New York, United States of America. The decision of the arbitration board shall be final and binding upon the parties, and such decision shall be enforceable through any courts having jurisdiction. The costs and expenses of arbitration shall be allocated and paid by the parties as determined by the arbitrators.

9.07   Notices

All notices, requests, demands, statements, approvals, consents, and other communications required or permitted to be given under the terms of this Agreement shall be in writing and delivered to the respective party (i) by hand against receipt, (ii) by a reputable overnight/international courier service with package tracking capability, or (iii) by telefax (with receipt confirmed by telephone or a copy delivered by hand or overnight international courier service) at such address as from time to time designated by notice from the respective party to the other party, which initially shall be as follows.

217071v1 Final

To Owner:

Royal St. Kitts Beach Resort Limited
P.O. Box 858
Frigate Bay, St. Kitts
West Indies



With copies to:

ZZen Group
100 Zenway Blvd.
Woodbridge
Ontario L4H-2Y7
CANADA



Any Mortgagee identified in writing by Owner from time to time to both the Marriott entities listed below.

To MWC:

Marriott Worldwide Corporation
10400 Fernwood Road
Bethesda, Maryland 20817
United States of America



With a copy to:

Marriott International, Inc.
10400 Fernwood Road
Bethesda, MD 20817



217071v1 Final

Any such notice or communication shall be deemed to have been given at the date and time of: (i) receipt or first refusal of delivery, if delivered by hand; (ii) the second day after dispatch, if sent via reputable overnight/international courier service; or (iii) either the date sent (if sent during the receiving party's normal business hours) or next succeeding day on which the receiving party is normally open for business, if sent by telefax and receipt is confirmed in the manner specified above.

9.08    Currency



9.09    Waiver

The failure or delay by a party to insist upon strict performance of any provision of this Agreement or to exercise any option, right, or remedy contained in this Agreement shall not constitute a waiver or a relinquishment of such provision, option, right, or remedy for the future. No waiver by a party of any provision of this Agreement shall be deemed to have been made unless expressed in writing and signed by such party.

9.10    Partial Invalidity

The provisions of this Agreement shall be deemed independent and severable. If any provision of this Agreement or the application thereof to any Person or circumstance shall to any extent be invalid or unenforceable, the remainder of this Agreement and the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable

217071v1 Final

14

shall not be affected thereby, and each provision shall be valid and enforceable to the fullest extent permitted by law. Any invalid or unenforceable provision shall be replaced with a provision that is valid and enforceable and most nearly reflects the original intent of the invalid or unenforceable provision.

9.11   Entire Agreement

The following constitute the entire agreement between the parties or their respective Affiliates, supersede all prior understandings and writings, and may be changed only by a writing signed by the parties or their respective Affiliates: (i) the Marriott Agreements; (ii) any instruments to be executed and delivered pursuant to any of the Marriott Agreements; and (iii) any other writings executed by the parties or their respective Affiliates, which writings are stated to be supplemental to or to amend or restate any of the foregoing agreements.

[The remainder of this page is intentionally blank]

217071v1 Final

15

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed by their duly authorized representatives as of the Effective Date.

ROYAL ST. KITTS BEACH RESORT
LIMITED

By: _____
Name: Vic de Zen
Title: Director

MARRIOTT WORLDWIDE
CORPORATION

By: _____
Name: M. Lester Pulse, Jr.
Title: Vice President

I3087_1.DOC

217071v1 Final

16

EXHIBIT A

Marriott "M" Logo



217071v1 Final